NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| | : | |
| JUAN CARLOS MERINO and | : | |
| AGUSTIN MOREL, JR., individually | : | |
| and on behalf of all others similarly | : | |
| situated, | : | |
| | : | |
| **Plaintiffs,** | : | Civil Action No. 16-7840 (ES)(MAH) |
| | : | |
| v. | : | MEMORANDUM OPINION |
| | : | |
| WELLS FARGO & COMPANY and | : | |
| WELLS FARGO BANK, N.A., | : | |
| | : | |
| **Defendants.** | : | |
| | : | |

SALAS, DISTRICT JUDGE

This is a putative class action. Pending before the Court is Defendants' motion to strike class allegations. (D.E. No. 7). Having considered the submissions made in support of and in opposition to the pending motion, the Court decides this matter without oral argument. *See* Fed. R. Civ. P. 78(b). For the reasons below, the Court DENIES Defendants' motion.

### I.    Relevant Allegations

Plaintiffs Juan Carlos Merino and Agustin Morel, Jr., (collectively, "Plaintiffs") are former hourly employees of Defendants Wells Fargo & Company and Wells Fargo Bank, National Association (collectively, "Wells Fargo" or "Defendants"). (*See* D.E. No. 1 ("Compl.") ¶¶ 1-2). They allege that Wells Fargo required them—and all hourly employees—to meet quarterly quotas for new accounts. (*Id.* ¶¶ 1, 2, 8-10). Continued failure to meet these quotas would result in demotion or termination. (*Id.* ¶¶ 1, 2, 9; *see also id.* ¶ 20 ("When hourly paid

- 1 -

employees failed to meet their quarterly quotas for new account openings, they were severely reprimanded.")).

But Plaintiffs allege that—to meet the quarterly new account quotas—it was necessary for hourly employees to solicit accounts *outside of* normal business hours.  (*Id.* ¶¶ 1, 2, 9, 12; *see also id.* ¶ 8 ("For years, Wells Fargo has imposed unrealistic quarterly new account sales quotas on its hourly employees.")).  In fact, Plaintiffs allege that Wells Fargo managers provided "Off Site Sheets" so that employees could solicit new accounts outside of normal business hours.  (*Id.* ¶¶ 1, 2, 9, 13, 40).  "At the beginning of each day, management would collect the Off Site Sheets from Plaintiffs and the other hourly paid employees."  (*Id.* ¶ 14).  "Wells Fargo company policy also required District Managers to have a 'huddle' with the hourly paid employees each morning during which the hourly employees were required to state the number of 'solutions' they were going to obtain that day."  (*Id.*).  "Wells Fargo required its hourly paid employees to report the number of 'solutions', or new banking accounts and credit or debit cards, obtained at the end of each day."  (*Id.* ¶ 19).  "If the employees did not meet their daily target of 'solutions' during normal business hours at the bank branch, then they were required to do so off site after normal business hours."  (*Id.* ¶ 14).

Plaintiffs allege that Wells Fargo managers knew—or reasonably should have known—that meeting the new-account quotas required hourly employees to solicit new accounts outside of regular business hours.  (*Id.* ¶¶ 1, 2, 12, 13).  In particular, Plaintiffs allege that "'Off Site Sheets' show that Wells Fargo management knew that" hourly employees "were working several hours each day off site and off the clock outside of the standard forty hour work week at the banking branch."  (*Id.* ¶ 13).

Significantly, Plaintiffs allege that Wells Fargo never paid them for the time they spent soliciting and obtaining new accounts outside of normal business hours.  (*Id.* ¶ 16).  In other words, Plaintiffs allege that they—as well as several other employees—were not paid overtime wages for off-site and off-the-clock work.  (*Id.* ¶¶ 1, 2, 12, 16, 17).  In particular, the Complaint alleges that, "[a]s hourly paid employees for Wells Fargo, Plaintiff Merino and the other members of the Class routinely worked overtime to solicit new accounts using the Off Site sheets, but were not paid at a rate of time and a half for all hours worked in excess of forty hours per week in violation" of New Jersey law.  (*Id.* ¶ 49).  Conversely, if an hourly employee worked less than forty hours at a given branch, Wells Fargo only paid the employee for the actual hours worked at the branch.  (*See id.* ¶ 17).

