**LAW OFFICE OF ROOSEVELT N. NESMITH, LLC**
Roosevelt N. Nesmith
363 Bloomfield Avenue, Suite 2C
Montclair, New Jersey 07042
Tel: (973) 259-6990
Fax: (866) 848-1368
Email: roosevelt@nesmithlaw.com

*Additional Plaintiffs' Counsel on Signature Page*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| JUAN CARLOS MERINO, AGUSTIN MOREL, JR., JOSHUA THOMSON, JONATHAN ALMONTE, KEENAN JOHNSON, ABDULLAHI HAJISOMO, CLAUDIA CERVANTES CHOUZA, WILSON BLOUNT III and RICHARD SKLENKA, individually and on behalf of all persons similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> WELLS FARGO & COMPANY, and WELLS FARGO BANK, NATIONAL ASSOCIATION, <br><br> Defendants. | Civil Action No. 2:16-cv-07840 <br><br> Second Amended Complaint -- Class and Collective Action <br><br> Jury Trial Demanded |

## INTRODUCTION

Plaintiffs Juan Carlos Merino, Agustin Morel, Jr., Joshua Thomson, Jonathan

Almonte, Keenan Johnson, Abdullahi Hajisomo, Claudia Cervantez Chouza, Wilson

Blount III and Richard Sklenka (collectively, "Plaintiffs") file this Second Amended

Class and Collective Action Complaint ("SAC") against Defendants Wells Fargo & Company and Wells Fargo Bank, National Association (collectively, "Wells Fargo" or "Defendants") for unpaid overtime wages pursuant to the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq*. ("FLSA"), and the laws of the states of New Jersey, Nevada, New York, Pennsylvania, Connecticut, North Carolina, and Minnesota. The following allegations are based on personal knowledge as to Plaintiffs' own conduct and are made on information and belief as to the acts of others.

## PARTIES

1.      Plaintiff Juan Carlos Merino ("Merino") resides in Hackensack, New Jersey. From approximately March 2010 through November 2015, Plaintiff Merino worked as an hourly employee at several Wells Fargo bank branches in New Jersey, including the 167 Market Street branch in Paterson, New Jersey where he worked as a Customer Service Sales Representative and Bank Teller; the 233 Fifth Avenue branch in Paterson, New Jersey where he worked as a Personal Banker; and the 859 Route 17 Paramus, New Jersey branch where he worked as a Personal Banker. Plaintiff Merino was paid at a rate of $15 per hour until approximately February 2013, and paid at a rate of $20 per hour from approximately February 2013 to November 2015. At each Wells Fargo branch location, Plaintiff Merino was required to meet quarterly quotas for new accounts and was instructed by his managers to use Off Site Sheets to solicit new accounts outside of regular bank branch business

hours. Indeed, to meet the quarterly new account quotas, the Wells Fargo managers knew or reasonably should have known that it was necessary for the hourly employees, including Plaintiff Merino, to solicit new accounts outside of regular bank branch business hours. Hourly employees who did not meet their monthly new account quotas were frequently terminated or demoted. In addition to routinely working a forty (40) hour work week at the Wells Fargo bank branches, Plaintiff Merino routinely spent up to approximately fifteen (15) additional hours per week outside of normal bank branch business hours soliciting new accounts, including through the use of Off Site Sheets. Plaintiff Merino was not paid overtime wages for this work.

2.    Plaintiff Agustin Morel, Jr. ("Morel") resides in Passaic, New Jersey. From approximately October 2012 to August 2014, Plaintiff Morel worked as a Personal Banker at the Wells Fargo branch located at People's Park, 1008 Madison Avenue, Paterson, New Jersey. Plaintiff Morel was paid at the hourly rate of $19.23 per hour. Plaintiff Morel was required to meet quarterly quotas for new accounts and was instructed by his managers to use Off Site Sheets to solicit new accounts outside of regular bank branch business hours. To meet the quarterly new account quotas, the Wells Fargo managers knew or reasonably should have known that it was necessary for the hourly employees, including Plaintiff Morel, to solicit new accounts outside of regular bank branch business hours. Hourly employees, like Mr.

Morel, who did not meet their monthly new account quotas were frequently terminated or demoted. Indeed, in August 2014, Mr. Morel was terminated for failing to meet his new account quota. Mr. Morel's termination occurred approximately one month after he received an unfavorable review from his manager, Felix Ramirez, for failing to meet his quarterly new account numbers for the quarter ended June 30, 2014. During this review in July 2014, Plaintiff Morel complained to his manager that other employees who were meeting their quotas were falsifying accounts. Within the next month, Mr. Morel was terminated. In addition to routinely working forty (40) hour workweeks at the Wells Fargo bank branch, Plaintiff routinely spent up to approximately eight (8) additional hours per week outside of normal bank branch business hours soliciting new accounts, including through the use of Off Site Sheets. Plaintiff Morel was not paid overtime wages for this work.

3.     Plaintiff Joshua Thomson ("Thomson") resides in Sparks, Nevada. From approximately 2012 to September 2015 and from approximately February 2016 to December 2016, Plaintiff Thomson worked as a Personal Banker at a Wells Fargo branch located in Carson City, Nevada. Plaintiff Thomson was paid an hourly rate of approximately $19.50 per hour, and he expected to be paid for all hours worked. Plaintiff Thomson was required to meet quarterly quotas for new accounts. To meet these quotas, Plaintiff Thomson was instructed by his managers to visit potential clients outside of the branch during branch hours and was also required to

work at the branch after hours without pay. Plaintiff Thomson estimates that he routinely worked approximately two to four uncompensated hours over his regular forty (40) hour workweek each week that he worked for Wells Fargo. Hourly employees like Plaintiff Thomson who did not meet their monthly new account quotas were frequently terminated or demoted. Indeed, on or around July 2013, Plaintiff Thomson was demoted from Personal Banker II to Personal Banker I for failing to meet his new account quota. Plaintiff Thomson's Wells Fargo managers knew or reasonably should have known that the hourly employees, including Plaintiff Thomson, were working in excess of forty (40) hours per week without appropriately being paid overtime compensation.

4.     Plaintiff Jonathan Almonte ("Almonte") resides in Clifton, New Jersey. From approximately September 2013 to December 2014, Plaintiff Almonte worked as a Personal Banker at a Wells Fargo branch in New York, New York. From approximately December 2014 to March 2015, Plaintiff Almonte worked as a Personal Banker at a Wells Fargo branch in Clifton, New Jersey. Plaintiff Almonte was paid an hourly rate of approximately $19.70 per hour. During his work with Wells Fargo, Plaintiff Almonte was required to meet quarterly quotas for new accounts and was instructed by his managers to use Off Site Sheets to solicit new accounts. In addition, Plaintiff Almonte was often required to stay at the branches, typically on Tuesday evenings, to participate in "call nights." During these call

nights, Plaintiff Almonte remained at the branch and made outreach calls to solicit new accounts. Plaintiff Almonte estimates that as a result of the forced participation in call nights and work with Off Site Sheets including during his lunch hour, Plaintiff Almonte routinely worked between three and five uncompensated hours over his regular forty (40) hour workweeks with Wells Fargo. Plaintiff Almonte was not paid overtime wages for the extra hours he worked each week.