Further, "Wells Fargo management never instructed or permitted Plaintiff [sic] and the other Class members to enter their off site solicitation time into their weekly hourly reports on Time Tracker."  (*Id.* ¶ 18).  "To the contrary, at certain times during his employment with Wells Fargo, Plaintiff Merino was instructed by management to enter only up to, and not in excess of, 40 hours per week in the Time Tracker log."  (*Id.*).

Plaintiffs assert the following two counts individually on behalf of themselves and: (1) as a *collective* action for violation of the Fair Labor Standards Act ("FLSA") and (2) as a *class* action for violation of the New Jersey Wage and Hour Law ("NJWHL").  (*See id.* ¶¶ 36-54).

## II.    The Proposed Class & Wells Fargo's Motion to Strike Class Allegations

Plaintiffs' Complaint proposes the following class:

> Plaintiffs and other members of the Class are persons who: (1) work or have worked for Wells Fargo as hourly employees; (2) have been required to meet quarterly quotas for new accounts; (3) have worked more than forty (40) hours per week; and (4) have not been paid overtime wages (the "Class").

- 3 -

(*Id.* ¶ 7).   Further, it states that Plaintiff Merino "brings this action individually and in a representative capacity on behalf of a class of persons who have worked for Wells Fargo in New Jersey and who meet the definition of the putative class members set forth above during any time in the two years prior to the date of filing Plaintiffs' complaint."  (*Id.* ¶ 27).  There are allegedly "at least 100 persons, if not more, in the Class (the exact number will be in Defendants' records)," and "Defendants have engaged in the same conduct towards Plaintiff Merino and the other members of the Class."  (*Id.* ¶¶ 28-29).

Wells Fargo moves to strike Plaintiff Merino's class allegations from Count II of Plaintiffs' Complaint under Federal Rules of Civil Procedure 12(f) and 23(d)(1)(D).  (D.E. No. 9 ("Def. Mov. Br.")).[1]  Wells Fargo argues that the Court must strike Count II's Rule 23 class allegations for two reasons.

### A. Wells Fargo argues that there is no reliable and administratively feasible mechanism to identify the members of the Rule 23 class.

Wells Fargo argues that "Merino has identified no objective mechanism for identifying members of his proposed Rule 23 Class."  (Def. Mov. Br. at 5).  Wells Fargo contends that, since "he and others allegedly worked off the clock and thus never reported their alleged unpaid overtime hours to Wells Fargo," its "corporate records" will not reflect "these alleged unpaid hours."  (*Id.* at 5-6).  It argues that "no amount of discovery could unveil an objective mechanism by which to identify the members of Merino's proposed Rule 23 Class."  (*Id.* at 7).  So Wells Fargo asserts that "determining membership in the putative Rule 23 Class will require the Court to make an individualized inquiry to determine whether each putative class member actually worked 'off the clock.'"  (*Id.* at 6; *see also id.* at 7 ("The Court would thus be forced [to] engage

---

[1]      As Wells Fargo rightly notes, the Complaint does not provide that Plaintiff Morel, Jr., seeks to represent the putative class for Count II (i.e., violation of the NJWHL).  (*See* Compl. ¶¶ 47-54; Def. Mov. Br. at 1 n.1).

in thousands of individualized inquiries which, the Third Circuit has held, make class treatment inappropriate.")).

In opposition, as an initial matter, Plaintiffs argue that Rule 12(f) motions are sparingly granted in this District and issues about the appropriateness of class treatment should generally be decided after discovery at the class certification stage. (*See* D.E. No. 16 ("Pl. Opp. Br.") at 6-7). Further, Plaintiffs argue that Wells Fargo's business records for all hourly paid employees (which are required to be maintained by law), as well as other records identified in the Complaint, "can be used to objectively ascertain the New Jersey overtime class." (*Id.* at 8-9 (listing business records)).