5.     Plaintiff Keenan Johnson ("Johnson") resides in Lancaster, Pennsylvania. From approximately July 2013 to August 2016, Plaintiff Johnson worked as a Personal Banker I at a Wells Fargo branch in Lancaster, PA. From approximately August 2016 to the present, Plaintiff Johnson has worked as a Personal Banker II at a Wells Fargo branch in Lancaster, PA. Plaintiff Johnson was constantly under pressure to reach unrealistic sales quotas and attend to Wells Fargo's customers after his regular work hours. In addition to his regular forty (40) hour workweeks, Plaintiff Johnson estimates that he routinely worked an additional two to five hours per week until approximately January 2017. Plaintiff Johnson was not compensated for his overtime hours during this time period.

6.     Plaintiff Abdullahi Hajisomo ("Hajisomo") resides in Edina, Minnesota. From approximately November 2014 to December 2015, Plaintiff Hajisomo worked as a Personal Banker I at a Wells Fargo Branch in Minneapolis, Minnesota, after which he became a Branch Manager until January 2016. As a

6

Personal Banker I, Plaintiff Hajisomo was paid an hourly rate of approximately $15/hour. He often began working at around 8:00 a.m. because there were required team meetings even though the branch opened at 9:00 a.m. He was also required to work after the branch closed, often until 7:00 p.m. or 8:00 p.m. Plaintiff Hajisomo estimates that as a Personal Banker, he routinely worked over fifteen (15) hours per week of uncompensated overtime.

7.    Plaintiff Claudia Cervantes Chouza ("Chouza") resides in Garner, North Carolina. From approximately July 2015 to April 2017, Plaintiff Chouza worked as a Personal Banker I at the Preston Corners Wells Fargo branch in Cary, North Carolina. Plaintiff Chouza was paid on an hourly basis at a rate of approximately $17.35/hour. Plaintiff Chouza estimates that she routinely worked between two and four unpaid overtime hours per week in addition to her regular forty (40) hour workweeks throughout her tenure at Wells Fargo. Plaintiff Chouza was not paid overtime wages for the extra hours that she worked each week.

8.    Plaintiff Wilson Blount III ("Blount") worked for Wells Fargo as a Personal Banker I in its West Palm Beach, FL branch and other branches from approximately July 2011 until November 2015. Blount was paid approximately $15/hour. During his work, Wells Fargo pressured Plaintiff Blount to meet unrealistically high quarterly sales goals. Plaintiff Blount was instructed by his managers to stay late after branch hours for "call nights" until approximately 7:00

p.m. to try to sell financial products such as credit cards at least once or twice a week and was not paid for this time. Plaintiff Blount was also instructed that he should not properly record his electronic time log as exceeding forty (40) hours, even when he worked over 40 hours in a week. Plaintiff Blount estimates that he routinely worked eight to ten hours of work per week for which he did not receive compensation.

9.     Plaintiff Richard Sklenka ("Sklenka") resides in Farmington, Connecticut. From approximately November 2013 to November 2017, Plaintiff Sklenka worked as a Premier Banker at a Wells Fargo branch in Connecticut. As a Premier Banker, Plaintiff Sklenka was paid approximately $33/hour. During his work, Wells Fargo pressured Plaintiff Sklenka to meet unrealistically high quarterly sales goals. Plaintiff Sklenka was instructed by his managers to stay late after branch hours for "call nights" until approximately 7:00 p.m. to try to sell financial products such as credit cards at least once or twice a week and was not paid for this time. Plaintiff Sklenka was also instructed that he should not properly record his time as exceeding forty (40) hours, even when he worked over 40 hours in a week. Plaintiff Sklenka estimates that he routinely worked approximately four to eight hours beyond his regular 40 hour workweek without pay or overtime compensation.

10.     Defendant Wells Fargo and Company is a corporation organized and existing under the laws of the State of Delaware with its principal place of business in San Francisco, California. Wells Fargo and Company is a financial services

company with approximately $1.5 trillion in assets. It provides banking, insurance, investments, mortgages, and consumer and commercial finance through more than 9,000 branch locations nationwide. It has approximately 265,000 full time employees.

11.     Defendant Wells Fargo Bank, National Association is a national banking association chartered under the laws of the United States with its primary place of business in Sioux Falls, South Dakota. Wells Fargo Bank, National Association provides Wells Fargo & Company's personal and commercial banking services and is the principal operating subsidiary of Wells Fargo & Company.

## **JURISDICTION & VENUE**

12.     Jurisdiction in this case is based on 28 U.S.C. §§ 1331, 1332 and/or 1337. This action arises under the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.* Plaintiffs and Defendants are citizens of different states and the amount in controversy exceeds $75,000, exclusive of interests and costs. Jurisdiction over the state law claims asserted herein is pursuant to 28 U.S.C. §1367.

13.     Venue is proper in this Court pursuant to 28 U.S.C. §1391 because Defendants are authorized to conduct business and have conducted substantial business in the District of New Jersey, have intentionally availed themselves of the laws of New Jersey, and are subject to personal jurisdiction in New Jersey.

## CLASS DEFINITIONS

14.     The term "Covered Positions" as used in this SAC means Wells Fargo's Customer Sales and Service Representatives ("CSSRs"), Personal Banker 1s ("PB1s"), Personal Banker 2s ("PB2s"), Private/Premier Bankers ("PPBs"), Business Banking Specialists ("BBSs"), and Senior Business Banking Specialists ("SBBSs"), all of which were non-exempt hourly paid positions at Wells Fargo Bank, N.A. during the time period from January 1, 2015 to the present (the "Collective Period").

15.     Plaintiffs bring this lawsuit pursuant to 29 U.S.C. § 216(b) as an FLSA collective action on behalf of the following collective of potential opt-in litigants:

> all individuals who were employed by Wells Fargo Bank, N.A. in one or more of the Covered Positions at any time during the Collective Period in any state other than California (the "FLSA Collective").

16.     Plaintiffs Merino and Almonte bring Count Two of this lawsuit as a class action pursuant to FED. R. CIV. P. 23(a) and (b)(3) on behalf of themselves and the following class:

> all individuals who were employed by Wells Fargo Bank, N.A. in one or more of the Covered Positions in the State of New Jersey during the time period allowed by the applicable statute of limitations (the "New Jersey Class").

17.     Plaintiff Thomson brings Counts Three, Four, Five, and Six of this lawsuit as a class action pursuant to FED. R. CIV. P. 23(a) and (b)(3) on behalf of

himself and the following class:

> all individuals who were employed by Wells Fargo Bank, N.A. in one or more of the Covered Positions in the State of Nevada during the time period allowed by the applicable statute of limitations (the "Nevada Class").

18.    Plaintiff Almonte brings Count Seven of this lawsuit as a class action pursuant to FED. R. CIV. P. 23(a) and (b)(3) on behalf of himself and the following class:

> all individuals who were employed by Wells Fargo Bank, N.A. in one or more of the Covered Positions in the State of New York during the time period allowed by the applicable statute of limitations (the "New York Class").

19.    Plaintiff Johnson brings Count Eight of this lawsuit as a class action pursuant to FED. R. CIV. P. 23(a) and (b)(3) on behalf of himself and the following class:

> all individuals who were employed by Wells Fargo Bank, N.A. in one or more of the Covered Positions in the Commonwealth of Pennsylvania during the time period allowed by the applicable statute of limitations (the "Pennsylvania Class").

20.    Plaintiff Hajisomo brings Count Nine of this lawsuit as a class action pursuant to FED. R. CIV. P. 23(a) and (b)(3) on behalf of himself and the following class:

> all individuals who were employed by Wells Fargo Bank, N.A. in one or more of the Covered Positions in the State of Minnesota during the time period allowed by the applicable statute of limitations (the

"Minnesota Class").