### B.  Wells Fargo argues that class membership is defined as having a meritorious claim.

In addition, Wells Fargo argues that Merino's proposed Rule 23 Class improperly "requires a determination of the merits of any proposed class member's claim as a prerequisite to class membership—i.e., it consists of hourly employees who worked more than forty hours per week and did not receive overtime pay required by the NJWHL." (Def. Mov. Br. at 7-8; *see also* D.E. No. 17 ("Def. Reply Br.") at 2 ("A class definition that requires adjudication of the merits to determine class membership is improper.")). It contends that this constitutes an improper "fail safe" class definition. (Def. Mov. Br. at 8). Wells Fargo asserts that "the fail-safe nature of Merino's proposed Rule 23 Class renders it unascertainable by definition and warrants striking all allegations pertaining to the class at this early stage of litigation." (*Id.* at 10).

In opposition, Plaintiffs argue that, in cases such as this for overtime pay violations under the FLSA and the NJWHL (or analogous state labor laws), there is nothing improper about the proposed class definition. (Pl. Opp. Br. at 10). They argue that, unlike case law that Wells Fargo relies on, here there are no comparable individual issues, "and the NJWHL overtime class

can be ascertained objectively by reference to Defendant Wells Fargo's business records." (*See id.* at 11-12).   In any event, Plaintiffs argue that the remedy for a potential fail-safe class definition is to refine the class definition at the class certification stage, not strike class allegations. (*Id.* at 12).

### III.   Legal Authority to Strike Class Allegations Pre–Discovery

Rule 12(f)(2) provides, in relevant part, that a "court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter" that is made on a motion "by a party either before responding to the pleading or, if a response is not allowed, within 21 days after being served with the pleading."

Also implicated here are certain provisions of Rule 23.   Rule 23(c)(1)(A) provides that, "[a]t an early practicable time after a person sues or is sued as a class representative, the court must determine by order whether to certify the action as a class action."   And Rule 23(d)(1)(D) provides, in relevant part, that "the court may issue orders that . . . require that the pleadings be amended to eliminate allegations about representation of absent persons and that the action proceed accordingly."[2]

But "[m]otions to strike class allegations from a pleading are disfavored because a motion for class certification is a more appropriate vehicle for arguments about class propriety." *Gray v. BMW of N. Am., LLC*, 22 F. Supp. 3d 373, 386 (D.N.J. 2014) (citations omitted).   After all, "[c]lass determination generally involves considerations that are enmeshed in the factual and legal issues comprising the plaintiff's cause of action, and discovery is therefore integral." *Id.*;

---

[2]      *See also In re Paulsboro Derailment Cases*, No. 13-784, 2014 WL 1371712, at *2 (D.N.J. Apr. 8, 2014) ("A motion to strike class allegations implicates Federal Rules of Civil Procedure 12(f) and 23(c)(1)(a) [sic]. . . . A further procedural vehicle is provided by Federal Rule of Civil Procedure Rule 23(d)(1)(D), which provides that a 'court may issue orders that . . . require that the pleadings be amended to eliminate allegations about representation of absent persons and that the action proceed accordingly.'"); *Bell v. Cheswick Generating Station, Genon Power Midwest, L.P.*, No. 12-929, 2015 WL 401443, at *2 (W.D. Pa. Jan. 28, 2015) ("As an initial matter, the authority to strike class allegations stems from Federal Rules of Civil Procedure 12(f), 23(c)(1)(A), and 23(d)(1)(D) . . . .").

*see also McPeak v. S-L Distribution Co.*, No. 12-348, 2014 WL 4388562, at *7 (D.N.J. Sept. 5, 2014) ("It is true that motions to strike class allegations are only granted in rare cases.") (quotation marks and citations omitted).  "It is only when no amount of discovery or time will allow for plaintiffs to resolve deficiencies in class definitions under Rule 23, that a motion to strike class allegations should be granted." *McPeak*, 2014 WL 4388562, at *4 (citation omitted); *see also In re Paulsboro Derailment Cases*, 2014 WL 1371712, at *3 (same).