21.    Plaintiff Chouza brings Count Ten of this lawsuit as a class action pursuant to FED. R. CIV. P. 23(a) and (b)(3) on behalf of herself and the following class:

> all individuals who were employed by Wells Fargo Bank, N.A. in one or more of the Covered Positions in the State of North Carolina during the time period allowed by the applicable statute of limitations (the "North Carolina Class").

22.    Plaintiff Sklenka brings Counts Eleven and Twelve of this lawsuit as a class action pursuant to FED. R. CIV. P. 23(a) and (b)(3) on behalf of himself and the following class:

> all individuals who were employed by Wells Fargo Bank, N.A. in one or more of the Covered Positions in the State of Connecticut during the time period allowed by the applicable statute of limitations (the "Connecticut Class").

23.    The New Jersey Class, Nevada Class, New York Class, Pennsylvania Class, Minnesota Class, North Carolina Class, and Connecticut Class are hereafter collectively referred to as the "State Law Classes." The FLSA Collective and State Law Classes are hereafter collectively referred to as the "Classes."

24.    Plaintiffs reserve the right to redefine the Classes prior to conditional certification or class certification, and thereafter as necessary.

## **FACTUAL ALLEGATIONS**

25.    For years, Wells Fargo imposed unrealistic quarterly new account sales

quotas on its hourly employees. Wells Fargo's senior management of its national Community Banking Division decided to implement what it called a 50/50 Plan, under which the bank set sales goals that it knew were impossible to reach for half its bankers within a 40 hour workweek. This plan was devised by Matthew Raphaelson in that Division, and then approved by Carrie Tolstedt, who was the head of Community Banking for the United States.

26.   The Wells Fargo Community Banking Division required its hourly employees to "cross sell" or to push existing customers to open more accounts with Wells Fargo. Wells Fargo measures cross-selling by the number of products, including accounts and credit and debit cards, which each customer has with Wells Fargo. Wells Fargo's former Chief Executive Officer and Chairman of the Board of Directors, John G. Stumpf, set the target as eight (8) accounts per customer. Indeed, in the 2010 Annual Report, Mr. Stumpf touted his cross-selling target for Wells Fargo employees as "eight is great." Mr. Stumpf cited Wells Fargo's cross selling targets as one of the main reasons investors should purchase stock in Wells Fargo. In an April 2012 conference call with investors, Mr. Stumpf stated "We grew our retail banking cross-sell ratio to a record, 5.98 products." One year later, in April 2013, Mr. Stumpf stated in a conference call with investors: "We achieved record retail banking cross-sell of 6.1 products." In April 2014, Mr. Stumpf stated in a conference call with investors: "We achieved record retail banking cross-sell of 6.17

products per household." In the 2014 Annual Report filed with the Securities and Exchange Commission, Wells Fargo further stated: "We believe there is more opportunity for cross-sell as we continue to earn more business from our customers. Our goal is eight products per household. . ."

27.   Mr. Stumpf knew or reasonably should have known that his cross-selling target for Wells Fargo employees to solicit eight products per household was unrealistic, especially in light of the well-known fact that competitor banks have on average fewer than three accounts per customer. Nevertheless, senior management in the Community Banking Division of Wells Fargo was instructed nationwide to require their hourly employees to meet these unrealistic cross selling targets. Wells Fargo management thus imposed quarterly new account quotas on all hourly employees and required employees to use Off Site sheets to solicit new accounts outside of normal bank branch business hours. Wells Fargo management also incentivized employees to meet their quarterly quotas of new accounts with monetary bonus payments ranging from $400 to $1,200, and penalized employees who failed to meet the quotas with demotions or termination. Indeed, Wells Fargo community banking senior management systematically squeezed its employees to the breaking point to meet these unrealistic targets and in order to enhance the Wells Fargo stock price, which rose approximately $30 per share during the years during which Wells Fargo imposed the cross-selling quota push.

28.     Wells Fargo senior management placed unrelenting pressure on its hourly paid employees to open numerous accounts per customer, often telling the employees, in sum and substance, to "do whatever it takes to reach their quotas" or to "do whatever you have to do" to meet the quotas.

29.     Wells Fargo management often referred to the beginning of each quarter as "JUMP" week during which hourly paid employees were required to obtain six to eight new accounts for the first day.

30.     However, the quotas imposed by Wells Fargo senior management – as per the requirements of Wells Fargo's former CEO, were not realistic, and certainly not attainable during normal bank branch business hours because there was simply not enough foot traffic by customers on a daily basis at the branches. Thus, employees who did not reach their quotas during normal bank branch business hours uniformly were required by Wells Fargo management to work after hours off the clock without compensation to solicit new accounts.

31.     Each day at the end of normal bank branch business hours at many branches, Wells Fargo management would circulate "Off Site Sheets" to its hourly paid employees and would instruct the employees to take their "Off Site Sheets" with them after work to solicit new accounts. The "Off Site Sheet" was basically a pre-approved account application which simply needed to be signed by the customer and then scanned by the Wells Fargo banking branch the following business day. In

addition to passing out Off Site Sheets at the end of the day, Wells Fargo management also provided the hourly paid employees with Wells Fargo bags for carrying the Off Site Sheets, paper clips, pens and Wells Fargo brochures for soliciting new customers outside of the bank branches after normal business hours. The Off Site Sheets were maintained on Wells Fargo's website www.wellsfargo.com/teamworks. Plaintiffs and other hourly paid employees at Wells Fargo often referred to the "Off Site Sheets" as their "homework," because it was something that they were required to do every day outside of normal bank branch hours. By name and design, the "Off Site Sheets" show that Wells Fargo management knew that Plaintiffs and Class Members were routinely working significant time each day off site and "off the clock" outside of the standard forty (40) hour workweek at the bank branch to which they were assigned.

32.     At the beginning of each day, management would collect the Off Site Sheets from Plaintiffs and Class Members. Wells Fargo company policy also required District Managers to have a "huddle" with the hourly paid employees each morning during which the hourly employees were required to state the number of "solutions" that they were going to obtain that day. If the employees did not meet their daily target of "solutions" during normal business hours at the bank branch, then they were required to do so off site after normal business hours.

33.     Wells Fargo management also pressured Plaintiffs and Class Members

to solicit friends and family members to sign up for accounts in order to meet their quotas. Much of the "friends and family" solicitations occurred after normal bank branch business hours and at social gatherings. Indeed, some Wells Fargo employees have reported that "they spend holiday dinners trying to convince family members to sign up for accounts."

34.    In addition, Wells Fargo management required its hourly employees to participate in "call nights" whereby the managers forced hourly employees to remain at the branch after hours at least one night per week to solicit new accounts. For example, while working at the branch in New York, New York, Plaintiff Almonte participated in call nights on Tuesdays for approximately two to three hours each call night. While working at the branch in Clifton, New Jersey, Plaintiff Almonte participated in call nights on Tuesdays evenings which lasted for approximately one to one and a half hours each time. Plaintiff Sklenka participated in call nights at least once a week on Tuesdays or Wednesday, which lasted for approximately two to three hours each time. Plaintiff Hajisomo participated in call nights on Mondays for approximately two hours, and in addition, was required to call back customers on other nights to "check-in" and review the day's services. Plaintiffs and similarly situated Class Members were not compensated for these overtime hours worked, which were primarily off-the-clock.