So, a court may "grant a motion to strike class action allegations if class treatment on the face of the complaint leaves little doubt they are not viable." *Zarichny v. Complete Payment Recovery Servs., Inc.*, 80 F. Supp. 3d 610, 624 (E.D. Pa. 2015).  Indeed, "class allegations have been dismissed or stricken when it is clear from the face of the complaint that the requirements for maintaining a class action cannot be met." *McPeak*, 2014 WL 4388562, at *7 (citation omitted).  "Thus, a court should grant a motion to strike class allegations only if the inappropriateness of class treatment is evident from the face of the complaint and from incontrovertible facts." *Id.* at *4.

## IV.   Discussion

### A.  Relevant Standard

"[E]very putative class action must satisfy the four requirements of Rule 23(a) and the requirements of either Rule 23(b)(1), (2), or (3)." *Marcus v. BMW of N. Am., LLC*, 687 F.3d 583, 590 (3d Cir. 2012) (vacating class certification order).  "Before turning to the explicit requirements of Rule 23 in *Marcus*, [the Third Circuit] addressed two 'preliminary matters': first, whether the class was clearly defined, and second, 'whether the class must be (and, if so, is in fact) objectively ascertainable.'" *Carrera v. Bayer Corp.*, 727 F.3d 300, 305 (3d Cir. 2013) (quoting *Marcus*, 687 F.3d at 591) (vacating class certification order).

Regarding the *second* of these two preliminary matters, the "ascertainability inquiry is two-fold, requiring a plaintiff to show that: (1) the class is 'defined with reference to objective criteria'; and (2) there is 'a reliable and administratively feasible mechanism for determining whether putative class members fall within the class definition.'" *Byrd v. Aaron's Inc.*, 784 F.3d 154, 163 (3d Cir. 2015) (quoting *Hayes v. Wal-Mart Stores, Inc.*, 725 F.3d 349, 355 (3d Cir. 2013)).[3]   "The ascertainability requirement consists of nothing more than these two inquiries. And it does not mean that a plaintiff must be able to identify all class members at class certification—instead, a plaintiff need only show that 'class members *can* be identified.'" *Byrd*, 784 F.3d at 163 (quoting *Carrera*, 727 F.3d at 308 n.2).

### B. Analysis

The parties appear to agree that this is the standard the Court should apply.  (*See, e.g.*, Def. Mov. Br. at 3-4; Pl. Opp. Br. at 7-8).  But, in sum and substance, Wells Fargo's argument is as follows: "Membership in the Rule 23 class Merino has proposed cannot be readily ascertained by objective criteria.  On the contrary, to determine who is a class member is equivalent to determining who has a valid claim on the merits.  Accordingly, Merino's class allegations should be stricken from the Complaint."  (*See* Def. Reply Br. at 4).

### 1. The Court disagrees that—based on the face of the Complaint—there is no reliable and administratively feasible mechanism to identify the members of the Rule 23 class.

As an initial matter, Wells Fargo's position suggests that it does not take issue with whether the class was clearly defined, but rather class ascertainability—i.e., whether (1) the class is defined with reference to objective criteria and (2) there is a reliable and administratively

---

[3]      "The method of determining whether someone is in the class must be 'administratively feasible.'" *Carrera*, 727 F.3d at 307 (quoting *Marcus*, 687 F.3d at 594).  "A plaintiff does not satisfy the ascertainability requirement if individualized fact-finding or mini-trials will be required to prove class membership."  *Id.* (citing *Marcus*, 687 F.3d at 593).  "Administrative feasibility means that identifying class members is a manageable process that does not require much, if any, individual factual inquiry."  *Id.* at 307-08 (quotation marks and citation omitted).