35.    In accordance with Wells Fargo's requirements, Plaintiffs routinely

worked in excess of forty (40) hours per week. By way of non-exhaustive example: (a) Plaintiff Merino routinely worked off the clock up to three hours each day to solicit new accounts, including soliciting potential new customers at the gym, at social events, at family gatherings, and through his personal contact lists after normal bank branch business hours; (b) Plaintiff Morel worked approximately eight hours off the clock each week to solicit new accounts, including soliciting potential new customers at the barber shop, the mall and other social gatherings after normal bank branch business hours; (c) Plaintiff Thomson was required to stay at the branch for an extra two to four hours each week to perform work he could not get to during the day in order to solicit new accounts; (d) Plaintiff Almonte routinely worked an extra two to four hours each week to solicit new clients in and outside the branch; (e) Plaintiff Johnson worked an extra two to five hours per week to assist customers after-hours and perform work after closing including call nights; (f) Plaintiff Hajisomo worked an extra fifteen plus overtime hours per week, participating in early morning meetings, calling back customers every night, and working on weekends; (g) Plaintiff Chouza worked an extra two to four hours per week to meet sales quotas; and (h) Plaintiff Sklenka worked an extra six to eight hours per week during late call nights and morning meetings at the branch.

36.    Plaintiffs and the Classes, however, were not compensated for the time they spent soliciting and obtaining new accounts for Wells Fargo off-site or at their

branches outside of normal business hours.

37.     Plaintiffs and the Classes were non-salaried, non-exempt employees of Wells Fargo. On the rare occasion that Plaintiffs and the Classes worked less than forty (40) hours in any given week, then they were paid only for the actual hours worked at their respective bank branch. They were not compensated for the off-site and off the clock work that they were required to perform by management.

38.     Despite knowing that Plaintiffs and the Classes were routinely working overtime hours, Wells Fargo management did not permit them to enter their overtime worked into their weekly hourly reports on Time Tracker. To the contrary, by way of example, during his employment with Wells Fargo Plaintiff Merino was instructed by management to enter only up to, and not in excess of, 40 hours per week in the Time Tracker log. Similarly, Plaintiff Chouza was instructed by managers to falsify her electronic time log and not record the overtime hours.

39.     Wells Fargo systematically monitored daily sales quotas nationwide from each bank branch. Wells Fargo required its hourly non-exempt employees to report the number of "solutions", or new banking accounts and credit or debit cards, obtained at the end of each day. On Monday through Friday, at the end of each day, the District Managers would have a conference call during which they would report their "solutions" numbers to the Regional Managers. On Saturday mornings, each bank branch was required to email their "solutions" numbers to the Regional

Managers.

40.     When the hourly non-exempt employees failed to meet their quarterly quotas for new account openings, they were reprimanded. First, they were placed on warning. If they continued to fail to meet their quarterly quotas for new accounts, they would then be demoted and/or terminated. For example, in or around April 2014, Plaintiff Morel had a quarterly review with his manager, Felix Ramirez. Plaintiff Morel had not met his quarterly new account numbers for the quarter ended March 30, 2014. During his review, Plaintiff Morel informed his manager that the quarterly new account numbers were unrealistic and unattainable and that Wells Fargo needed to change its policy. Plaintiff Morel explained to his manager that the Wells Fargo target of opening eight "solutions" per customer was financially disadvantageous to many customers at the Paterson branch. Plaintiff Morel told his manager that a majority of the Wells Fargo customers at the Paterson branch had a very modest or low income and that they were not able to maintain multiple minimum balance requirements for more than one account. As a result, fees and service charges for insufficient balance requirements were being charged to many Wells Fargo customers of modest or low income status. Plaintiff Morel also witnessed elderly Wells Fargo clients on fixed income being "bamboozled" into opening credit card accounts that they did not need in order to meet the Wells Fargo target of eight "solutions" per customer. After this review, Plaintiff Morel was

frequently reprimanded by his manager, Mr. Ramirez, for failing to make a sale or open a new account. Mr. Ramirez also threatened to terminate Plaintiff Morel if he did not meet the new account numbers. Plaintiff Morel often voiced his opinion to his manager that he was not going to force a product on people who did not need it. In response, his manager told Plaintiff Morel that "you got to do what you got to do." When Plaintiff Morel failed to meet the quarterly new account numbers for the quarter ended June 30, 2014, he met again with his manager, Mr. Ramirez, in July 2014. During this meeting, Plaintiff Morel again informed his manager that the sales targets were unrealistic and that he had witnessed employees forging accounts in order to meet the quotas. The next month, in August 2014, Plaintiff Morel was terminated by Wells Fargo, ostensibly for failing to meet his quarterly new account numbers.

41.    Similarly, Plaintiff Thomson was hired by Wells Fargo as a Personal Banker I. In or around July 2012, Plaintiff Thomson was promoted to the position of Personal Banker II. Despite efforts to meet the pressured sales goals, which included soliciting clients and working unpaid overtime hours, Plaintiff Thomson was unable to reach his quotas. In or around July 2013, Plaintiff Thomson's manager told him that he and another Personal Banker II would be terminated if they continued to fail to meet the sales goals. They were also told that they could alternatively elect to move back to the Personal Banker I position. Plaintiff Thomson

took a demotion to the Personal Banker I position to avoid termination.

42.     In pursuit of its unrealistic cross-selling targets imposed by former Wells Fargo CEO Stumpf and implemented nationwide through the Wells Fargo Regional Managers, Wells Fargo knowingly failed to pay Plaintiffs and other members of the Classes overtime pay for the hours they worked over forty (40) hours per week. Instead, Plaintiffs and the Classes were only compensated for the forty (40) hours they worked in the bank branch offices of Wells Fargo at their standard hourly rates.

## COLLECTIVE ACTION ALLEGATIONS

43.     Plaintiffs bring this action individually and on behalf of the FLSA Collective defined above. Plaintiffs and the FLSA Collective Members are similarly situated and Plaintiffs will prosecute this action vigorously on behalf of the FLSA Collective.

44.     Plaintiffs intend to file a motion pursuant to 29 U.S.C. § 216(b) for an order permitting them to provide written notice of this action to all similarly situated FLSA Collective Members so that they have an opportunity to join this lawsuit.

## CLASS ACTION ALLEGATIONS

45.     Plaintiffs also bring this action as a class action pursuant to FED. R. CIV. P. 23(a) and (b)(3) on behalf of the State Law Classes defined above.

46.     The members of each of the State Law Classes are so numerous that

joinder of all members is impracticable.

47.     There are questions of law and fact common to each of the State Law Classes that predominate over any questions affecting only individual class members, including, without limitation: whether Wells Fargo has violated and continues to violate the wage and hour laws of New Jersey, Nevada, New York, Pennsylvania, Minnesota, North Carolina, and Connecticut through its policy or practice of not paying its non-exempt hourly employees for all overtime hours worked as alleged herein.

48.     The State Law Class Representatives' claims are typical of the claims of the State Law Classes they represent. Plaintiffs' counsel are competent and experienced in litigating class actions and other complex litigation matters, including wage and hour cases like this one. Plaintiffs Merino and Almonte are members of the New Jersey Class; Plaintiff Thomson is a member of the Nevada Class; Plaintiff Almonte is a member of the New York Class; Plaintiff Johnson is a member of the Pennsylvania Class; Plaintiff Hajisomo is a member of the Minnesota Class; Plaintiff Chouza is a member of the North Carolina Class; and Plaintiff Sklenka is a member of the Connecticut Class. Each of these Plaintiffs' claims arise out of the same policies, practices and course of conduct that form the basis of the claims of the State Law Class they seek to represent. Moreover, each of these Plaintiffs' claims are based on the same legal and remedial theories as those of the State Law Class they

seek to represent. There are no conflicts between the interests of Plaintiffs and the members of the State Law Class they seek to represent, and the injuries suffered by Plaintiffs are similar to the injuries suffered by the members of the State Law Class they seek to represent.