feasible mechanism for determining whether putative class members fall within the class definition.  (*See, e.g.*, Def. Mov. Br. at 4 (providing a subheading that states "There Is No 'Reliable and Administratively Feasible Mechanism' To Identify The Members Of The Rule 23 Class"); *id.* at 5 ("Merino has identified no objective mechanism for identifying members of his proposed Rule 23 Class."); *id.* at 7 ("[I]t is clear, even at this early stage, that Merino's proposed Rule 23 Class is not ascertainable."); *id.* at 10 ("[T]he fail-safe nature of Merino's proposed Rule 23 Class renders it unascertainable by definition and warrants striking all allegations pertaining to the class at this early stage of litigation.")).  This is important because the issue of class definition and the issue of ascertainability are separate preliminary inquiries.  *See Byrd*, 784 F.3d at 166 ("In blending the issue of ascertainability with that of class definition (which *Marcus* took pains to address as separate preliminary inquiries that preceded the Rule 23 analysis, 687 F.3d at 591-94), the District Court erred."); *cf. In re Blood Reagents Antitrust Litig.*, No. 09-2081, 2015 WL 6123211, at *25 (E.D. Pa. Oct. 19, 2015) ("Defendant has not challenged plaintiffs' class definition at any stage of the litigation, and the Court concludes that the class is clearly defined. . . . Defendant has not argued that plaintiffs' class is not ascertainable.").  Accordingly, the relevant standard is whether "(1) the class is 'defined with reference to objective criteria'; and (2) there is 'a reliable and administratively feasible mechanism for determining whether putative class members fall within the class definition.'"  *Byrd*, 784 F.3d at 163 (quoting *Hayes*, 725 F.3d at 355).

The Court disagrees with Wells Fargo that—based on the face of the Complaint and the incontrovertible facts at this early stage—"Merino has identified no objective mechanism for identifying members of his proposed Rule 23 Class" and "determining membership in the putative Rule 23 Class will require the Court to make an individualized inquiry to determine

- 9 -

whether each putative class member actually worked "off the clock."  (*See* Def. Mov. Br. at 5-6).
As noted, the proposed class consists of those who "(1) work or have worked for Wells Fargo as
hourly employees; (2) have been required to meet quarterly quotas for new accounts; (3) have
worked more than forty (40) hours per week; and (4) have not been paid overtime wages."
(Compl. ¶ 7).  As Plaintiffs aptly note (*see* Pl. Opp. Br. at 8-9), Wells Fargo must keep payroll
records by law, and Plaintiffs have identified other records for hourly-paid employees in the
Complaint—e.g., quota requirements, Off Site Sheets and related policies, procedures and
reports, and documentation reflecting both the number of "solutions" achieved by hourly-paid
employees and target numbers for "solutions"—that *can* identify class members.

    And the Third Circuit seems to emphasize that the ascertainability requirement does "not
mean that a plaintiff must be able to identify all class members at class certification—instead, a
plaintiff need only show that class members *can* be identified."  *See Byrd*, 784 F.3d at 163
(quotation marks and citation omitted).  Indeed, the Circuit was "careful to specify in *Carrera*
that '[a]lthough some evidence used to satisfy ascertainability, such as corporate records, will
actually identify class members at the certification stage, ascertainability only requires the
plaintiff to show that class members *can be identified*."  *Byrd*, 784 F.3d at 164 (quoting *Carrera*,
727 F.3d at 308 n.2).[4]

    The Court is not persuaded otherwise by Wells Fargo's contention that, "[r]egardless of
whether such records might have probative value in deciding the merits of an individual's
overtime claim, they certainly would not allow an employee's membership in the proposed class

---

[4]        "The ascertainability inquiry is narrow. If defendants intend to challenge ascertainability, they must be
exacting in their analysis and not infuse the ascertainability inquiry with other class-certification requirements. As
we said in *Carrera*, 'ascertainability only requires the plaintiff to show that class members can be identified.'"
*Byrd*, 784 F.3d at 165 (quoting *Carrera*, 727 F.3d at 308 n.2).  Indeed, "[i]n *Carrera*, [the Third Circuit] concluded
that the plaintiffs' proposed reliance on affidavits alone, without any objective records to identify class members or
a method to weed out unreliable affidavits, could not satisfy the ascertainability requirement."  *Byrd*, 784 F.3d at
170 (citing *Carrera*, 727 F.3d at 311).

to be 'readily ascertained.'"   (*See* Def. Reply Br. at 2).   Wells Fargo's contention begs an unanswered question: why is it *certain* that such information cannot be readily ascertained? After all, no discovery has been exchanged, and this argument seems to presuppose what discovery shows (or doesn't show).

### 2. The Court declines to strike Merino's class allegations on the grounds that the proposed class is an impermissible fail-safe class.