49.     The State Law Class Representatives designated above will fairly and adequately represent and protect the interests of the State Law Classes.

50.     Class certification is appropriate under FED. R. CIV. P. 23(b)(3) because questions of law and fact common to each of the State Law Classes predominate over any questions affecting only individual members.

51.     Class action treatment is superior to the alternatives for the fair and efficient adjudication of the controversy alleged herein. Such treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the duplication of effort and expense that numerous individual actions would entail. No difficulties are likely to be encountered in the management of this class action that would preclude its maintenance as a class action, and no superior alternative exists for the fair and efficient adjudication of this controversy. The members of each of the State Law Classes are readily identifiable from Wells Fargo's own employment records. Prosecution of separate actions by individual members of each of the State Law Classes would create the risk of inconsistent or varying adjudications and would

establish incompatible standards of conduct for Wells Fargo.

52.   A class action is also superior to other available methods for adjudication of this controversy because joinder of all members is impractical. Furthermore, the amounts at stake for many of the members of the State Law Classes, while substantial, are not great enough to enable them to maintain separate suits against Wells Fargo on an individual basis.

53.   Without a class action, Wells Fargo will retain the benefit of its wrongdoing, which will result in further damages to Plaintiffs and the State Law Classes. Plaintiffs envision no difficulty in the management of this action as a class action.

**COUNT ONE**
**Violation of the FLSA**
**(On Behalf of all Plaintiffs and the FLSA Collective)**

54.   Plaintiffs reallege and incorporate by reference all allegations in all preceding paragraphs.

55.   Wells Fargo is an "employer" covered by the minimum wage and overtime requirements set forth in the FLSA.

56.   As hourly paid employees of Wells Fargo, Plaintiffs and the FLSA Collective worked over forty (40) hours in many workweeks but were not paid overtime compensation under the FLSA for those excess hours.

57.   Plaintiff and the FLSA Collective do not qualify for any exemption

from the minimum wage and overtime obligations imposed by the FLSA.

58.     Throughout Plaintiffs' and the FLSA Collective Members' employment, Wells Fargo knew that Plaintiffs and the FLSA Collective were hourly paid employees who were required to solicit new accounts outside of regular bank branch business hours in order to meet quarterly new account quotas. Wells Fargo also knew that it was required to pay overtime wages at the rate of time and a half to Plaintiffs and the FLSA Collective for hours worked over 40 in any workweek. Despite this knowledge, Wells Fargo willfully withheld and failed to pay the overtime compensation to which Plaintiffs and the FLSA Collective were entitled.

59.     Pursuant to the FLSA, Plaintiffs and the FLSA Collective are entitled to unpaid overtime at a rate of one and one-half (1 ½) times their hourly wage. Because Wells Fargo's failure to pay such wages was willful pursuant to 28 U.S.C. § 255(a), Plaintiffs and the FLSA Collective are entitled to these wages dating back three years.

60.     The identity of all FLSA Collective Members is readily known to Wells Fargo pursuant to its human resource records. Plaintiffs are entitled to review these records and identify the FLSA Collective Members who have a right to be provided with notice and an opportunity to join this collective action.

61.     The exact amount of compensation, including overtime compensation that Wells Fargo failed to pay Plaintiffs and the FLSA Collective can be ascertained

by reviewing records that are in the possession of Wells Fargo and through the use of representative evidence and testimony.

62.     The FLSA requires employers to make, keep, and preserve records of the wages, hours, and other conditions and practices of employment, and to preserve such records. Plaintiffs and the FLSA Collective are entitled to review their records of hours worked and new accounts solicited each quarter in order to determine the exact amount of overtime wages owed by Wells Fargo. Absent Wells Fargo's keeping these records as required by law, Plaintiffs and the Class are entitled to submit their information about the number of overtime hours worked.

63.     Wells Fargo's failure to pay Plaintiffs and the FLSA Collective compensation in accordance with the lawful overtime rates is not based on good faith or reasonable grounds, or a belief that such failure is not in violation of the FLSA. Therefore, pursuant to 29 U.S.C. § 216(b), Plaintiffs and the FLSA Collective Members are entitled to liquidated damages in an amount equal to the compensation and/or overtime which they have not been paid.

64.     Plaintiffs have been required to file this action as the result of Wells Fargo's actions in failing to pay proper compensation. As such, Plaintiffs are entitled to attorneys' fees and costs incurred pursuant to 28 U.S.C. § 216(b).

## COUNT TWO
### Violation of the New Jersey Wage and Hour Law
### (On Behalf of Plaintiffs Merino and Almonte and the New Jersey Class)

65.     Plaintiffs reallege and incorporate by reference all allegations in all preceding paragraphs.

66.     Wells Fargo is an employer covered by the New Jersey Wage and Hour Law, N.J.S.A. 34:11-56a(1)(g).  The overtime wages sought by this claim are "wages" as defined by N.J.S.A. 34:11-56(a)(1)(d).  Throughout the relevant period, Wells Fargo has been subject to the New Jersey Wage and Hour Act and the enabling Regulations noted here.

67.     As hourly non-exempt employees for Wells Fargo, Plaintiffs Merino and Almonte and the New Jersey Class routinely worked overtime hours to solicit new accounts, but were not paid at a rate of time and a half for all hours worked in excess of forty (40) hours per week in violation of N.J.S.A. 12:56-6.1, *et seq*.

68.     Plaintiffs Merino and Almonte and the New Jersey Class do not qualify for any exemption from the wage and overtime requirements of the New Jersey Wage and Hour Law. They were subject to pay deductions that remove these exemptions and they do not otherwise meet the requirements of exempt status. *See* N.J.S.A. 34:11-56(a)(4).

69.     The exact amount of compensation, including overtime compensation that Wells Fargo failed to pay Plaintiffs and the New Jersey Class can be ascertained

by reviewing records that are in the possession of Wells Fargo and through the use of representative evidence and testimony.

70.     The New Jersey Wage and Hour Law requires employers to make, keep, and preserve records of the wages, hours, and other conditions and practices of employment, and to preserve such records. Plaintiffs Merino and Almonte and the New Jersey Class are entitled to review their records of hours worked to determine the exact amount of overtime wages owed by Wells Fargo. Absent Wells Fargo keeping these records as required by law, see N.J.S.A. 34:11-56(a)(20), Plaintiffs Merino and Almonte and the New Jersey Class are entitled to submit their information about the number of hours worked.

71.     Wells Fargo's failure to pay Plaintiffs Merino and Almonte and the New Jersey Class overtime wages at a rate of time and a half the regular hourly wage for each hour of working time in excess of 40 hours in any week was willful within the meaning of the New Jersey Labor Law. *See* N.J.S.A. 34:11-56(a)(40).

72.     As a result of Wells Fargo's willful and unlawful conduct, Plaintiffs Merino and Almonte and the New Jersey Class is entitled to an award of damages in an amount to be determined at trial, plus liquidated damages.

## COUNT THREE
### Violation of Nevada Labor Laws
### Failure to Pay Wages for All Hours Worked
### (On Behalf of Plaintiff Thomson and the Nevada Class)

73.     Plaintiffs reallege and incorporate by reference all allegations in all

preceding paragraphs.