"A fail-safe class is 'one that is defined so that whether a person qualifies as a member depends on whether the person has a valid claim.'"   *Zarichny*, 80 F. Supp. 3d at 623 (quoting *Messner v. Northshore Univ. HealthSystem*, 669 F.3d 802, 825 (7th Cir. 2012)); *see also Aurandt v. Brown*, No. 15-275, 2017 WL 1215451, at *9 (W.D. Pa. Mar. 31, 2017) (same); *JWD Automotive, Inc., v. DJM Advisory Grp. LLC*, 218 F. Supp. 3d 1335, 1342 (Nov. 21, 2016) ("A fail-safe class is one whose definition incorporates the elements of a successful legal claim, such that determining whether an individual or entity is a member of the class front-ends a merits determination on the defendant's liability. . . . Being granted membership in the class is thus synonymous with a victory on the underlying claim.") (quotation marks, alterations, and citation omitted).

The proposed class here appears fail-safe.   An individual seemingly falls in the class if he or she worked for Wells Fargo as an hourly employee, was required to meet quarterly quotas for new accounts, worked more than 40 hours per week, was not paid overtime wages, and meets the time-period qualification in the Complaint.   (*See* Compl. ¶¶ 7, 27).   Citing N.J.S.A. 34:11-56a4, Wells Fargo argues that the NJWHL requires overtime pay to hourly employees who work more than 40 hours per week and, therefore, "members of the Rule 23 Class either win on the merits or are not members of the class."   (Def Mov. Br. at 8); *see also Zarichny*, 80 F. Supp. 3d at 624 (stating, that in a fail-safe class, "either the class members win or, if the defense prevails, no

class exists, and the putative class members, unbound by any judgment, are free to pursue individual claims").

That said, however, Wells Fargo's own cited case law concerning its fail-safe argument (*see* Def. Mov. Br. at 8) states the following:

> Defining a class so as to avoid, on one hand, being over-inclusive and, on the other hand, the fail-safe problem is more of an art than a science. *Either problem can and often should be solved by refining the class definition rather than by flatly denying class certification on that basis.*

*Messner*, 669 F.3d at 825 (emphasis added). In fact, Plaintiffs argue that "the remedy for a 'fail safe' class is simply for the Court to refine the class definition at the class certification stage." (Pl. Opp. Br. at 12).

Tellingly for this Court, Wells Fargo offers no specific response to this point in its reply brief. And declining to strike the class allegations in the instant context aligns with what appears to be this District's preference for addressing the issues discussed herein at the class certification stage. *See, e.g.*, *Cannon v. Ashburn Corp.*, No. 16-1452, 2016 WL 7130913, at *11-12 (D.N.J. Dec. 7, 2016) (collecting cases and ruling that the court "will follow the majority of courts in this District and deny the [d]efendants' motion to strike the class allegations without prejudice as premature" where defendants moved to strike class allegations because, in part, the class was fail safe); *see also O.P. Schuman & Sons, Inc. v. DJM Advisory Grp., LLC*, No. 16-3563, 2017 WL 634069, at *4 (E.D. Pa. Feb. 16, 2017) ("It is not readily apparent whether Plaintiff's class is fail-safe. . . . Moreover, the Third Circuit has not yet ruled on the permissibility of fail-safe classes. In any event, as this case will be transferred, the court in Florida may decide the permissibility of Plaintiff's proposed class at the class-certification stage."); *JWD Automotive*, 218 F. Supp. 3d at 1343 ("The Court agrees that, as written, the proposed class appears 'fail-safe.' . . . It is less clear, however, that such a class is 'impermissible.' The Eleventh Circuit has

not yet addressed whether a fail-safe class can nevertheless be certified, and there is a split of authority among the Circuit Courts that have decided the issue. Notwithstanding, this Court concludes—as have several others—that such argument is more appropriately raised at the class-certification stage.") (citations omitted).

V.    **Conclusion**

For the above reasons, Wells Fargo's motion to strike the class allegations is DENIED *without prejudice* to raising the arguments in opposition to a future motion for class certification. An appropriate Order accompanies this Memorandum Opinion.

*s/Esther Salas*

**Esther Salas, U.S.D.J.**