74.     The Nevada Constitution, Nevada Revised Statute ("NRS") 608.140 provides that an "employee" shall have the right to bring suit for unpaid wages. An "employee" in Nevada is any person "in the service of an employer under any appointment or contract of hire or apprenticeship, express or implied, oral or written, whether lawfully or unlawfully employed."

75.     NRS 608.016 entitled, "Payment for each hour of work; trial or break-in period not excepted" states that: "An employer shall pay to the employee wages for each hour the employee works. An employer shall not require an employee to work without wages during a trial or break-in period."

76.     Nevada Administrative Code ("NAC") 608.115(1), entitled "Payment for time worked. (NRS 607.160, 608.016, 608.250)" states: "An employer shall pay an employee for all time worked by the employee at the direction of the employer, including time worked by the employee that is outside the scheduled hours of work of the employee."

77.     NRS 608.140 provides that an employee has a private right of action for unpaid wages.

78.     Wells Fargo is not exempt from the requirements of NRS 608.016 or NAC 608.115(1).

79.     As hourly non-exempt employees for Wells Fargo, Plaintiff Thomson

and the other members of the Nevada Class routinely worked overtime to solicit new accounts and worked after hours at the Wells Fargo branches without additional compensation.

80.     By failing to compensate Plaintiff Thomson and the Nevada Class for the time spent working in excess of forty (40) hours per week, as discussed above, Wells Fargo failed to pay Plaintiff Thomson and the Nevada Class for all hours worked in violation of NRS 608.140 and 608.016.

81.     As a result of Wells Fargo's violations, Plaintiff Thomson and the Nevada Class are owed payment by Wells Fargo at their applicable overtime premium rate and all unpaid wages due for the times worked each day for three years immediately preceding the filing of this FAC until the date of judgment after trial, together with attorneys' fees, costs, and interest as provided by law.

## COUNT FOUR
### Violation of Nevada Labor Laws
### Failure to Pay Overtime Wages
### (On Behalf of Plaintiff Thomson and the Nevada Class)

82.     Plaintiffs reallege and incorporate by reference all allegations in all preceding paragraphs.

83.     NRS 608.140 provides that an employee has a private right of action for unpaid wages.

84.     NRS 608.018(1) provides as follows: An employer shall pay 1 1/2 times an employee's regular wage rate whenever an employee who receives compensation

for employment at a rate less than 1 1/2 times the minimum rate prescribed pursuant to NRS 608.250 works: (a) More than 40 hours in any scheduled week of work; or (b) More than 8 hours in any workday unless by mutual agreement the employee works a scheduled 10 hours per day for 4 calendar days within any scheduled week of work.

85.     NRS 608.018(2) provides as follows: An employer shall pay 1 1/2 times an employee's regular wage rate whenever an employee who receives compensation for employment at a rate not less than 1 1/2 times the minimum rate prescribed pursuant to NRS 608.250 works more than 40 hours in any scheduled week of work.

86.     Plaintiff Thomson and the Nevada Class are not exempt from overtime provisions of NRS 608.018.

87.     By failing to compensate Plaintiff Thomson and Nevada Class for the time spent working in excess of forty (40) hours per week, as discussed above, Wells Fargo failed to pay Plaintiff Thomson and the Nevada Class Members proper overtime compensation in violation of NRS 608.140 and 608.018.

88.     As a result of Wells Fargo's violations, Plaintiff Thomson and the Nevada Class are owed payment by Wells Fargo at one and one-half (1 ½) times their "regular rate" of pay for all hours worked in excess of eight (8) hours in a workday for those Class Members whose regular rate of pay did not exceed the one and one-half the minimum wage set by law, and premium overtime at a rate of one

and one-half (1 ½) times their regular rate for all Class Members who worked in excess of forty (40) hours a workweek for three years immediately preceding the filing of this FAC until the date of judgment after trial, together with attorneys' fees, costs, and interest as provided by law.

## COUNT FIVE
### Violation of Nevada Labor Laws
### Failure to Timely Pay All Wages Due and Owing Upon Termination
### (On Behalf of Plaintiff Thomson and the Nevada Class)

89.    Plaintiffs reallege and incorporate by reference all allegations in all preceding paragraphs.

90.    NRS 608.140 provides that an employee has a private right of action for unpaid wages.

91.    NRS 608.020 provides that "[w]henever an employer discharges an employee, the wages and compensation earned and unpaid at the time of such discharge shall become due and payable immediately."

92.    NRS 608.040(1)(a-b), in relevant part, imposes a penalty on an employer who fails to pay a discharged or quitting employee: "Within 3 days after the wages or compensation of a discharged employee becomes due; or on the day the wages or compensation is due to an employee who resigns or quits, the wages or compensation of the employee continues at the same rate from the day the employee resigned, quit, or was discharged until paid for 30-days, whichever is less."

93.    NRS 608.050 grants an "employee lien" to each discharged or laid-off

employee for the purpose of collecting the wages or compensation owed to them "in the sum agreed upon in the contract of employment for each day the employer is in default, until the employee is paid in full, without rendering any service therefor; but the employee shall cease to draw such wages or salary 30 days after such default."

94.    By failing to pay Plaintiff Thomson and the Nevada Class Members for all hours worked in violation of state and federal law, at the correct legal rate, Wells Fargo has failed to timely remit all wages due and owing to Plaintiff Thomson and the Nevada Class.

95.    Despite being on notice of its wage and hour violations, Wells Fargo willfully refused and continues to refuse to pay Plaintiff Thomson and the Nevada Class Members all wages due.

96.    As a result of Wells Fargo's violations, Plaintiff Thomson and the Nevada Class are owed thirty (30) days wages under NRS 608.140 and 608.040, and an additional thirty (30) days wages under NRS 608.140 and 608.050, together with attorneys' fees, costs, and interest as provided by law.

### COUNT SIX
**Breach of Contract Under Nevada Law**
**(On Behalf of Plaintiff Thomson and the Nevada Class)**

97.    Plaintiffs reallege and incorporate by reference all allegations in all preceding paragraphs.

98.    At all times relevant herein, Wells Fargo had an oral, verbal, and/or

implied agreement with Plaintiff Thomson and with the Nevada Class to pay an agreed upon hourly wage rate for all hours they worked for Wells Fargo. Indeed, Wells Fargo offered to pay Plaintiff Thomson and Nevada Class Members a specific rate of pay in exchange for Plaintiff Thomson and Nevada Class Members' promise to perform work for Wells Fargo. That agreement necessarily included the agreement to be paid in accordance with Nevada's wage and hour laws.

99.    Plaintiff Thomson and the Nevada Class Members were not volunteers.

100.   Plaintiff and the Nevada Class complied with their obligation to work for Wells Fargo by showing up for work and performing work for Wells Fargo.

101.   Wells Fargo failed in its obligation to pay Plaintiff Thomson and the Nevada Class Members overtime pay pursuant to Nevada law for all the hours that they worked for Wells Fargo.

102.   Wells Fargo breached its agreement with Plaintiff Thomson and the Nevada Class Members by failing to compensate them for the time spent working in excess of forty (40) hours per week.

103.   As a result of Wells Fargo's breach, Plaintiff Thomson and the Nevada Class Members have suffered economic loss that includes lost wages and interest.

104.   As a result of Wells Fargo's violations, Plaintiff Thomson and the Nevada Class are owed their overtime rate of pay for all hours worked off the clock for three years immediately preceding the filing of this FAC until the date of

judgment after trial, together with attorney's fees, costs, and interest as provided by law.

### COUNT SEVEN
**Violation of New York Labor Law – Unpaid Overtime**
**(On Behalf of Plaintiff Almonte and the New York Class)**

105.   Plaintiffs reallege and incorporate by reference all allegations in all preceding paragraphs.

106.   Overtime compensation due to New York workers is governed by New York Labor Law ("NYLL"), N.Y. COMP. CODES R. & REGS. tit. 12, § 142-2.2.

107.   NYLL requires that employees be compensated for all hours worked in excess of forty (40) hours per week at a rate not less than one and one-half (1 ½) times the regular rate at which he is employed. *See* N.Y. COMP. CODES R. & REGS. tit. 12, § 142-2.2.

108.   Wells Fargo is subject to the wage requirements of the NYLL because Wells Fargo is an "employer" under N.Y. LAB. LAW § 651(6).

109.   During all relevant times, Plaintiff Almonte and the New York Class are covered employees entitled to the above-described NYLL's protections. *See* N.Y. LAB. LAW § 651(5) and N.Y. COMP. CODES R. & REGS. tit. 12, § 142-2.14.

110.   Plaintiff Almonte and the New York Class are not exempt from the requirements of the NYLL.

111.   Wells Fargo has employed Plaintiff Almonte and members of the New

York Class for workweeks longer than 40 hours and willfully failed to compensate Plaintiff Almonte and the New York Class for all of the time worked in excess of 40 hours per week, at a rate of at least one and one-half (1 ½) times their regular hourly rate, in violation of the requirements of NYLL.

112.   By the course of conduct set forth above, Wells Fargo has violated N.Y. Lab. Law § 650, *et* seq.; 12 N.Y.C.R.R. Part 142-2.2.

113.   Wells Fargo has failed to keep, make, preserve, maintain and furnish accurate records of time worked by Plaintiff Almonte and members of the New York Class.

114.   Wells Fargo has maintained a policy and practice failing to pay overtime compensation for all hours worked to Plaintiff Almonte and the New York Class.

115.   Wells Fargo's failure to pay overtime compensation to Plaintiff Almonte and the New York Class was willful within the meaning of N.Y. Lab. Law § 663.

116.   As a consequence of the willful underpayment of wages, alleged above, Plaintiff Almonte and members of the New York Class incurred damages thereby and Wells Fargo is indebted to them in the amount of the unpaid overtime compensation and such other legal and equitable relief due to Wells Fargo's unlawful and willful conduct, as the Court deems just and proper.

117. Plaintiff Almonte, on behalf of himself and the New York Class, seek recovery of liquidated damages, attorneys' fees, and costs to be paid by Wells Fargo as provided by the NYLL.

## COUNT EIGHT
### Violation of the Pennsylvania Minimum Wage Act of 1968
### (On Behalf of Plaintiff Johnson and the Pennsylvania Class)

118. All previous paragraphs are incorporated as though fully set forth herein.

119. The Pennsylvania Minimum Wage Act of 1968 ("PMWA") requires that covered employees be compensated for all hours worked in excess of forty (40) hours per week at a rate not less than one and one-half (1 ½) times the regular rate at which they are employed. *See* 43 P.S. § 333.104(c) and 34 Pa. Code § 231.41.

120. Wells Fargo is subject to the overtime requirements of the PMWA because Wells Fargo is an employer under 43 P.S. § 333.103(g).

121. During all relevant times, Plaintiff Johnson and the Pennsylvania Class Members were covered employees entitled to the above-described PMWA's protections. *See* 43 P.S. § 333.103(h).

122. Wells Fargo's compensation scheme that was applicable to Plaintiff Johnson and the Pennsylvania Class Members between November 2014 and the present failed to comply with either 43 P.S. § 333.104(c) or 34 Pa. Code § 231.41.

123. Wells Fargo failed to compensate Plaintiff Johnson and the

Pennsylvania Class Members at a rate of one and one-half (1 ½) times their regular hourly wage for hours worked in excess of forty (40) hours per week, in violation of 43 P.S. § 333.104(c) and 34 Pa. Code § 231.41.

124.   Pursuant to 43 P.S. § 333.113, employers, such as Wells Fargo, who fail to pay an employee wages in conformance with the PMWA shall be liable to the employee for the wages or expenses that were not paid, court costs and attorneys' fees incurred in recovering the unpaid wages.

## COUNT NINE
### Violation of the Minnesota Fair Labor Standards Act
### (On Behalf of Plaintiff Hajisomo and the Minnesota Class)

125.   All previous paragraphs are incorporated as though fully set forth herein.

126.   Overtime compensation due to employees working in Minnesota is governed by the Minnesota Fair Labor Standards Act ("MFLSA"), Minn. Stat. Ann. §§ 177.21 to 177.35.

127.   The MFLSA requires that employees be compensated for all hours worked in excess of forty-eight (48) hours per week at a rate not less than one and one-half (1 ½) times the regular rate at which he is employed. *See* Minn. Stat. Ann. § 177.25.

128.   The MFLSA defines "employer" broadly to include "any individual, partnership, association, corporation, business trust, or any person or group of persons acting directly or indirectly in the interest of an employer in relation to an employee." Minn. Stat. Ann. § 177.23 Subd. 6.

129.   Wells Fargo is subject to the wage requirements of the MFLSA because Wells Fargo is an "employer" under Minn. Stat. Ann. § 177.23 Subd. 6.

130.   During all relevant times, Plaintiff Hajisomo and the Minnesota Class are covered employees entitled to the above-described MFLSA's protections. *See* Minn. Stat. Ann. § 177.23 Subd. 7.

131.   Plaintiff Hajisomo and the Minnesota Class are not exempt from the requirements of the MFLSA.

132.   As a result of Wells Fargo's failure to record, report, credit and/or compensate Plaintiff Hajisomo and the Minnesota Class, Wells Fargo has failed to make, keep and preserve records with respect to each of their employees sufficient to determine the wages, hours and other conditions and practices of employment in violation of the MFLSA.

133.   By virtue of Wells Fargo's failure to pay Plaintiff Hajisomo and the Minnesota Class members the legally required overtime wages for all hours worked in excess of forty-eight (48) hours per week, Wells Fargo violated Minn. Stat. Ann. § 177.25.

134.   Pursuant to Minn. Stat. Ann. § 177.27, employers, such as Wells Fargo, who willfully fail to pay employees wages in conformance with the MFLSA shall be liable to the employees for the unpaid wages or expenses, liquidated damages, and attorneys' fees and court costs.

40

135.   In violating the MFLSA, Wells Fargo acted willfully and/or with reckless disregard of clearly applicable MFLSA provisions.

## COUNT TEN
### Violation of the North Carolina Wage and Hour Act
### (On Behalf of Plaintiff Chouza and the North Carolina Class)

136.   All previous paragraphs are incorporated as though fully set forth herein.

137.   Count Ten arises from Wells Fargo's policy of suffering or permitting Plaintiff Chouza and the North Carolina Class Members to work without timely paying all promised and earned wages for all hours worked in violation of N.C. Gen. Stat. §§ 95-25.6.

138.   Wells Fargo violated N.C. Gen. Stat. §§ 95-25.6 by failing to pay Plaintiff Chouza and North Carolina Class Members all promised and earned wage payments on the employees' regular payday for all hours worked.

139.   North Carolina's Wage and Hour Act ("WHA") requires an employer to pay all wages due to its employees. See N.C. Gen. Stat. § 95-25.6.

140.   Wells Fargo is subject to the wage requirements of the WHA because Wells Fargo is an "employer" under N.C. Gen. Stat. § 95-25.2(5).

141.   At all relevant times, Plaintiff Chouza and the North Carolina Class are covered employees entitled to the above-described WHA's protections. See N.C. Gen. Stat. § 95-25.2(4).

142.   Plaintiffs and the North Carolina Class are not exempt from the requirements of the WHA for wage payments.

143.   Wells Fargo, pursuant to its policies and practices, failed and refused to pay overtime compensation for all hours worked over forty (40) in a workweek to Plaintiff Chouza and the North Carolina Class in violation of the WHA. See N.C. Gen. Stat. § 95-25.15(b).

144.   Wells Fargo has intentionally failed to pay the wages due to Plaintiff Chouza and the North Carolina Class in violation of N.C. Gen. Stat. § 95-25.6.

145.   Wells Fargo is not permitted by state or federal law, or by order of a court of competent jurisdiction, to withhold or divert any portion of Plaintiff's and the North Carolina Class' wages that concern this lawsuit.

146.   Wells Fargo does not have written authorization from Plaintiff Chouza or any members of the North Carolina Class to withhold, divert or deduct any portion of their wages that concern this lawsuit.

147.   Pursuant to N.C. Gen. Stat. § 95-25.22, an employer, such as Wells Fargo, who fails to pay an employee wages in conformance with the WHA shall be liable to the employee for the wages or expenses that were not paid, interest, liquidated damages, court costs and attorneys' fees incurred in recovering the unpaid wages.

148.   In violating North Carolina law, Wells Fargo acted willfully and with

reckless disregard of clearly applicable WHA provisions.

## COUNT ELEVEN
### Violation of the Connecticut Minimum Wage Act – Overtime
### (On Behalf of Plaintiff Sklenka and the Connecticut Class)

149.   Plaintiffs reallege and incorporate by reference all allegations in all preceding paragraphs.

150.   At all relevant times, Wells Fargo has been, and continues to be, an "employer" within the meaning of the Connecticut Minimum Wage Act, Conn. Gen. Stat. §§ 31-58, *et seq*. ("CMWA").

151.   At all relevant times, Plaintiff Sklenka and the Connecticut Class were "employees" of Wells Fargo, within the meaning of the CMWA. *See* Conn. Gen. Stat. § 31-58(e), (f), (h).

152.   Plaintiff Sklenka and the Connecticut Class Members worked in excess of 40 hours during some workweeks in the relevant period.

153.   Wells Fargo failed to pay Plaintiff Sklenka and the Connecticut Class Members one-and-one-half times the full minimum wage for all work in excess of 40 hours per workweek, in violation of Conn. Gen. Stat. §§ 31-60 and 31-71(b).

154.   Due to Wells Fargo's violations, Plaintiff Sklenka and Connecticut Class Members were damaged and are entitled to recover from Wells Fargo overtime compensation, an additional equal amount as liquidated damages, and reasonable attorneys' fees, costs, and expenses of this action, pursuant to Conn. Gen. Stat. §§

31-68 and 31-72.

## COUNT TWELVE
### Violation of the Connecticut Minimum Wage Act - Payment of All Wages Due
### (On Behalf of Plaintiff Sklenka and Connecticut Class)

155.   Plaintiffs reallege and incorporate by reference all allegations in all preceding paragraphs.

156.   Wells Fargo knowingly and intentionally issued paychecks to Plaintiff Sklenka and the Connecticut Class that did not include "all wages due" for each week worked, as required by the CMWA, Conn. Gen. Stat. § 31-71(b), because Wells Fargo failed to pay Plaintiff Sklenka and the Connecticut Class overtime compensation for all of their overtime hours worked.

157.   As a result, Wells Fargo knowingly, unreasonably, arbitrarily, intentionally, and in bad faith failed to pay "all wages due" at the time of discharge or voluntary termination to Plaintiff Sklenka and the Connecticut Class, in violation of the CMWA, Conn. Gen. Stat. § 31-71(c).

158.   Plaintiff Sklenka, individually and on behalf of the Connecticut Class, seeks damages in the amount of twice the unpaid overtime earned and due at a rate not less than one and one-half times the regular rate of pay for work performed in excess of forty hours in a workweek, plus pre- and post-judgment interest at a rate of 10% per year, as provided by the CMWA, Conn. Gen. Stat. § 31-72 and Conn. Gen. Stat. § 37-3(a), with costs and such reasonable attorney's fees as may be

allowed by the court.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs request judgment against Defendants as follows:

A.   An order permitting this litigation to proceed as a collective action on behalf of Plaintiffs and the FLSA Collective pursuant to 29 U.S.C. § 216(b);

B.   Prompt notice pursuant to 29 U.S.C. § 216(b) of this litigation to all FLSA Collective Members;

C.   An order permitting this litigation to proceed as a class action pursuant to FED. R. CIV. P. 23(a) and (b)(3) on behalf of each of the State Law Classes;

D.   A declaration that Defendants' conduct is in violation of the FLSA and the state wage and hour laws set forth above;

E.   Compensatory damages, including minimum wage and overtime pay;

F.   Liquidated and punitive damages;

G.   Pre-judgment interest;

H.   Attorneys' fees and costs; and

I.   Any such further relief as may be just and proper.

## JURY TRIAL DEMAND

Plaintiffs demand a trial by jury as to all claims so triable.

Dated: February 28, 2019          Respectfully submitted,

s/ Roosevelt N. Nesmith
Roosevelt N. Nesmith
**LAW OFFICE OF**
**ROOSEVELT N. NESMITH, LLC**

363 Bloomfield Avenue, Suite 2C
Montclair, New Jersey 07042
Tel: (973) 259-6990
Fax: (866) 848-1368
roosevelt@nesmithlaw.com

Shanon J. Carson*
Sarah R. Schalman-Bergen*
Alexandra K. Piazza (NJ 010922013)
**BERGER MONTAGUE P.C.**
1818 Market Street, Suite 3600
Philadelphia, PA 19103
Telephone: (215) 875-3000
Facsimile: (215) 875-4604
Email: scarson@bm.net
        sschalman-bergen@bm.net
        apiazza@bm.net

Catherine E. Anderson
**GISKAN SOLOTAROFF & ANDERSON LLP**
217 Centre Street, 6th Floor
New York, NY 10013
Tel: (212) 847-8315
Fax: (646) 520-3236
Email: canderson@gslawny.com

David R. Markham*
**THE MARKHAM LAW FIRM**
750 B. Street, Suite 1950
San Diego, California 92101
Email: dmarkham@markham-law.com

Peggy Reali*
**REALI LAW, APC**
1754 Thomas Ave.
San Diego, CA 92109
Email: preali@realilaw.com

Richard Quintilone, II*
**QUINTILONE & ASSOCIATES**

46

22974 El Toro Road, Suite 100
Lake Forest, CA 92630-4961
Email: req@quintlaw.com

**RUSSELL S. WARREN, JR.**
473 Sylvan Avenue
Englewood Cliffs, New Jersey 07632-1234
Tel: (201)503-0773
Fax: (201) 503-0776
mail@RWarrenlaw.com

*Admitted *pro hac vice*

*Counsel for Plaintiffs*

## **<u>CERTIFICATE OF SERVICE</u>**

The undersigned hereby certifies that a true and correct copy of the foregoing was served upon all counsel of record through the Court's ECF system this 28th day of February, 2019.

s/ Roosevelt N. Nesmith

Roosevelt N. Nesmith
