# EXHIBIT 1

## *Merino, et al. v. Wells Fargo Bank, N.A., et al.*

### SETTLEMENT AGREEMENT AND RELEASE

This Settlement Agreement and Release (hereinafter, "**Settlement**" or "**Agreement**") is made and entered into in the lawsuit *Merino, et al. v. Wells Fargo Bank, N.A., et al.*, No. 2:16-cv-07840-ES-MAH (D.N.J.) (the "**Lawsuit**"), by and between Plaintiffs Juan Carlos Merino, Agustin Morel, Jr., Joshua Thomson, Jonathan Almonte, Keenan Johnson, Abdullahi Hajisomo, Claudia Cervantes Chouza, Richard Sklenka, and Wilson Blount; and Opt-In Plaintiffs Kayla Burget-Ruff, David Davis, Heather Davis, Aaron Diaz, Kathleen Jones, and Jeffrey Trawinski; and Defendants Wells Fargo Bank, N.A. (the "**Bank**") and Wells Fargo & Company (together with the Bank, "**Defendants**" or "**Wells Fargo**"), and is subject to the approval of the Court. Collectively, Plaintiffs, Opt-In Plaintiffs, and Defendants are referred to in this Agreement as the "**Parties**."

### RECITALS

WHEREAS, on October 25, 2016, Plaintiffs Juan Carlos Merino and Agustin Morel, Jr. filed the original Complaint in the Lawsuit asserting a collective action for alleged violations of the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.* ("**FLSA**"), and a class action for alleged violations of the New Jersey Wage and Hour Law, N.J. Stat. Ann. 34:11-56a, *et seq.* and N.J. Admin. Code 12:56-6.1, *et seq.*;

WHEREAS, on April 21, 2017, Plaintiffs Juan Carlos Merino and Agustin Morel, Jr. filed a Motion for Conditional Certification And Court-Authorized Notice Pursuant to Section 216(b) of the FLSA (the "**Motion for Conditional Certification**");

WHEREAS, on November 30, 2017, Plaintiffs filed a Motion to Amend Complaint and Add New Parties (the "**Motion to Amend**") seeking to add Opt-In Plaintiffs Jonathan Almonte and Joshua Thomson as named plaintiffs and to add class action claims for alleged violations of New York's Labor Law and regulations, N.Y. Lab. Law § 160, *et seq.* and 12 N.Y. Comp. Codes R. & Regs. Part 142, and Nevada's Labor Law and regulations, Nev. Rev. Stat. § 608.016, *et seq.* and Nev. Admin. Code 608.123, as well as claims for breach of contract under Nevada law and failure to timely pay all wages due upon termination in purported violation of Nev. Rev. Stat. §§ 608.020 - .050;

WHEREAS, on December 5, 2017, Plaintiffs' Motion for Conditional Certification was administratively terminated without prejudice to refiling because of Plaintiffs' pending Motion to Amend;

WHEREAS, the Motion to Amend was terminated by the Court on February 5, 2018 without prejudice on administrative grounds along with two other pending motions because of the Court's entry of an order requested by the Parties to stay proceedings for purposes of alternative dispute resolution ("**ADR**");

WHEREAS, Plaintiffs assert that their claims alleged in the Lawsuit are meritorious, and Wells Fargo denies that it has committed any wrongdoing or violated any federal or state laws pertaining to payment of wages or hours worked, vigorously disputes the claims asserted in the

1

Lawsuit, and asserts that it has strong defenses to the claims in the Lawsuit and that it would prevail if the Lawsuit continued to be litigated;

WHEREAS, in order to avoid the expense and burden of further litigation, the Parties desire to resolve any and all causes of action, claims, or demands based on purported violations of the FLSA, the state laws of New Jersey, New York, and Nevada, as well as any other state or local law (statutory, regulatory, and common law) pertaining to payment of wages and hours worked, including, without limitation, all claims that were asserted or that could have been asserted in the Lawsuit based upon the facts alleged;

WHEREAS, the Parties have conducted a thorough investigation into the facts and claims alleged in the Lawsuit and are of the opinion and belief that the Settlement is fair, reasonable, adequate and in the best interests of all, in light of all known facts and circumstances, including the considerable expense of formal discovery, the affirmative and other defenses asserted by Wells Fargo, the uncertainty and risks of continued litigation and possible appeals, and the risks of delay and an adverse judgment;

WHEREAS, the Parties engaged in substantial ADR-related discovery pursuant to the Parties' Stipulated Mediation Confidentiality Order, and subsequently in extensive arm's-length comprehensive settlement negotiations, including but not limited to two in-person full day mediation sessions that took place in Oakland, California on May 1, 2018 and June 20, 2018, that were both overseen by an experienced and well-respected wage and hour law mediator, Jeffrey A. Ross, Esq.;

WHEREAS, the Parties' ADR process and mediation sessions, as well as subsequent extensive arm's-length negotiations overseen by the mediator, eventually resulted in this definitive Agreement, which is subject to the Court's approval;

WHEREAS, contemporaneously with Plaintiffs' motion for preliminary approval of this Agreement and for settlement purposes only, and based upon assertions that Plaintiffs made during the mediation process, Class Counsel shall file a Second Amended Complaint ("**SAC**") in the Lawsuit via a stipulation of the Parties to add Joshua Thomson, Jonathan Almonte, Keenan Johnson, Abdullahi Hajisomo, Claudia Cervantes Chouza, Richard Sklenka, and Wilson Blount as named Plaintiffs who will seek certification of the settlement classes and/or settlement collective, and to add claims for unpaid wages, including overtime wages, under the wage and hour laws of New York, Nevada, Pennsylvania, North Carolina, Minnesota, and Connecticut;

NOW, THEREFORE, in consideration of the foregoing premises and the terms and conditions set forth herein, the Parties agree, subject to the Court's approval, as follows:

## DEFINITIONS

1. **Definitions.**

    1.1.    As used in this Agreement, the following terms have the following meanings. The following is not a complete list of all defined terms; additional defined terms appear in this Agreement's foregoing and subsequent paragraphs.

1.2.    "**Adjusted Minimum Payment**" is defined in Paragraph 6.5.

1.3    "**Administrator**" means Rust Consulting, the Settlement Administrator agreed upon by the Parties and appointed by the Court in its Preliminary Approval Order, who shall be responsible for providing notice and administering the Settlement.

1.4.    "**All Writs Injunction**" is defined in Paragraph 25.1, below.

1.5.    "**Claim Deadline**" means the later of sixty (60) calendar days after the date the applicable Notice of Settlement and Claim Form are mailed by the Administrator, or thirty (30) calendar days after the date of re-mailing in the event that the initial mailing is returned as undeliverable for a particular Settlement Collective Member or Settlement Class Member.

1.6.    "**Check Opt-In Form**" means the language as specified in this Agreement that will appear on the back of every Settlement Payment check issued to each Settlement Collective Member and each Participating Class Member.

1.7.    "**Claim Form**" means the form that will be enclosed in the Mailing Packet with the Notices of Settlement in the form attached hereto as Exhibit "A."

1.8.    "**Claimant**" means a Participating Collective Member or Participating Class Member who completes, signs, and returns to the Administrator a valid and timely Claim Form without altering the language of it (as detailed in Paragraph 22).

1.9.    "**Class Counsel**" means Berger Montague PC, the Law Office of Roosevelt N. Nesmith, LLC, Giskan Solotaroff & Anderson LLP, The Markham Law Firm, Reali Law APC, Quintilone & Associates, and Russell S. Warren, Jr.

1.10.    "**Collective/Class List**" is defined in Paragraph 16.1.

1.11.    "**Contingencies**" is defined in Paragraph 27.1.

1.12.    "**Court**" means the United States District Court for the District of New Jersey that is presiding over the Lawsuit.

1.13.    "**Covered Positions**" means the following hourly-paid positions at the Bank: Customer Sales and Service Representatives ("CSSRs"), Personal Banker 1s ("PB1s"), Personal Banker 2s ("PB2s"), Private/Premier Bankers ("PPBs"), Business Banking Specialists ("BBSs"), and Senior Business Banking Specialists ("SBBSs").

1.14.    "**Defendants' Counsel**" means Seyfarth Shaw LLP ("Seyfarth Shaw").

1.15.    "**Effective Date**" means the later of the following occurrences:

(i)    Thirty-five (35) calendar days after the Final Approval Order is entered on the docket in the Lawsuit by the Court if no appeal of the Final Approval Order is filed within that 35-day period; or

(ii) If an appeal is filed, ten (10) business days after the Final Approval Order has been affirmed and approved in its entirety with no further right of appeal or review.

1.16. "**Excluded Individuals**" is defined in Paragraph 5.2.

1.17. "**Final Approval Hearing**" means the hearing held by the Court to consider the fairness, reasonableness, and adequacy of this Agreement; Plaintiffs' and Opt-In Plaintiffs' requests for service awards; Class Counsel's motion for attorneys' fees and costs; and whether to enter a Final Approval Order.

1.18. "**Final Approval Order**" means an order issued by the Court that grants final approval of the Settlement without change to any Material Term, grants final certification of the Settlement Collective and Settlement Class (including all of its Applicable State Subclasses) for settlement purposes only, authorizes payments to Settlement Participants, the Administrator, and Class Counsel, and fully and finally dismisses the Lawsuit with prejudice.

1.19. "**Final Approval Papers**" is defined in Paragraph 26.1.

1.20. "**Gross Settlement Amount**" is defined in Paragraph 5.1.

1.21. "**Initial Check Cashing Period**" is defined in Paragraph 24.1.

1.22. "**Mailing Packet**" means collectively the Notice of Settlement and the Claim Form that are sent to a Settlement Collective Member and/or a Settlement Class Member. The Claim Form is attached as Exhibit "A." The Notices of Settlement are attached as Exhibits "B" and "C."

1.23. "**Material Term**" is defined in Paragraph 28.1.

1.24. "**Maximum Settlement Amount**" is defined in Paragraph 5.1.

1.25. "**Minimum Payment**" is defined in Paragraph 6.1.

1.26. "**Minimum Settlement Amount**" is defined in Paragraph 24.5.

1.27. "**Net Settlement Amount**" is defined in Paragraph 5.3.

1.28. "**Notice(s) of Settlement**" means the form of Notice of Settlement of FLSA Collective and Class Action Lawsuit to be sent to all Settlement Class Members, which is attached hereto as Exhibit "B," and/or the form of Notice of Settlement of FLSA Collective Action Lawsuit to be sent to those Settlement Collective Members who are not also Settlement Class Members, which is attached hereto as Exhibit "C."

1.29. "**Opt-In Plaintiffs**" means the following individuals who filed consents to join the Lawsuit as FLSA opt-in plaintiffs before execution of this Agreement and are Parties to this Agreement, but who shall not become named plaintiffs upon the filing of the SAC or seek certification of the Settlement Collective or Settlement Class for purposes of the Settlement: Kayla Burget-Ruff, David Davis, Heather Davis, Aaron Diaz, Kathleen Jones, and Jeffrey Trawinski.

Opt-In Plaintiffs do not need to submit a Claim Form in order to be a Participating Collective Member or Claimant.

1.30. "**Participating Class Members**" means Plaintiffs, those Opt-In Plaintiffs who meet the definition of one (or more) of the Applicable State Subclasses that comprise the Settlement Class, and all Settlement Class Members, except those who opt out by timely submitting a valid Request for Exclusion from the Settlement pursuant to the process described herein.

1.31. "**Participating Collective Members**" means Plaintiffs, Opt-In Plaintiffs, and all Settlement Collective Members who submit a valid and timely Claim Form or endorse a Settlement Payment check without altering the language included on the Claim Form or Check Opt-In Form (as detailed in Paragraph 22).

1.32. "**Per Workweek Amount**" is defined in Paragraph 6.4.

1.33. "**Person**" means and refers to individuals as well as corporations and associations existing under or authorized by federal law or the law of any state.

1.34. "**Plaintiffs**" means Plaintiffs Juan Carlos Merino and Agustin Morel, Jr. and the following seven individuals who filed consents to join the Lawsuit before execution of, and are Parties to, this Agreement: Joshua Thomson, Jonathan Almonte, Keenan Johnson, Abdullahi Hajisomo, Claudia Cervantes Chouza, Richard Sklenka, and Wilson Blount. When, for settlement purposes only, the SAC is filed, these seven opt-in plaintiffs shall be added as named plaintiffs who shall seek certification of the Settlement Collective and the Applicable State Subclasses of the Settlement Class as detailed below. Plaintiffs do not need to submit a Claim Form in order to be a Participating Collective Member or Claimant.

1.35. "**Preliminary Approval Date**" means the date of the Court's Preliminary Approval Order.

1.36. "**Preliminary Approval Order**" means the Court's order granting Plaintiffs' unopposed motion for preliminary approval of the Settlement, without change to any Material Term, and authorizing the distribution of the Mailing Packets.

1.37. "**Preliminary Approval Papers**" is defined in Paragraph 25.1.

1.38. "**Qualified Settlement Fund**" or "**QSF**" means a non-interest-bearing account meeting the requirements of 26 C.F.R. § 1.468B-1 that will be held by the Administrator at US Bank, N.A. The money deposited in the QSF will be used to effectuate the terms of this Agreement and the orders of the Court in the Lawsuit. The QSF and its assets will be segregated (within a separately established fund or account) from the assets of Wells Fargo and all related Persons.

1.39. "**Qualifying Workweeks**" is defined in Paragraph 6.3.

1.40. "**Released Claims**" is defined in Paragraph 12.1.

1.41.   "**Released Parties**" means Defendants and each of their parents, divisions, subsidiaries, affiliates, sibling entities, investors, predecessors, and successors, and each of their current and former owners, stockholders, directors, officers, members, fiduciaries, insurers, employees, attorneys, representatives, and agents.

1.42.   "**Request for Exclusion**" means the written statement, as specified in this Agreement, through which a Settlement Class Member may request exclusion ("opt-out") from the Settlement Class and any Applicable State Subclass.

1.43.   "**Reserve Amount**" is defined in Paragraph 5.2.

1.44.   "**Residual Net Settlement Amount**" is defined in Paragraph 6.4(ii).

1.45.   "**Reverse Positive Pay**" means the process by which the Administrator shall review Settlement Payment checks that have been cashed to confirm that the Check Opt-In Form language has not been altered, that the check has been signed, and that the check has not been cashed previously. Because any checks that are not reviewed are automatically paid out of the Qualified Settlement Fund's Reverse Positive Pay account at the end of the bank's business day, the Administrator shall perform the Reverse Positive Pay duties the same day that the check is cashed and direct the bank to reject payment on any checks that show alterations to the Check Opt-In Form language, that are not signed, or that previously have been negotiated.

1.46.   "**Second Check Cashing Period**" is defined in Paragraph 24.2.

1.47.   "**Settlement Class**" means all individuals in the Applicable State Subclasses. The "**Applicable State Subclasses**" mean all individuals who, while working for the Bank in a Covered Position in one of the states set forth in (i) through (vii) below, recorded working more than 38 hours in at least one workweek during the following relevant time period for the Applicable State Subclass (collectively these time periods are referred to as the "**Applicable Class Period**"):

(i)      In Connecticut at any time from January 1, 2016 through December 31, 2017 (the "**Connecticut Subclass**"), and Plaintiff Richard Sklenka is the class representative for the Connecticut Subclass;

(ii)      In Minnesota at any time from January 1, 2015 through December 31, 2017 (the "**Minnesota Subclass**"), and Plaintiff Abdullahi Hajisomo is the class representative for the Minnesota Subclass;

(iii)      In Nevada at any time from January 1, 2016 through December 31, 2017 (the "**Nevada Subclass**"), and Plaintiff Joshua Thomson is the class representative for the Nevada Subclass;

(iv)      In New Jersey at any time from January 1, 2016 through December 31, 2017 (the "**New Jersey Subclass**"), and Plaintiffs Juan Carlos Merino and Jonathan Almonte are the class representatives for the New Jersey Subclass;

(v)    In New York at any time from January 1, 2012 through December 31, 2017 (the "**New York Subclass**"), and Plaintiff Jonathan Almonte is the class representative for the New York Subclass;

(vi)    In North Carolina at any time from January 1, 2016 through December 31, 2017 (the "**North Carolina Subclass**"), and Plaintiff Claudia Cervantes Chouza is the class representative for the North Carolina Subclass; and

(vii)    In Pennsylvania at any time from January 1, 2015 through December 31, 2017 (the "**Pennsylvania Subclass**"), and Plaintiff Keenan Johnson is the class representative for the Pennsylvania Subclass.

1.48.    "**Settlement Class Member**" means an individual member of the Settlement Class.

1.49.    "**Settlement Collective**" means all individuals who, while working for the Bank in a Covered Position, at any time from January 1, 2015 through December 31, 2017 (the "**Collective Period**") in any state other than California, recorded working more than 38 hours in at least one workweek during the Collective Period. The named plaintiffs and any opt-in plaintiffs in *Miller, et al. v. Wells Fargo Bank, N.A.*, No. 2:16-cv-05597-JHS (E.D. Pa.), are excluded from the Settlement Collective and Settlement Class. Plaintiffs Juan Carlos Merino, Agustin Morel, Jr., Joshua Thomson, Jonathan Almonte, Keenan Johnson, Abdullahi Hajisomo, Claudia Cervantes Chouza, and Richard Sklenka are seeking certification of the Settlement Collective.

1.50.    "**Settlement Collective Member**" means an individual member of the Settlement Collective.

1.51.    "**Settlement Participants**" refers collectively to Plaintiffs, Opt-In Plaintiffs, Participating Collective Members, and Participating Class Members.

1.52.    "**Settlement Payment**" means the Minimum Payment (or Adjusted Minimum Payment) that a Settlement Participant receives plus any additional Per Workweek Amount that a Claimant receives from the Net Settlement Amount pursuant to this Agreement, which shall be added together and paid on one check. It also includes any payment that a Claimant or Excluded Individual receives as a result of a successful dispute pursuant to the dispute process set forth in Paragraph 23, "Handling of Disputes."

1.53.    "**Settlement Website**" means the website regarding this Settlement that will be established by the Administrator within ten (10) business days after the Preliminary Approval Date. The domain name of the Settlement Website shall be approved by the Parties. The Settlement Website shall contain relevant information about the Settlement, including downloadable .pdf copies of this Agreement and its Exhibits (which include, without limitation, the Notices of Settlement and the Claim Form), the Preliminary Approval Order, the Final Approval Order, and other case documents and/or information relevant to the Settlement to the extent such additional documents and/or information are agreed upon by the Parties. The Settlement Website shall also include a "Frequently Asked Questions" webpage that shall be agreed upon by the Parties. The Settlement Website shall be owned and operated by the Administrator. The Administrator will post relevant information about the Settlement on the Settlement Website, including, as it becomes available, information about deadlines and methods

to participate but only with the express agreement of the Parties. Claim Forms may be submitted by Settlement Collective Members and Settlement Class Members to the Administrator via the Settlement Website in a secure and private fashion using Share File or a suitable alternative that requires the submission of a unique identifying number for each individual Settlement Collective Member or Settlement Class Member to guard against fraud. Each Settlement Collective Member and Settlement Class Member will receive his or her unique identifying number as part of the Notice of Settlement and/or Claim Form.

1.54.   "**Skip Tracing**" means the process by which the Administrator shall work with a credit reporting agency (such as TransUnion, Experian, or Equifax) and, if the Administrator deems it necessary, with other publicly available databases and sources, to conduct automated batch processing of the mailing addresses for individuals whose Mailing Packet is returned to the Administrator as undeliverable.

1.55.   "**Stipulation**" is defined in Paragraph 3.1.

1.56.   "**Tolling Agreement**" is defined in Paragraph 38.2.

1.57.   As used in this Agreement, the plural form of any definition above or elsewhere includes the singular, and the singular form of any definition includes the plural.

## TERMS OF SETTLEMENT

2.   **No Admission Of Liability And No Concession Regarding The Merits.**

2.1.   Wells Fargo denies that it violated the law in any manner, specifically denies that it violated any statutory, regulatory, or common law alleged in the Lawsuit, and asserts that it has strong and meritorious defenses to all claims that were brought or could have been brought in the Lawsuit. The Parties have entered into this Agreement with the intention to avoid further disputes and litigation settled herein with the attendant inconvenience, expenses, and uncertainties. Nothing contained herein, including the consummation of this Agreement, is to be construed or deemed an admission of liability, culpability, negligence, or wrongdoing on the part of the Released Parties. This Agreement is also not a concession by Plaintiffs concerning the merits of their claims. This Agreement is a settlement document and will, pursuant to Federal Rule of Evidence 408, be inadmissible in evidence in any lawsuit or proceeding for any purpose, except an action or proceeding to approve, interpret, or enforce this Agreement.

3.   **Second Amended Complaint.**

3.1.   As part of the Settlement and for purposes of the Settlement only, the Parties agree that Class Counsel shall file, concurrently with Plaintiffs' motion for preliminary approval of the Settlement, a stipulation ("**Stipulation**") allowing the filing of a Second Amended Complaint ("**SAC**") asserting additional state law claims and in a form that Wells Fargo has approved (both as to the Stipulation and the SAC).

3.2.   The Parties agree to request that, except as necessary to approve and effectuate the Settlement, the Preliminary Approval Order stay all further proceedings in the Lawsuit, including

Wells Fargo's deadline for filing a responsive pleading to the SAC. If the Court enters a Final Approval Order, Wells Fargo's response to the SAC will be excused through dismissal of the Lawsuit.

3.3.     If the Effective Date does not occur for any reason, no opt-in forms related to the Settlement shall be filed, the SAC will become null and void, and before the expiration of Wells Fargo's deadline for filing a responsive pleading to the SAC, the Parties shall file a stipulation and proposed order withdrawing the SAC and reinstating Plaintiffs' original Complaint in the Lawsuit, thereby returning the Parties to the positions they held on January 18, 2018, when the Court stayed all proceedings for purposes of ADR, but taking into account the Tolling Agreement between the Parties. Subsequently, the Parties may refile any motions that were administratively terminated without a substantive ruling because of the ADR stay, and Wells Fargo's prior willingness to stipulate to the filing of the SAC under this Agreement will have no bearing on, and will not be admissible in, the Lawsuit or any subsequent proceeding. Neither the Parties nor their counsel shall offer or make reference to the Stipulation or SAC in any subsequent proceeding in the Lawsuit or in any other litigation, except as necessary to effectuate the Parties' request for reinstatement of Plaintiffs' original Complaint in the Lawsuit in the event that the Effective Date does not occur for any reason.

4.     **Regulatory Approval.**

4.1.     The Parties acknowledge that the Settlement may require approval by federal regulators, including the Office of the Comptroller of the Currency ("**OCC**"), with the concurrence of the Federal Deposit Insurance Corporation ("**FDIC**"), pursuant to 12 C.F.R. Part 359, with respect to Settlement Collective Members and/or Settlement Class Members whose employment was terminated for any reason between November 18, 2016 and April 20, 2018, and agree that the Settlement is conditioned on such approval and concurrence if required, or a determination by the OCC, the FDIC, or both, as necessary, that no such approval is required.

5.     **Settlement Amount.**

5.1.     In consideration for the terms and conditions of this Agreement, including the Release set forth in Paragraph 12 below, Wells Fargo agrees to deposit into the QSF a maximum settlement amount of Thirty-Five Million Dollars ($35,000,000.00), which amount is referred to herein as the "**Maximum Settlement Amount**." The Maximum Settlement Amount does not include the employer's share of payroll taxes applicable to the Settlement Payments, which shall be paid by the Bank to applicable government taxing authorities in addition to the Maximum Settlement Amount. Settlement Payments cashed by Settlement Participants; any portion of the Reserve Amount used in making Settlement Payments; Court-approved service awards paid to Plaintiffs and Opt-In Plaintiffs; Court-approved attorneys' fees and costs paid to Class Counsel; Court-approved fees and costs paid to the Administrator; and the employee's share of payroll taxes paid from the QSF to the federal, state, and local taxing authorities will collectively be the "**Gross Settlement Amount**." In no event will the Gross Settlement Amount exceed the Maximum Settlement Amount.

5.2.     The Administrator shall set aside One Hundred Thousand Dollars ($100,000.00) of the Maximum Settlement Amount (the "**Reserve Amount**") to cover any correctible errors or

omissions in determining the settlement amounts to be paid to Claimants or to individuals who were not, but later correctly assert that they should have been, included in the Settlement Collective or Settlement Class ("**Excluded Individuals**").  Once the Reserve Amount is exhausted, Wells Fargo shall not be obligated to, and shall have sole discretion in deciding whether to, make payments as a result of timely, proven disputes by Claimants and Excluded Individuals.

5.3.    The Maximum Settlement Amount less all of the following is the "**Net Settlement Amount**":  (i) all fees and costs of the Administrator for settlement administration as finally approved by the Court; (ii) Class Counsel's attorneys' fees and costs as finally approved by the Court; (iii) Plaintiffs' and Opt-In Plaintiffs' service awards as finally approved by the Court; and (iv) the Reserve Amount.   If the Court approves less than the petitioned-for amounts, the unapproved amount will be included in the Net Settlement Amount.

5.4.    Except as set forth in Paragraph 5.1 above with respect to employer-side payroll taxes, Wells Fargo shall have no obligation to pay or provide any further consideration to any Plaintiff, Opt-In Plaintiff, Settlement Collective Member, or Settlement Class Member by reason of this Agreement or because of the foregoing payments, including but not limited to contributions to any 401(k) or other retirement or employee benefit plan, vacation or sick pay, or similar benefits based on or as a result of this Agreement.   Any payments made pursuant to this Agreement will not trigger any obligation of Wells Fargo to make any withholding for 401(k) contributions or to make any contributions to any 401(k) or similar plan.

6.    **Settlement Formula And Allocation.**

6.1.    Subject to the conditions of this Agreement, the Administrator shall issue a Settlement Payment from the QSF for the gross amount of Three Hundred Dollars ($300.00) (the "**Minimum Payment**"), less withholdings as discussed in Paragraph 8 below, to each Settlement Collective Member and Participating Class Member who does not become a Claimant by submitting a timely and valid Claim Form in the manner discussed in Paragraph 19.4 below.

6.2.    Subject to the conditions of this Agreement, the Administrator shall issue a Settlement Payment from the QSF to each Claimant consisting of: (i) the Minimum Payment, plus (ii) the "**Per Workweek Amount**" (as defined below) multiplied by the number of that Claimant's "**Qualifying Workweeks**" (as defined below), except that no Claimant shall receive more than the Minimum Payment unless he or she has more than twelve Qualifying Workweeks.

6.3.    The number of "**Qualifying Workweeks**" for each Claimant will be the sum of the following except as set forth in subparagraph (iii) below:

(i)    two times the number of workweeks that the Claimant recorded working more than 38 hours in a Covered Position (a) in any state other than New York or California within the period of January 1, 2015 to October 1, 2016; and/or (b) in the state of New York within the period of January 1, 2012 to October 1, 2016; plus

(ii)    one times the number of workweeks that the Claimant recorded working more than 38 hours in a Covered Position in any state other than California within the period of October 2, 2016 to June 20, 2018.

(iii)     Notwithstanding subparagraphs (i) and (ii) above, any Claimant who has twelve or fewer Qualifying Workweeks shall receive only the Minimum Payment or Adjusted Minimum Payment (as defined below).

6.4.    The "**Per Workweek Amount**" will be determined as follows:

(i)     After the Court has issued a Final Approval Order approving the amounts to be paid to the Administrator, to Class Counsel, and for the service awards to Plaintiffs and Opt-In Plaintiffs, and after the Reserve Amount has been set aside, the Administrator shall calculate the Net Settlement Amount.

(ii)     To determine the "**Residual Net Settlement Amount**," the Administrator shall deduct from the Net Settlement Amount the total to be paid as Minimum Payments to all Plaintiffs, Opt-In Plaintiffs, Settlement Collective Members, and Participating Class Members.

(iii)     The Administrator shall divide the Residual Net Settlement Amount by the sum of the total number of Qualifying Workweeks (as defined in Paragraph 6.3) for all Claimants to obtain a *pro rata* per workweek amount. If the *pro rata* per workweek amount is less than $57.21 per Qualifying Workweek, then the *pro rata* per workweek amount will be the Per Workweek Amount that the Administrator shall use in issuing Settlement Payments to the Claimants. If the *pro rata* per workweek amount is equal to or greater than $57.21, then $57.21 will be the Per Workweek Amount that the Administrator shall use in issuing Settlement Payments to the Claimants.

6.5.    If any of the Residual Net Settlement Amount remains after deduction of (i) the Minimum Payments to be made to Settlement Collective Members and Participating Class Members, and (ii) the Per Workweek Amount payments to be made to Claimants as described in Paragraph 6.4, that remaining Residual Net Settlement Amount shall be distributed evenly on a *per capita* basis among the Settlement Collective Members and Participating Class Members and paid as part of the Minimum Payments ("**Adjusted Minimum Payments**").

7.    **Reference To The Bank's Records.**

7.1.    The number of Qualifying Workweeks for each Claimant will be determined initially by reference exclusively to the Bank's payroll and personnel records. These records will be considered presumptively correct for purposes of identifying who meets the definition of the Settlement Collective and/or Settlement Class and for determining the number of Qualifying Workweeks for each Claimant.

7.2.    If an Excluded Individual or a Claimant disagrees with the number of Qualifying Workweeks attributed to him or her, the Excluded Individual or Claimant may contest these matters pursuant to the procedure set forth in Paragraph 23 below, entitled "Handling of Disputes."

8.      **Tax Allocation Of Settlement Payments.**

8.1.    One-half (1/2) of each Settlement Payment will be considered wages subject to the withholding of all applicable local, state, and federal taxes. The Administrator shall make the required withholdings and shall issue an IRS Form W-2 to each recipient of a Settlement Payment for this wage portion of the Settlement Payment.

8.2.    The other one-half (1/2) of each Settlement Payment will be considered non-wages for the settlement of interest claims, liquidated damages, and any statutory or civil penalties available under any applicable local, state, and federal laws. The Administrator shall issue an IRS Form 1099-MISC to each recipient of a Settlement Payment for this non-wage portion of the Settlement Payment in accordance with IRS requirements.

8.3.    Plaintiffs, Opt-In Plaintiffs, Settlement Collective Members, and Participating Class Members are each solely responsible for correctly characterizing this compensation for tax purposes and paying any taxes due. Wells Fargo shall have no liability to any tax authorities for the tax treatment of the Settlement Payments as set forth in this Agreement and approved by the Court in its Final Approval Order.

9.      **Service Awards To Plaintiffs And Opt-In Plaintiffs.**

9.1.    In consideration for Plaintiffs' and Opt-In Plaintiffs' agreements contained in Paragraph 13 below, and for their time and efforts on behalf of the Settlement Collective and Settlement Class, the Administrator shall pay from the QSF service awards in the amounts approved by the Court in its Final Approval Order. The Parties agree that the service awards shall not exceed Twenty Thousand Dollars ($20,000.00) each to the original Plaintiffs Juan Carlos Merino and Agustin Morel, Jr., Ten Thousand Dollars ($10,000.00) each to the other seven Plaintiffs, and Five Thousand Dollars ($5,000.00) each to the Opt-In Plaintiffs. Wells Fargo agrees not to oppose any service award application provided that it does not exceed the amounts specified in this paragraph. The service awards will be paid from the Gross Settlement Amount. In addition to the service awards, Plaintiffs and Opt-In Plaintiffs shall receive Settlement Payments as Participating Collective Members and Participating Class Members. The service awards will be treated as W-2 taxable wages. If the Court fails to approve the service awards requested by Plaintiffs and Opt-In Plaintiffs or approves a lower amount, the unapproved amount will become part of the Net Settlement Amount.

10.     **Class Counsel's Attorneys' Fees And Costs.**

10.1.   Class Counsel shall file a Motion for Approval of Attorneys' Fees and Costs pursuant to the schedule set by the Court in its Preliminary Approval Order and at least two weeks prior to the deadline for submitting objections to the Settlement. Subject to the approval of the Court, Class Counsel shall request: (i) attorneys' fees in an amount not to exceed Ten Million Five Hundred Thousand Dollars ($10,500,000.00); plus (ii) reimbursement of their out-of-pocket costs in an amount not to exceed Sixty Thousand Dollars ($60,000.00). The attorneys' fees and costs awarded by the Court shall compensate Class Counsel for all work performed in the Lawsuit from its inception to its conclusion, and all costs incurred related to the Lawsuit from its inception to its conclusion, including all future work in connection with the implementation of this

Agreement, seeking approval of this Agreement by the Court, responding to any appeals of the Court's orders or judgments, overseeing the administration of the Settlement, and filing all documents necessary to fulfill all terms and conditions of this Agreement, including those that occur after the Effective Date. The Court-approved attorneys' fees and costs will be paid out of the Gross Settlement Amount. Wells Fargo agrees not to oppose the amounts requested by Class Counsel for attorneys' fees and costs provided that the amounts sought do not exceed those specified above in this paragraph. If the Court does not approve the attorneys' fees and costs requested by Class Counsel or approves a lower amount, the unapproved amount will become part of the Net Settlement Amount.

10.2.   A condition precedent to the Administrator's payment to Class Counsel of the amount of attorneys' fees and costs approved by the Court will be the Administrator's receipt of completed and executed IRS Forms W-9 from Class Counsel. The Administrator shall pay the Court-approved amount of attorneys' fees and costs to Class Counsel without any deduction for taxes or other withholdings and report the amount paid on an IRS Form 1099-MISC issued to Class Counsel.

10.3.   The Administrator shall also calculate and report a *pro rata* share of the Court-approved attorneys' fees and costs on the IRS Forms 1099-MISC that will be issued to each Settlement Participant and Excluded Individual who cashes a Settlement Payment check and/or a check for a service award. The *pro rata* shares will be determined by dividing the total of the Settlement Payment plus any service award to each Settlement Participant and Excluded Individual who cashes a check by the total amount paid in settlement to all Settlement Participants and Excluded Individuals who cash their settlement check(s). Information about the tax forms that will be provided to Settlement Participants and Excluded Individuals who cash their settlement check(s) will be posted on the Settlement Website and included in a cover letter, attached hereto as Exhibit "G," that will accompany the tax forms.

11.   **Settlement Payment Schedule.**

11.1.   Wells Fargo shall pay the first One Hundred Thousand Dollars ($100,000.00) of the Maximum Settlement Amount into the QSF within fifteen (15) calendar days after the Preliminary Approval Date (in order to pay any invoices of the Administrator) and shall pay the remaining Thirty-Four Million, Nine Hundred Thousand Dollars ($34,900,000.00) of the Maximum Settlement Amount into the QSF within fifteen (15) calendar days after the Effective Date.

11.2.   The Administrator shall make all payments to Plaintiffs, Opt-In Plaintiffs, Settlement Collective Members, Participating Class Members, and Class Counsel as described in the preceding paragraphs as soon as possible after the Effective Date and in no event later than forty-five (45) calendar days after the Effective Date.

12.   **Released Claims.**

12.1.   In further consideration of the promises made in this Agreement, and upon the Effective Date and the payment by Wells Fargo of the Maximum Settlement Amount, each Settlement Participant hereby forever discharges and releases the Released Parties from any and

all suits, actions, causes of action, claims, or demands for unpaid wages (including overtime wages), damages, reimbursements, unpaid advances, civil and/or statutory penalties, liquidated damages, punitive damages, multiple damages, interest, attorneys' fees, litigation costs, restitution, and/or equitable relief in any way growing out of their work in a Covered Position for any and all claims that were or could have been asserted in the Lawsuit or that are based on or arise out of the facts alleged in any version of the complaints filed in the Lawsuit (including those asserted in the First Amended Complaint and SAC), from the beginning of the Collective Period or Applicable Class Period (as defined in Paragraphs 1.49 and 1.47 above), whichever is the earlier date, through June 20, 2018, including without limitation any claims under the FLSA and any applicable state, county, or local laws, statutes, regulations, ordinances, or wage orders for alleged unpaid overtime, premium, or minimum wages; failure to provide compliant meal and/or rest breaks; failure to pay meal and/or rest period compensation; failure to maintain required business records; failure to provide accurate or completed itemized wage statements; failure to compensate for all time worked; failure to properly calculate compensable time worked or the regular rate of pay; failure to pay or reimburse for all business expenses; waiting time penalties; failure to pay all wages due in a timely manner, including upon employment termination; misclassification of employees as exempt employees, independent contractors, or any other form of non-employee workers; and contributions to any 401(k) or other retirement or employee benefit plan based on any payments made by reason of this Agreement (collectively, the "**Released Claims**"). Notwithstanding the foregoing, nothing in this provision releases any claim that cannot be released as a matter of law, including that Participating Class Members who are not Participating Collective Members shall not release their claims under the FLSA. Except for Plaintiffs and Opt-In Plaintiffs as set forth in Paragraph 13.1, the Released Claims apply only to the employment of Participating Collective Members and Participating Class Members while they were employed in the Covered Positions during the longer of the Collective Period or Applicable Class Period.

12.2.    The Notices of Settlement will state that in order to grant a full and complete release of all Released Claims in favor of the Released Parties, each Settlement Participant acknowledges that the Released Claims are intended to include all Released Claims regardless of whether the Settlement Participant knows, is aware of, or suspects the claims or potential claims being released.

12.3.    Upon the Effective Date and the payment by Wells Fargo of the Maximum Settlement Amount, this Agreement will be binding on, and have *res judicata* and preclusive effect in the Lawsuit and any and all other pending and future lawsuits or other proceedings that seek to assert any claims encompassed by the Released Claims by or on behalf of Settlement Participants. The Parties agree that this Agreement and the Released Claims may be raised as a complete defense to and will preclude any action or proceeding based on any of the Released Claims.

12.4.    The Parties acknowledge and agree that the Released Claims is a Material Term (as defined in Paragraph 28 below) of this Agreement and that no settlement could have been reached by the Parties without it.

13.    **Additional Agreements By Plaintiffs And Opt-In Plaintiffs**.

13.1.    In addition to the Released Claims defined in Paragraph 12 above, each Plaintiff and Opt-In Plaintiff, in consideration of his or her service award, fully and completely waives, releases, and forever discharges the Released Parties from any and all claims, charges, complaints,

actions, causes of action, lawsuits, grievances, controversies, disputes, demands, agreements, contracts, covenants, promises, liabilities, judgments, obligations, debts, damages (including, but not limited to, actual, compensatory, punitive, and liquidated damages), attorneys' fees, costs, and/or any other liabilities of any kind, nature, description or character whatsoever that he or she may have against any or all of the Released Parties arising out of his or her employment with the Bank, the separation of his or her employment from the Bank, if applicable, or any other fact, condition, circumstance, or occurrence whatsoever up to and including the Effective Date, whether known or unknown, suspected or concealed, and whether presently asserted or otherwise including, but not limited to, all claims that any or all of the Released Parties: (i) violated public policy or common law (including, but not limited to, claims for breach of contract, unjust enrichment, quantum meruit, intentional or tortious interference with contract or business relations, misrepresentation, fraud, conversion, promissory estoppel, detrimental reliance, wrongful termination, retaliatory discharge, assault, battery, false imprisonment, personal injury, defamation, libel, slander, invasion of privacy, negligence, negligent hiring, retention or supervision, negligent, reckless, or intentional infliction of emotional distress and/or mental anguish, conspiracy, or loss of consortium); or (ii) violated Wells Fargo's personnel policies, procedures, or handbooks, any covenant of good faith or fair dealing, or any purported contract of employment, express or implied, between the Parties; or (iii) engaged in false or fraudulent acts against the United States Government, retaliated against Plaintiff or Opt-In Plaintiff, or otherwise violated the False Claims Act, 31 U.S.C. § 3729, *et seq.*; or (iv) failed to provide Plaintiff or Opt-In Plaintiff with any benefit pursuant to the terms of any 401(k) or other retirement or employee benefit plan maintained, administered, sponsored, funded and/or paid, in whole or in part, by Wells Fargo, violated the terms of any such employee benefit plan, breached any fiduciary obligation with respect to such plan, or discriminated against Plaintiff or Opt-In Plaintiff for the purpose of preventing him or her from obtaining benefits pursuant to the terms of any such plan, or in any way violated any provision of the Employee Retirement Income Security Act of 1974, as amended, 29 U.S.C. § 1001, *et seq.*; or (v) retaliated against or discriminated against Plaintiff or Opt-In Plaintiff on the basis of race, age, sex (including sexual harassment), color, national origin, citizenship, ancestry, religion, disability, handicap, sexual orientation, leave status, genetics, marital status, parental status, veteran status, source of income, union activity, whistleblower activity, pregnancy or a pregnancy related condition, or any other basis in violation of any city, local, state, or federal laws, statutes, ordinances, executive orders, regulations, or constitutions or otherwise violated any city, local, state, or federal laws, statutes, ordinances, executive orders, regulations, or constitutions, including, but not limited to, Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq.*, the Civil Rights Act of 1866, 42 U.S.C. § 1981, the Americans with Disabilities Act of 1990, as amended, 42 U.S.C. § 12101, *et seq.*, the Age Discrimination in Employment Act of 1967, as amended, 29 U.S.C. § 621, *et seq.*, the Equal Pay Act of 1963, as amended, 29 U.S.C. § 206(d), the Family Medical Leave Act of 1993, as amended, 29 U.S.C. § 2601, *et seq.*, the National Labor Relations Act, as amended, 29 U.S.C. § 151, *et seq.*, and the Sarbanes-Oxley Act of 2002, as amended, 18 U.S.C. § 1514A (collectively, the "**General Waiver and Release**").

13.2. The above General Waiver and Release does not waive any rights that cannot be waived by law, including each Plaintiff's or Opt-In Plaintiff's right to file a charge of discrimination with an administrative agency (such as the United States Equal Employment Opportunity Commission ("EEOC")) and his or her right to participate in any agency investigation or proceeding. Each Plaintiff and Opt-In Plaintiff is waiving, however, any right to recover money

in connection with a charge or investigation covered by the Released Claims in Paragraph 12.1 or the General Waiver and Release in Paragraph 13.1 except money properly awarded by the Securities Exchange Commission. Each Plaintiff and Opt-In Plaintiff is also waiving any right to recover money in connection with a charge filed by any other individual, by the EEOC, or by any other city, local, state, or federal agency covered by the Released Claims in Paragraph 12.1 or the General Waiver and Release in Paragraph 13.1, except money properly awarded by the Securities Exchange Commission, or a civil action for false claims brought by Plaintiff or Opt-In Plaintiff and/or the United States.

13.3.    Each Plaintiff and Opt-In Plaintiff agrees to the Covenant Not To Sue in Paragraph 14 but with the expanded scope given to the Release and Released Claims by the above General Release and Waiver.

13.4.    Each Plaintiff and Opt-In Plaintiff agrees to the following: (i) he or she is entering into this Agreement knowingly, voluntarily, and with full knowledge of its significance and has not been coerced, threatened, or intimidated into signing it; (ii) he or she has been advised in writing to confer with an attorney of his or her choosing and has in fact consulted with Class Counsel prior to signing this Agreement; (iii) he or she has had a reasonable amount of time within which to consider the terms and conditions memorialized in this Agreement before agreeing to them; (iv) he or she has carefully read and fully understands all of the provisions of this Agreement; (v) he or she has not suffered any on-the-job injury for which he or she has not already filed a workers' compensation claim; (vi) he or she agrees that he or she has been given twenty one (21) calendar days to consider the General Waiver and Release in Paragraph 13.1 and understands that the General Waiver and Release includes any claims under the Age Discrimination in Employment Act and the Older Workers Benefit Protection Act; and (vii) if he or she signs the Agreement before the expiration of the 21-day period, he or she is expressly waiving his or her right to consider the General Waiver and Release for any remaining portion of that 21-day period.

14.    **Covenant Not To Sue.**

14.1.    Plaintiffs and Opt-In Plaintiffs shall not file a lawsuit or initiate any legal proceeding alleging or relating to any of the Released Claims in Paragraph 12.1 or any of the claims covered by the General Waiver and Release in Paragraph 13.1 in any federal, state, or local court, administrative agency, tribunal, arbitration proceeding, or any other legal forum, against the Released Parties. Plaintiffs and Opt-In Plaintiffs also shall not join, participate in, or consent to become a named plaintiff or opt-in plaintiff in any lawsuit or legal proceeding alleging that he or she is similarly situated to any other employee with respect to any claims in the Released Claims in Paragraph 12.1 or the General Waiver and Release in Paragraph 13.1. Each Plaintiff and Opt-In Plaintiff shall opt out of any such lawsuit or legal proceeding of which they have knowledge against any Released Parties in the event that he or she is involuntarily included as a member or participant of it (except that the term "participant" as used in this sentence does not apply to or include serving as a witness in a lawsuit or legal proceeding if subpoenaed to do so).

14.2.    If any Plaintiff or Opt-In Plaintiff is included in any class, collective, or government enforcement action alleging or involving any Released Claims or any of the claims covered by the General Waiver and Release in Paragraph 13.1, the Released Claims in Paragraph 12.1 and/or the

General Waiver and Release in Paragraph 13.1 shall bar that Plaintiff or Opt-In Plaintiff from receiving or accepting any further compensation or consideration of any kind for such claims.

14.3.   The Parties acknowledge and agree that this Covenant Not To Sue is a Material Term (as defined in Paragraph 28 below) of this Agreement and that no settlement could have been reached by the Parties without this term.

## 15.   Stipulation To Certification Of The Settlement Collective And Settlement Class.

15.1.   Pursuant to this Agreement and for settlement purposes only, the Parties provisionally stipulate to the certification of the Settlement Collective under 29 U.S.C. § 216(b) and the certification of the Settlement Class with its Applicable State Subclasses under FED. R. CIV. P. 23(a) and (b)(3).

15.2.   The Parties' stipulation to the certification of the Settlement Collective and Settlement Class is for settlement purposes only and does not constitute in the Lawsuit or any other proceeding an admission of any kind by Wells Fargo, including, without limitation, that certification of a class or collective for purposes of litigation would be appropriate or proper or that Plaintiffs could establish any of the requisite elements for collective or class certification of any of the claims settled herein.

15.3.   Wells Fargo does not waive and expressly reserves its right to challenge the propriety of collective and class certification for any purpose should the Effective Date not occur for any reason, in which case Wells Fargo's willingness provisionally to stipulate to certification as part of this Agreement will have no bearing on, and will not be admissible in connection with, any issue in the Lawsuit or in any other or subsequent lawsuit or proceeding. Plaintiffs and Class Counsel agree not to offer or make reference to this provisional stipulation to collective or class certification for settlement purposes only in any subsequent proceeding in the Lawsuit (except for purposes of having this Agreement approved and enforced by the Court) or in any other lawsuit or proceeding.

### ADMINISTRATION OF THE SETTLEMENT

## 16.   Class List, Administrator Selection, And Administrator's Duties.

16.1.   Within twenty-one (21) calendar days after the Preliminary Approval Date, the Bank, through Defendants' Counsel, shall provide to the Administrator a list, in electronic format, containing, for each Plaintiff, Opt-In Plaintiff, Settlement Collective Member, and Settlement Class Member, the following information:   (i) name; (ii) last known address; (iii) last known personal email address, to the extent maintained by Wells Fargo in its HR System; (iv) dates of employment in each Covered Position from the beginning of the earlier of the Collective Period or any Applicable Class Period through June 20, 2018; (v) the number of Qualifying Workweeks, which may be less than the number of weeks covered by an individual's dates of relevant employment because weeks with 38 or fewer hours of recorded work time, paid time off, and leaves of absence are not included; and (vi) Social Security number (collectively the "**Collective/Class List**").   Defendants' Counsel shall provide a redacted version of the Collective/Class List, which does not include subsection (i)-(iii) or (vi) above with the exception

17

of Plaintiffs and Opt-In Plaintiffs, to Class Counsel. The Collective/Class List and all information in it will be strictly confidential except as described above. The Administrator shall provide Defendants' Counsel with a secure and encrypted manner for transmitting the information and shall sign a confidentiality agreement approved by the Parties. Any documents signed by the Administrator and Wells Fargo regarding the Lawsuit or the administration of this Settlement shall be produced to Class Counsel and Defendants' Counsel.

16.2. The Administrator's duties will include the following tasks as well as all other tasks assigned to the Administrator in this Agreement and consistent with usual practices:

(i)      Preparing, printing, mailing, and emailing the Mailing Packets to Plaintiffs, Opt-In Plaintiffs, Settlement Collective Members, and Settlement Class Members within sixty (60) days after the Preliminary Approval Date;

(ii)      Running the entire Collective/Class List through the U.S. Post Office's National Change of Address database to ascertain any updated mailing addresses prior to the initial mailing of the Mailing Packets;

(iii)      Conducting Skip Tracing on any Mailing Packets that are part of the initial mailing and are returned as undeliverable, and re-mailing them to any new addresses discovered within five (5) business days;

(iv)      Receiving, cataloging, and preserving completed Check Opt-In Forms, Claim Forms, Requests for Exclusion, and objections to the Settlement;

(v)      Establishing and staffing an automated telephone system with a toll free number that will provide Settlement Collective Members and Settlement Class Members information about the Settlement utilizing an Interactive Voice Response ("IVR") script approved by the Parties, and that will permit Settlement Collective Members and Settlement Class Members to request and obtain a copy of the Settlement Agreement and the appropriate Notice of Settlement and Claim Form;

(vi)      Establishing and maintaining the Settlement Website;

(vii)      Handling and resolving (and involving counsel for the Parties as necessary in resolving) disputes made by Claimants regarding their Qualifying Workweeks or Settlement Payment and by Excluded Individuals regarding their alleged right to be included in the Settlement Collective and/or Settlement Class pursuant to the "Handling of Disputes" provisions in Paragraph 23;

(viii)      Providing counsel for the Parties with weekly status reports containing the number of Mailing Packets mailed; the number of Mailing Packets returned as undeliverable and re-mailed; the number of disputes asserted by Claimants and Excluded Individuals; the number of timely and valid Check Opt-In Forms, Claim Forms, Requests for Exclusion, and objections to the Settlement received; and the number of untimely or invalid Check Opt-In Forms, Claim Forms, Requests for Exclusion, and objections to the Settlement received;

(ix)   Calculating the Settlement Payments to be made to each Settlement Collective Member and Participating Class Member;

(x)   Mailing all Settlement Payments and reminders as provided for in this Agreement and approved by the Court;

(xi)   Performing Reverse Positive Pay services on all Settlement Payment checks cashed by Settlement Participants, rejecting payment of any check that has any change to the Check Opt-In Form and/or that was not signed by the intended payee, and notifying any Settlement Participant whose Settlement Payment check was rejected for payment of the reason for rejection and the manner and time period for reissuance and proper negotiation of a new Settlement Payment check;

(xii)   Providing counsel for the Parties with electronic copies of the Check Opt-In Forms as executed by Settlement Participants within fourteen (14) calendar days after receipt of each executed Check Opt-In Form;

(xiii)   Providing counsel for the Parties with copies of all Claim Forms and objections received, and redacted copies of any Requests for Exclusion received, on a weekly basis;

(xiv)   Providing to counsel for the Parties, in advance of the Final Approval Hearing, an accounting of the anticipated Settlement Payments to be made and the estimated per workweek amount to be used in calculating the Settlement Payments to be made to Claimants;

(xv)   Establishing the QSF pursuant to the Preliminary Approval Order before Wells Fargo provides any monies to the Administrator pursuant to this Agreement;

(xvi)   Administering and otherwise operating the QSF, including remitting all amounts to be paid from the QSF as set forth in this Agreement, preparing and filing federal and state tax returns with applicable government tax authorities, remitting tax withholdings to the applicable government tax authorities, and issuing the tax reports and tax forms required under this Agreement or by law to Class Counsel, Settlement Participants, the charitable organization chosen by the Parties (*cy pres*), if applicable, and Wells Fargo, if applicable;

(xvii)   Issuing any stop payments on Settlement Payment checks lost by a recipient and reissuing such Settlement Payment checks if re-issuance is requested within the deadline for doing so as set forth in this Agreement;

(xviii)   Pursuing tax refunds on any uncashed Settlement Payment checks and remitting such refunds to the Net Settlement Amount;

(xix)   Providing counsel for the Parties with declarations under oath required by this Agreement or requested by Class Counsel (with advance notice to or copying Defendants' Counsel) or by Defendants' Counsel (with advance notice to or copying Class Counsel) at any time regarding any issue relating to the administration of this Settlement;

(xx)    Providing counsel for the Parties with a declaration that Class Counsel will file with Plaintiffs' unopposed motion for preliminary approval that provides a detailed estimate for performing all tasks and duties described in this Agreement;

(xxi)   Providing counsel for the Parties with a declaration that Class Counsel will file with the motion for final approval that sets forth a "not to exceed" cost for performing all tasks and duties described in this Agreement and the Preliminary Approval Order; and

(xxii)  Otherwise administering the Settlement pursuant to this Agreement and any Court-required or approved modifications, and consistent with usual practices.

17.    **Notices Mandated By Statute.**

17.1.   Not later than ten (10) calendar days after Class Counsel files with the Court Plaintiffs' unopposed motion for preliminary approval of the Settlement, the Administrator shall mail notices of the Settlement to an "appropriate Federal official" and "appropriate State officials" as required by 28 U.S.C. § 1715. The Administrator and, as the Administrator shall request, Wells Fargo shall prepare these notices, which will include as exhibits the preliminary approval motion with all exhibits, this Agreement with all of its Exhibits, all complaints filed in the Lawsuit, notice of scheduled judicial hearings (if any are known), and any other information required by 28 U.S.C. § 1715(b) that is known at the time that the notices are mailed.

18.    **Disputes About The Administrator's Scope Of Duties Or Fees.**

18.1.   Any disputes that cannot be resolved by the Parties relating to the Administrator's ability and need to perform its duties will be referred to the Court, which will have continuing jurisdiction over the implementation of this Agreement.   The Administrator shall submit to the jurisdiction of the Court in connection with its appointment as Administrator.

18.2.   The Administrator shall be paid its reasonable invoices up to its not-to-exceed cost submitted to the Court out of the QSF. In no event shall the Parties or counsel for the Parties be responsible for any additional fees and costs of the Administrator.   Any unresolved disputes concerning the Administrator's fees and costs will be referred to the Court, if necessary, which will have continuing jurisdiction over the implementation of this Agreement.

19.    **Mailing Packets.**

19.1.   Within thirty (30) calendar days after receiving the Collective/Class List, the Administrator shall send the Mailing Packets by first class mail and email to each Plaintiff, Opt-In Plaintiff, Settlement Collective Member, and Settlement Class Member.

19.2.   If a Mailing Packet has not been returned to the Administrator as undeliverable within thirty (30) calendar days following the mailing, it will be presumed to have been received by the intended recipient.

19.3.   If a Mailing Packet is returned and re-mailed and the re-mailing is returned again to the Administrator, the Mailing Packet will be deemed undeliverable, and neither the

Administrator nor Wells Fargo shall have any further obligation to attempt to deliver the Mailing Packet.

19.4.    To be deemed timely, a Claim Form must be returned to the Administrator and must bear a postmark of, or be marked as received by the Administrator, on or before the Claim Deadline.   To be deemed valid, the Claim Form must be timely, complete, and signed by the Settlement Collective Member or Settlement Class Member, and the consent to join and release language on the Claim Form must not be altered in any way. Plaintiffs and Opt-In Plaintiffs do not need to submit a Claim Form in order to be a Participating Collective Member or Claimant.

20.    **Requests For Exclusion.**

20.1.    Pursuant to FED. R. CIV. P. 23(c)(2)(B)(v), the Notice of Settlement that is sent to Settlement Class Members will explain that a Settlement Class Member may submit a Request for Exclusion from (*i.e.*, "opt-out" of) the Settlement, in which case he or she cannot object to the Settlement, cannot be a Participating Class Member, and is not eligible to receive a Settlement Payment unless he or she revokes the Request for Exclusion in writing and the revocation is received by the Administrator and reported to the Court by the time of the Final Approval Hearing.

20.2.    To be deemed timely, a Request for Exclusion must be returned to the Administrator and must bear a postmark of, or be marked as received by the Administrator, on or before the Claim Deadline.   To be deemed valid, a Request for Exclusion must be timely and contain all of the following:  (i) a clear statement of the Settlement Class Member's desire to be excluded from the Settlement Class; (ii) the Settlement Class Member's printed full name, mailing address, telephone number, email address, and the last four digits of his or her Social Security number; and (iii) the actual written signature of the Settlement Class Member seeking to exclude himself or herself.   Requests for Exclusion cannot be made on behalf of a group or class.

20.3.    Any personal identifiers (such as the Social Security number) and any contact information shall be redacted prior to filing any timely and valid Requests for Exclusion on the public docket. The Administrator shall provide redacted copies of each Request for Exclusion received to counsel for the Parties on a weekly basis. The Administrator may share with Class Counsel redacted contact information for one or more Requests for Exclusion only upon agreement of the Parties.

20.4.    Any Settlement Class Member who does not submit a timely and valid Request for Exclusion to the Administrator shall be bound by the terms of this Agreement and its Released Claims as approved by the Court, even if he or she files an objection to the Settlement.

20.5.    No Settlement Class Member shall be permitted to pursue a claim released by the Settlement on the grounds that a Request for Exclusion was submitted timely but lost, destroyed, misplaced, or otherwise not received by the Administrator unless the Settlement Class Member has adequate proof that the Request for Exclusion was mailed timely by certified mail return receipt requested, or has equivalent proof of timely delivery.

21.     **Objections.**

21.1.     Settlement Class Members who do not submit a timely and valid Request for Exclusion are Participating Class Members and thus may submit a timely and valid written objection to the Settlement.  Individuals who are members of the Settlement Collective exclusively are not subject to Rule 23(e) and have no right to object to the Settlement.

21.2.     To be deemed timely,  a Participating Class Member who wishes to object to the Settlement must submit a written objection to the Administrator which must bear a postmark of, or be marked as received by the Administrator,  on or before the Claim Deadline. The Administrator shall provide copies of any objection to counsel for the Parties on a weekly basis. To be deemed valid, the written objection must be timely and contain all of the following:  (i) a statement of each objection, the specific reasons for each objection, and any evidentiary and factual support for each objection that the Participating Class Member wishes to bring to the Court's attention;  (ii) a statement as to whether the Participating Class Member or his or her attorney (other than Class Counsel) intends to appear at the Final Approval Hearing; (iii) the Participating Class Member's printed full name, mailing address, telephone number, Covered Position(s) held, dates of employment at the Bank in Covered Positions,  and the last four digits of his or her Social Security number, and (iv) the actual written signature of the Participating Class Member making the objection.  All attorneys who are involved in any way in asserting objections on behalf of a Participating Class Member must file a notice of appearance with the Court contemporaneously with the filing of the objection.  Counsel for the Parties may take the deposition of any objector prior to the Final Approval Hearing in a location convenient for the objector.

21.3.     If the Court rejects the Participating Class Member's objection, the Participating Class Member shall still be bound by the terms of this Agreement,  including the Released Claims.

22.     **Settlement Collective Members' And Settlement Class Members' Agreement To Opt In To The Settlement.**

22.1.     All Settlement Payment checks will include, on the back of each check, the Check Opt-In Form, which will consist of the following printed language and will constitute a consent to join the Lawsuit, as required by the FLSA, for settlement purposes only as well as the individual's agreement to the Released Claims:

> VOID IF ALTERED OR NOT CASHED BEFORE [DATE]
> POSITIVE I.D. IS REQUIRED
> SIGNED ENDORSEMENT BY NAMED PAYEE IS REQUIRED

> I dispute that I have received all wages I am owed and thus consent to join the lawsuit *Merino, et al. v. Wells Fargo*, No. 2:16-cv-07840 (D.N.J.). By signing below, I authorize Class Counsel, on my behalf, to file evidence of my consent with the Court, and I agree to release and not to sue for the Released Claims defined in the Notice of Settlement I received.

> Endorsed: _____
>                 [PAYEE'S NAME PRINTED BY ADMINISTRATOR]

22.2.    The Claim Form will contain language similar to the above Check Opt-In Form language and will also constitute a consent to join pursuant to the FLSA for settlement purposes only.

22.3.    Any Settlement Collective Member or Settlement Class Member who does not alter the above language of the Check Opt-In Form and negotiates it or does not alter the above described language of the Claim Form, signs, and returns it shall be deemed an opt-in party plaintiff under the FLSA for purposes of the Settlement.  The Notices of Settlement will explain that by negotiating or cashing the Settlement Payment check or becoming a Claimant, the Settlement Collective Member or Settlement Class Member: (a) will be electing to opt in to the Settlement; (b) will be authorizing Class Counsel to file with the Court evidence of his or her consent to join the Settlement of the Lawsuit as a party plaintiff, such as his or her name (though the Final Approval Order may allow personal identifying information to be filed under seal with a corresponding unique identification number generated by the Administrator), and, unless excused by the Court, a copy of the Check Opt-In Form or a redacted copy of the Claim Form; (c) will be asserting a claim under the FLSA and any applicable state and/or local laws for all wages, including overtime, that allegedly have not been paid; and (d) will be releasing and agreeing not to sue or otherwise make a claim under the FLSA and any applicable state and/or local wage, hour, and payment of wages laws. The Notices of Settlement also will explain that anyone who consents to join the Lawsuit after the Preliminary Approval Date understands that his or her consent to join will be deemed to have been withdrawn and will be stricken by the Court and of no effect in the event that the Effective Date does not occur for any reason.

22.4.    Class Counsel shall cause to be filed, and shall serve on Defendants' Counsel proof of filing, evidence sufficient to meet the consent filing requirements of the FLSA, 29 U.S.C. § 216(b). This evidence will be provided by the Administrator to counsel for the Parties, and proof of its filing served on Defendants' Counsel, within fourteen (14) calendar days of Class Counsel's receipt of each consent to join but in no event earlier than the Effective Date, and will be in the form of a list of all individuals who meet the consent filing requirements filed under seal if permitted by the Court, or if not permitted by the Court, each Settlement Participant's Check Opt-In Form or, if a Claimant's Settlement Payment check is not endorsed for any reason, his or her Claim Form, with appropriate redactions of Social Security numbers, mailing addresses, and all other contact information.   Provided, however, that Class Counsel shall be relieved of the requirement to file Check Opt-In Forms and redacted Claim Forms if upon motion by Class Counsel as part of the motion for preliminary approval and/or motion for final approval, the Court expressly orders in the Preliminary Approval Order or Final Approval Order that Class Counsel may comply with the consent filing requirements of 29 U.S.C. § 216(b) by filing and serving on Defendants' Counsel proof of filing, a declaration from the Administrator attaching a complete list of the names, with a corresponding unique identification number generated by the Administrator, for all Settlement Participants, which may be filed under seal with the Court's permission. Provided, however, that any Settlement Participant who disputes the effect of his or her Check Opt-In Form or Claim Form in a subsequent legal proceeding (or by threatening a legal proceeding) against any of the Released Parties shall by such action waive confidentiality, thereby permitting Wells Fargo or any other of the Released Parties to unseal all information relating to that Settlement Participant's inclusion in the Settlement.

23.    **Handling Of Disputes.**

23.1.    A Claimant or an Excluded Individual may raise a dispute about the following information: (i) job positions held during the Collective Period or Applicable Class Period; (ii) the time periods in which one or more Covered Positions were held; or (iii) the number of Qualifying Workweeks. The Administrator shall be responsible for working with counsel for the Parties to handle such disputes pursuant to this Agreement and the Court's Orders.

23.2.    As stated in Paragraph 7.1, the Bank's payroll and personnel records will be considered presumptively correct and will be used to determine the information described in Paragraph 23.1. If a Claimant or an Excluded Individual wishes to raise a dispute about the accuracy of this information, he or she must present to the Administrator paycheck stubs conclusively establishing a different number of weeks during the Collective Period or Applicable Class Period with more than 38 hours of worktime in a Covered Position in a state other than California.

23.3.    The submission of any dispute to the Administrator must be made in writing, must state the specific nature and basis of the dispute, and must be made by the date five (5) business days before the Final Approval Hearing or will be deemed irrevocably waived. If there are any late but otherwise valid disputes received after the Settlement Payments have been issued, they shall be paid out of the Reserve Amount until it is exhausted.

23.4.    Upon receipt of a writing setting forth a dispute and provided that the Reserve Amount has not been exhausted, the Administrator shall be responsible for handling and resolving the dispute but shall notify counsel for the Parties promptly and not later than five (5) business days after receipt of the dispute. The number of Qualifying Workweeks established through the Bank's records (which may be zero for Excluded Individuals) and adjusted pursuant to Paragraph 6.3 will be determinative unless the paycheck stubs submitted by the disputing party establish a greater total number of Qualifying Workweeks. In this event, the number of Qualifying Workweeks established by the disputing party will be adjusted pursuant to Paragraph 6.3 and used for payment unless the Administrator concludes that the paycheck stubs are not authentic or have been altered. The Administrator shall report, in summary or narrative form, the substance of the disputes it handles, and the Parties agree that the Administrator's decision will be final and binding as to them and agree not to challenge such decision should the disputing party request Court review. Nothing in this paragraph will preclude any Person from or be a substitute for submitting an objection to the Court.

23.5.    If all Settlement Payments have been made from the Net Settlement Amount and no monies remain in the Net Settlement Amount and the Reserve Amount, the Administrator shall notify counsel for the Parties of the dispute but shall not resolve it without authorization from Wells Fargo to do so. Wells Fargo shall have the option of rejecting payment of the disputed amount because it would cause Wells Fargo's total payout under the Settlement to exceed the Maximum Settlement Amount and under no circumstance will Wells Fargo be required to pay more than this amount.

23.6.   If any portion of the Reserve Amount remains unused after the Second Check Cashing Period, it will be paid to the *cy pres* recipient approved by the Court in its Final Approval Order.

## 24.   Administrator's Responsibilities Regarding Unclaimed Payments.

24.1.   All Settlement Payment checks will be valid for one hundred eighty (180) calendar days from the date of the check (the "**Initial Check Cashing Period**"), will be mailed by the Administrator to the payee on the same date as that shown on the check, and will be accompanied by the cover letter attached hereto as Exhibit "D" when they are sent by the Administrator by U.S. First Class Mail.   On the 90th day of the Initial Check Cashing Period, the Administrator shall send by postcard and by email (if the Administrator has a personal email address for the payee) to all Settlement Collective Members and Participating Class Members who have not yet cashed their checks a reminder, in the form attached hereto as Exhibit "E," of the 180-day deadline for cashing their Settlement Payment check.   At any point in the Initial Check Cashing Period, the Administrator shall have the authority to stop payment on a lost Settlement Payment check and issue a new one to a requesting Settlement Collective Member or Participating Class Member, and the Parties agree that all costs associated with doing so shall be paid from the Net Settlement Amount.   At the end of the Initial Check Cashing Period, all uncashed Settlement Payment checks will be void.

24.2.   The amounts of any Settlement Payment checks that become void due to failure by the intended payee to negotiate them properly and in compliance with the terms of this Agreement within the Initial Check Cashing Period will remain in the QSF overseen by the Administrator for an additional 180 calendar days (the "**Second Check Cashing Period**").   At the beginning of the Second Check Cashing Period, the Administrator shall notify the intended payees by letter, sent to the address to which their Settlement Payment check was mailed, and email (if the Administrator has a personal email address for the payee), in the form attached hereto as Exhibit "F," that: (i) the 180 days for negotiating the Settlement Payment check have passed and, if applicable, the reason that the intended payee's previous effort to cash the check was rejected; (ii) where the Settlement Payment is on deposit; (iii) how the intended payee can claim the Settlement Payment within the Second Check Cashing Period in compliance with this Agreement; and (iv) the deadline for doing so. During the Second Check Cashing Period, any properly claimed Settlement Payments will be paid by a new check issued by the Administrator to the intended payee with the Check Opt-In Form language on the back and will be valid and negotiable for sixty (60) days.

24.3.   The Administrator shall perform Reverse Positive Pay on all Settlement Payment checks that are re-issued during the Initial Check Cashing Period and Second Check Cashing Period in the same manner as the initially-issued checks such that only Settlement Payment checks that are signed by the intended payee on or around the designated signature line and that do not show any alteration to the Check Opt-In Form language will be honored.

24.4.   The Administrator shall provide a sworn declaration to counsel for the Parties that Class Counsel shall file with the Court, and serve proof of filing on Defendants' Counsel, within fourteen (14) calendar days after the conclusion of the Second Check Cashing Period.   The declaration will provide a final accounting of payments made to all payees, an updated list of all Settlement Participants who endorsed a Settlement Payment check (with a copy of each Check

Opt-In Form not previously filed), a list of those who signed a Claim Form but did not endorse a Settlement Payment check (with a redacted copy of each Claim Form attached as an exhibit to the declaration), and a list of all Participating Class Members who did not endorse a Settlement Payment check or a Claim Form. Provided, however, that Class Counsel shall be relieved of the requirement to file Check Opt-In Forms and redacted Claim Forms if upon motion by Class Counsel as part of the motion for preliminary approval and/or motion for final approval, the Court expressly orders in the Preliminary Approval Order or Final Approval Order that Class Counsel may comply with the consent filing requirements of 29 U.S.C. § 216(b) by filing and serving on Defendants' Counsel proof of filing, a declaration from the Administrator attaching a complete list of the names, with a corresponding unique identification number generated by the Administrator, for all Settlement Participants, which may be filed under seal with the Court's permission. Provided, however, that any Settlement Participant who disputes the effect of his or her Check Opt-In Form or Claim Form in a subsequent legal proceeding (or by threatening a legal proceeding) against any of the Released Parties shall by such action waive confidentiality, thereby permitting Wells Fargo or any other of the Released Parties to unseal all information relating to that Settlement Participant's inclusion in the Settlement.

24.5.   Not later than thirty (30) calendar days after the conclusion of the Second Check Cashing Period, if the Gross Settlement Amount is greater than or equal to Thirty Million Dollars ($30,000,000.00) (the "**Minimum Settlement Amount**"), then the Administrator shall remit to Wells Fargo the difference between the Maximum Settlement Amount and the Gross Settlement Amount resulting from uncashed checks and tax refunds on the uncashed checks. If the Gross Settlement Amount is less than the Minimum Settlement Amount, then the Administrator shall pay from the QSF the difference between the two to a charitable organization agreed to by the Parties and approved by the Court in its Final Approval Order (*cy pres*), and the Administrator shall remit to Wells Fargo the difference between the Maximum Settlement Amount and the Minimum Settlement Amount resulting from uncashed checks and tax refunds on the uncashed checks.

## ADDITIONAL DUTIES AND RIGHTS

## 25.   **Duties Of The Parties Prior To Preliminary Approval.**

25.1.   Class Counsel shall file promptly with the Court this Agreement and its Exhibits as an exhibit to Plaintiffs' unopposed motion for preliminary approval, and a proposed preliminary approval order agreed to by the Parties. The Exhibits to this Agreement will include the Claim Form (Exhibit "A"); the Notices of Settlement (Exhibits "B" and "C"); the cover letter enclosing the settlement check (Exhibit "D"); the reminder notices (Exhibits "E" and "F"); and the cover letter enclosing the tax forms (Exhibit "G"). Collectively, the unopposed motion for preliminary approval, its exhibits, and the proposed Preliminary Approval Order are referred to as the "**Preliminary Approval Papers.**" Plaintiffs' unopposed motion will contain a request that the Court, consistent with its authority pursuant to the All Writs Act, 28 U.S.C. § 1651(a), enjoin the Settlement Collective Members and Settlement Class Members from filing separate lawsuits with respect to the Released Claims while the Settlement is being administered unless and until a specific Person timely opt outs of this Settlement ("**All Writs Injunction**"), and the proposed Preliminary Approval Order will contain All Writs Injunction language to this effect. Class Counsel shall provide Wells Fargo with a draft of the Preliminary Approval Papers twenty-one

(21) calendar days before they are filed with the Court, though Wells Fargo may agree to waive this requirement.

26.    **Duties Of The Parties And Administrator Prior To Final Approval.**

26.1.    In advance of the Final Approval Hearing and as ordered by the Court in its Preliminary Approval Order or another order, Class Counsel shall file with the Court a motion for final approval with any exhibits and a proposed Final Approval Order agreed to by the Parties (collectively, the "**Final Approval Papers**").

26.2.    The Final Approval Papers will be filed no sooner than thirty (30) calendar days after the Claim Deadline and with the Court's approval, twenty-one days prior to the Final Approval Hearing.

26.3.    Class Counsel shall submit the Final Approval Papers to Defendants' Counsel at least fourteen (14) calendar days prior to filing them so that Defendants and their counsel have sufficient time to review them, confer with Class Counsel about revisions, and agree to the Final Approval Papers before they are filed.

26.4.    Class Counsel shall also submit Plaintiffs' Motion for Approval of Attorneys' Fees and Costs to Defendants' Counsel at least five (5) business days before filing it so that Defendants and their counsel have sufficient time to review it for compliance with Paragraph 30 ("Public Comment") prohibiting negative, derogatory, or disparaging statements about the Released Parties. If Wells Fargo believes that Plaintiffs' Motion for Approval of Attorneys' Fees and Costs violates Paragraph 30, counsel for the Parties shall confer and reach an agreement before Plaintiffs file their Motion for Approval of Attorneys' Fees and Costs.

26.5.    At least seven (7) business days prior to the filing of the Final Approval Papers, the Administrator shall provide to counsel for the Parties a sworn declaration of due diligence and proof of mailing with regard to the mailing of the Mailing Packets, including all Skip Tracing performed for those Settlement Collective Members and Settlement Class Members whose Mailing Packet was returned as undeliverable. Class Counsel shall be responsible for working with the Administrator to timely file the declaration of due diligence as an exhibit to the motion for final approval.

26.6.    The Parties agree that neither they nor their counsel shall encourage any Settlement Collective Member or Settlement Class Member to opt out of or object to the Settlement, or to appeal the Final Approval Order or order dismissing the Lawsuit with prejudice. This includes Wells Fargo's commitment to abide by its anti-retaliation policy which shall also be stated in the Notice of Settlement.

26.7.    Upon the Effective Date, Wells Fargo shall bear its own legal fees and expenses in the Lawsuit.

27.     **Revoking Or Voiding This Agreement.**

27.1.     Wells Fargo may in its sole discretion revoke the Settlement prior to the Final Approval Order if any of the following contingencies ("**Contingencies**") occur: (i) fewer than all Plaintiffs and Opt-In Plaintiffs execute this Agreement; (ii) one or more Plaintiffs or Opt-In Plaintiffs opts out of the Settlement Class and Applicable State Subclasses; or (iii) the Court changes one or more Material Terms (defined below).  If Wells Fargo revokes this Agreement because the Court changes one or more Material Terms, it shall be responsible for all costs of administration incurred up to the date of such revocation.  If Wells Fargo revokes this Agreement because any other of the Contingencies occur, the Parties shall equally bear the Administrator's fees and expenses incurred up to the date of such revocation.

27.2.     The Parties agree that Wells Fargo also may revoke the Settlement Agreement if five percent (5%) or more of all Settlement Class Members opt out of the Settlement Class.  If Wells Fargo exercises its option to revoke the Settlement under this paragraph, it shall be responsible for all costs of administration incurred up to the date of such revocation.

27.3.     If Wells Fargo exercises its right to revoke this Agreement for any reason provided above or in Paragraph 28.2 below (regarding Material Terms), the Parties shall be returned to the positions they held on January 18, 2018, when the Court stayed all proceedings for purposes of ADR (except for the Tolling Agreement, as defined below).

28.     **Material Terms.**

28.1.     "**Material Term**" means any term or condition of the Settlement that is so essential to this Agreement that Wells Fargo would not agree to settle in its absence.  Material Terms include, but are not limited to, the following:  (i) the Parties' agreement that Wells Fargo shall not be required to pay more than the Maximum Settlement Amount under any circumstances (except for employer-side payroll taxes); (ii) the Parties' agreement that Wells Fargo shall not pay any attorneys' fees and costs of Class Counsel beyond the amounts approved by the Court, and that these payments receive the tax treatment specified in Paragraph 10; (iii) the Parties' agreement that any unused amount above the Minimum Settlement Amount will be paid to Wells Fargo; (iv) the Parties' agreement that Settlement Collective Members and Settlement Class Members who alter the consent to join, release, and covenant not to sue language that appears on the Check Opt-In Form and the Claim Form shall not be permitted to receive a Settlement Payment; (v) the list of circumstances in which Wells Fargo may revoke or void this Agreement as set forth in Paragraph 27 and this paragraph; (vi) the Parties' and Class Counsel's agreement that the SAC will be rescinded, will not be admissible in the Lawsuit or any other proceeding, and that no collective or class will be deemed certified if the Effective Date does not occur for any reason as set forth in Paragraphs 3.3 and 15; (vii) the No Admission of Liability and No Concession Regarding the Merits provision in Paragraph 2; (viii) the Released Claims in Paragraph 12; (ix) the Additional Agreements By Plaintiffs And Opt-In Plaintiffs in Paragraph 13; (x) the Covenant Not To Sue in Paragraph 14; and (xi) the prohibitions on Public Comment set forth in Paragraph 30 below.

28.2.     If there is a change to any Material Term or the Court disapproves of or refuses to enforce any Material Term, the Settlement will, at the option of Wells Fargo, be void, and of no further force or effect if voided by Wells Fargo and will not be used or admissible in any

subsequent proceeding for any purpose. Wells Fargo may exercise its option to void this Agreement as provided in this paragraph by giving notice, in writing, to counsel for all other Parties and to the Court within fourteen (14) calendar days of the change to any Material Term or the Court's disapproval or refusal to enforce any Material Term. A decision by the Court to award Class Counsel less in attorneys' fees and/or costs than the amount for which Class Counsel petitions will not be grounds to void this Agreement.

## 29.   Confidentiality Of Mediation Materials.

29.1.   The Parties and their counsel agree that all excerpts, summaries, or compilations that were created by Class Counsel or their agents from information produced by Wells Fargo for purposes of mediation, in whatever format maintained (hard copy, electronic, digital, or cloud) by Class Counsel, will remain strictly confidential forever pursuant to the terms of the Court's Orders and the Parties' agreements under which that information was produced.

## 30.   Public Comment And Non-Disparagement.

30.1.   Plaintiffs, Opt-In Plaintiffs, and Class Counsel shall not issue any press release, initiate press coverage, or make any negative, derogatory, or disparaging comments or statements to the press, media, or social media concerning the Lawsuit, including this Settlement, or issue any other statements or comments regarding the Released Parties' business practices in relation or in response to communications with media sources related to the Lawsuit or this Settlement. Consistent with the foregoing sentence, Plaintiffs, Opt-In Plaintiffs, and Class Counsel shall not juxtapose negative, derogatory, or disparaging comments about any of the Released Parties or other litigation against the Released Parties with comments about the Lawsuit or this Settlement. If Plaintiffs, Opt-In Plaintiffs, or Class Counsel receive inquiries from the press, media or social media about the Lawsuit or this Settlement, they will respond only that "the case has been amicably resolved to the Parties' mutual satisfaction." Plaintiffs, Opt-In Plaintiffs, and Class Counsel also shall not make negative, derogatory, or disparaging comments or statements about the Released Parties' business practices in public court filings made in connection with this Settlement, though Class Counsel can discuss the allegations in the Second Amended Complaint with the Court, consistent with this paragraph, as necessary to seek the Court's approval of the Settlement. Finally, Class Counsel will restrict information about the Lawsuit and this Settlement included on their law firm websites to information included on the Settlement Website and may include a link to the Settlement Website. Nothing in this provision will affect the ability of Class Counsel to carry out their duties consistent with and as required by any other provision in this Agreement or by the Court or affect Class Counsel's attorney-client communications, or restrict Class Counsel's ability to make statements unrelated to the Lawsuit in other litigation against the Released Parties.

## MISCELLANEOUS TERMS AND CONDITIONS

## 31.   Advice Of Counsel.

31.1.   The Parties are represented by competent counsel, and they have had an opportunity to consult and have consulted with counsel prior to executing this Agreement.

32.    **Mutual Full Cooperation.**

32.1.    The Parties and their counsel shall cooperate with each other in good faith to accomplish the terms, Effective Date, and all obligations of this Agreement, including executing and filing documents and taking any other actions as may reasonably be necessary to implement the terms of this Agreement; to obtain the Court's Final Approval Order; in the event of an appeal, to secure a complete affirmance of the Final Approval Order with all rights of appeal exhausted; and to fulfill all obligations subsequent to the Effective Date that are required by this Agreement and the Final Approval Order.

33.    **No Prior Assignments.**

33.1.    Each Plaintiff and Opt-In Plaintiff hereby represents, covenants, and warrants that he or she has not directly or indirectly assigned, transferred, encumbered, or purported to assign, transfer, or encumber to any Person or entity any portion of any liability, claim, demand, action, cause of action, or rights herein released and discharged except as set forth herein and in connection with hiring their attorneys.

34.    **No Tax Advice.**

34.1.    Wells Fargo, Defendants' Counsel, Plaintiffs, Opt-In Plaintiffs, and Class Counsel do not intend anything contained herein to constitute legal advice regarding the taxability of any amount paid hereunder, and no Person shall rely on anything contained in this Agreement or conveyed by Wells Fargo and/or Defendants' Counsel as such. The tax issues for each Plaintiff, Opt-in Plaintiff, Settlement Collective Member, and Settlement Class Member may be unique, and each such individual should obtain his or her own independent tax advice concerning any payments resulting from this Agreement.

35.    **Notices.**

35.1.    Unless otherwise specifically provided herein, all notices, demands, or other communications given hereunder will be in writing and will be deemed to have been duly given as of the third calendar day after mailing by U.S. Postal Service certified mail with return receipt requested or by another trackable delivery method (such as Federal Express or United Parcel Service), addressed as follows:

To Plaintiffs, Opt-In Plaintiffs, and the Settlement Collective and Settlement Class:

Shanon J. Carson                    David R. Markham
Berger Montague PC                  The Markham Law Firm
1818 Market Street, Ste. 3600       750 B. Street, Suite 1950
Philadelphia, PA 19103              San Diego, CA 92101

To Wells Fargo:

Richard  L. Alfred                        Timothy  M. Watson
Seyfarth  Shaw  LLP                       Seyfarth  Shaw  LLP
World Trade Center East                   700 Milam  Street, Ste. 1400
Two Seaport Lane, Ste. 300                Houston, TX 77002
Boston, MA 02210

**36.**    **Construction  And Governing  Law.**

36.1.    This  Agreement  is  the  result  of  lengthy,  intensive  arm's-length  negotiations
between the Parties and their counsel.  This Agreement  will  not be construed in favor of or against
any party by reason of the extent to which  any party or his, her, or its counsel  participated  in its
drafting.

36.2.    To  the  extent  state  law  governs  interpretation  of  this  Agreement,  it  will  be
interpreted  and governed  under the laws of the State of New Jersey.

36.3.    Paragraph titles or captions contained herein are inserted as a matter of convenience
and for reference, and do not define, limit, extend, or describe the scope of this Agreement  or any
provision  hereof.  Each term of this Agreement  is contractual  and not merely  a recital.

**37.**    **Modification.**

37.1.    This  Agreement  may not be changed, altered, or modified,  except in writing  and
signed  by the Parties  hereto.

37.2.    This  Agreement  may not be discharged  except by performance  in accordance with
its terms or by a writing  signed  by the Parties hereto.

**38.**    **Integration.**

38.1.    The  Parties'  Stipulated  Mediation  Confidentiality  Order is incorporated  into  and
made a part of this Agreement.

38.2.    The Tolling  Agreement  entered by and between the Bank and Plaintiffs  Juan Carlos
Merino and Agustin  Morel, Jr. on April 4, 2018, along with any written modifications agreed upon
by the parties in the manner required by it (collectively,  the "**Tolling  Agreement**") is incorporated
into and made a part of this Agreement.

38.3.    The  Stipulated  Mediation  Confidentiality  Order, the Tolling  Agreement,  and this
Agreement  and its Exhibits  together contain the entire agreement  among the Parties relating to the
Settlement and transactions  contemplated  hereby, and all prior or contemporaneous  agreements,
understandings,  representations,  and statements,  whether  oral or written  and whether  by a party or
such party's legal counsel,  are merged herein,  and are of no further  force or effect.  No rights
hereunder  may be waived except in writing.

39.    **Signatories.**

39.1.    Because the members of the Settlement Collective and Settlement Class are so numerous, it is impossible or impractical to have each Participating Collective Member and Participating Class Member execute this Agreement.  The Notices of Settlement, Claim Form, and other forms of notice described herein will advise all Settlement Collective Members and Settlement Class Members of the binding nature of the Release and Covenant Not To Sue, and such will have the same force and effect, to the extent permitted by law, as if this Agreement were executed by each Participating Collective Member and Participating Class Member.

39.2.    Any Person executing this Agreement or any such related document on behalf of a corporate signatory expressly warrants and promises for the benefit of the Parties that he or she has been duly authorized by such corporation to execute this Agreement or any such related document.

39.3.    The signatories hereby represent that they are fully authorized to enter into this Agreement and bind the Parties to the terms and conditions hereof.

39.4.    This Agreement will be binding upon and inure to the benefit of the Parties hereto and their respective spouses, heirs, trustees, and executors, administrators, successors, and assigns, including the Released Parties.

39.5.    This Agreement may be executed in counterparts, and when each party has signed and delivered at least one such counterpart, each counterpart will be deemed an original, which, when taken together with other signed counterparts, will constitute one Agreement that will be binding upon and effective as to the Parties and their counsel as set forth herein.  Copies and facsimile transmissions of signatures will be considered the same as an original signature.

[Remainder of page intentionally left blank.]

AGREED AND ENTERED INTO BY THE PARTIES AND THEIR RESPECTIVE
COUNSEL ON THE DATES SET FORTH BELOW:

Dated: February 26th , 2019          By: _____
                                          Juan Carlos Merino

Dated: 2-26 , 2019                   By: _____
                                          Agustin Morel, Jr.

Dated: _____ , 2019        By: _____
                                          Jonathan Almonte

Dated: _____ , 2019        By: _____
                                          Joshua Thomson

Dated: _____ , 2019        By: _____
                                          Keenan Edward Johnson, Jr.

Dated: _____ , 2019        By: _____
                                          Abdullahi Hassan Haji-Somo

Dated: _____ , 2019        By: _____
                                          Richard Donald Sklenka

Dated: _____ , 2019        By: _____
                                          Wilson Blount

Dated: _____ , 2019        By: _____
                                          Kayla Burget-Ruff

Dated: _____ , 2019        By: _____
                                          Claudia Chouza

Dated: _____ , 2019        By: _____
                                          David Davis

Dated: _____ , 2019        By: _____
                                          Heather Davis

Dated: _____ , 2019        By: _____
                                          Aaron Diaz

Dated: _____ , 2019        By: _____
                                          Kathleen Jones

33

**AGREED AND ENTERED INTO BY THE PARTIES AND THEIR RESPECTIVE COUNSEL ON THE DATES SET FORTH BELOW:**

Dated: _____, 2019       By:_____
                                         Juan Carlos Merino

Dated: _____, 2019       By:_____
                                         Agustin Morel, Jr.

Dated: ____2/26/2019____, 2019       By:_____
                                         Jonathan Almonte

Dated: _____, 2019       By:_____
                                         Joshua Thomson

Dated: _____, 2019       By:_____
                                         Keenan Edward Johnson, Jr.

Dated: _____, 2019       By:_____
                                         Abdullahi Hassan Haji-Somo

Dated: _____, 2019       By:_____
                                         Richard Donald Sklenka

Dated: _____, 2019       By:_____
                                         Wilson Blount

Dated: _____, 2019       By:_____
                                         Kayla Burget-Ruff

Dated: _____, 2019       By:_____
                                         Claudia Chouza

Dated: _____, 2019       By:_____
                                         David Davis

Dated: _____, 2019       By:_____
                                         Heather Davis

Dated: _____, 2019       By:_____
                                         Aaron Diaz

Dated: _____, 2019       By:_____
                                         Kathleen Jones

**AGREED AND ENTERED INTO BY THE PARTIES AND THEIR RESPECTIVE COUNSEL ON THE DATES SET FORTH BELOW:**

Dated: _____, 2019        By: _____
                                              Juan Carlos Merino

Dated: _____, 2019        By: _____
                                              Agustin Morel, Jr.

Dated: _____, 2019        By: _____
                                              Jonathan Almonte

Dated: FEB 27TH, 2019        By: _____
                                              Joshua Thomson

Dated: _____, 2019        By: _____
                                              Keenan Edward Johnson, Jr.

Dated: _____, 2019        By: _____
                                              Abdullahi Hassan Haji-Somo

Dated: _____, 2019        By: _____
                                              Richard Donald Sklenka

Dated: _____, 2019        By: _____
                                              Wilson Blount

Dated: _____, 2019        By: _____
                                              Kayla Burget-Ruff

Dated: _____, 2019        By: _____
                                              Claudia Chouza

Dated: _____, 2019        By: _____
                                              David Davis

Dated: _____, 2019        By: _____
                                              Heather Davis

Dated: _____, 2019        By: _____
                                              Aaron Diaz

Dated: _____, 2019        By: _____
                                              Kathleen Jones

33

**AGREED AND ENTERED INTO BY THE PARTIES AND THEIR RESPECTIVE COUNSEL ON THE DATES SET FORTH BELOW:**

Dated: _____, 2019     By:_____
Juan Carlos Merino

Dated: _____, 2019     By:_____
Agustin Morel, Jr.

Dated: _____, 2019     By:_____
Jonathan Almonte

Dated: _____, 2019     By:_____
Joshua Thomson

Dated: Febuary 27 , 2019     By: _Kenan E. J~ Jr_____
Keenan Edward Johnson, Jr.

Dated: _____, 2019     By:_____
Abdullahi Hassan Haji-Somo

Dated: _____, 2019     By:_____
Richard Donald Sklenka

Dated: _____, 2019     By:_____
Wilson Blount

Dated: _____, 2019     By:_____
Kayla Burget-Ruff

Dated: _____, 2019     By:_____
Claudia Chouza

Dated: _____, 2019     By:_____
David Davis

Dated: _____, 2019     By:_____
Heather Davis

Dated: _____, 2019     By:_____
Aaron Diaz

Dated: _____, 2019     By:_____
Kathleen Jones

**AGREED AND ENTERED INTO BY THE PARTIES AND THEIR RESPECTIVE COUNSEL ON THE DATES SET FORTH BELOW:**

Dated: _____, 2019      By: _____
                                        Juan Carlos Merino

Dated: _____, 2019      By: _____
                                        Agustin Morel, Jr.

Dated: _____, 2019      By: _____
                                        Jonathan Almonte

Dated: _____, 2019      By: _____
                                        Joshua Thomson

Dated: _____, 2019      By: _____
                                        Keenan Edward Johnson, Jr.

Dated: 02/28/2019 , 2019      By: _____
                                        Abdullahi Hassan Haji-Somo

Dated: _____, 2019      By: _____
                                        Richard Donald Sklenka

Dated: _____, 2019      By: _____
                                        Wilson Blount

Dated: _____, 2019      By: _____
                                        Kayla Burget-Ruff

Dated: _____, 2019      By: _____
                                        Claudia Chouza

Dated: _____, 2019      By: _____
                                        David Davis

Dated: _____, 2019      By: _____
                                        Heather Davis

Dated: _____, 2019      By: _____
                                        Aaron Diaz

Dated: _____, 2019      By: _____
                                        Kathleen Jones

33

**AGREED AND ENTERED INTO BY THE PARTIES AND THEIR RESPECTIVE
COUNSEL ON THE DATES SET FORTH BELOW:**

Dated: _____, 2019     By:_____
                                              Juan Carlos Merino

Dated: _____, 2019     By:_____
                                              Agustin Morel, Jr.

Dated: _____, 2019     By:_____
                                              Jonathan Almonte

Dated: _____, 2019     By:_____
                                              Joshua Thomson

Dated: _____, 2019     By:_____
                                              Keenan Edward Johnson, Jr.

Dated: _____, 2019     By:_____
                                              Abdullahi Hassan Haji-Somo

Dated: *Feb 2u* _____, 2019     By: *[signature]*_____
                                              Richard Donald Sklenka

Dated: _____, 2019     By:_____
                                              Wilson Blount

Dated: _____, 2019     By:_____
                                              Kayla Burget-Ruff

Dated: _____, 2019     By:_____
                                              Claudia Chouza

Dated: _____, 2019     By:_____
                                              David Davis

Dated: _____, 2019     By:_____
                                              Heather Davis

Dated: _____, 2019     By:_____
                                              Aaron Diaz

Dated: _____, 2019     By:_____
                                              Kathleen Jones

33

**AGREED AND ENTERED INTO BY THE PARTIES AND THEIR RESPECTIVE COUNSEL ON THE DATES SET FORTH BELOW:**

Dated: _____, 2019      By:_____
                                         Juan Carlos Merino

Dated: _____, 2019      By:_____
                                         Agustin Morel, Jr.

Dated: _____, 2019      By:_____
                                         Jonathan Almonte

Dated: _____, 2019      By:_____
                                         Joshua Thomson

Dated: _____, 2019      By:_____
                                         Keenan Edward Johnson, Jr.

Dated: _____, 2019      By:_____
                                         Abdullahi Hassan Haji-Somo

Dated: _____, 2019      By:_____
                                         Richard Donald Sklenka

Dated: 2/26, 2019                   By:_____
                                         Wilson Blount

Dated: _____, 2019      By:_____
                                         Kayla Burget-Ruff

Dated: _____, 2019      By:_____
                                         Claudia Chouza

Dated: _____, 2019      By:_____
                                         David Davis

Dated: _____, 2019      By:_____
                                         Heather Davis

Dated: _____, 2019      By:_____
                                         Aaron Diaz

Dated: _____, 2019      By:_____
                                         Kathleen Jones

33

**AGREED AND ENTERED INTO BY THE PARTIES AND THEIR RESPECTIVE COUNSEL ON THE DATES SET FORTH BELOW:**

Dated: _____, 2019     By: _____
                                         Juan Carlos Merino

Dated: _____, 2019     By: _____
                                         Agustin Morel, Jr.

Dated: _____, 2019     By: _____
                                         Jonathan Almonte

Dated: _____, 2019     By: _____
                                         Joshua Thomson

Dated: _____, 2019     By: _____
                                         Keenan Edward Johnson, Jr.

Dated: _____, 2019     By: _____
                                         Abdullahi Hassan Haji-Somo

Dated: _____, 2019     By: _____
                                         Richard Donald Sklenka

Dated: _____, 2019     By: _____
                                         Wilson Blount

Dated: February 26_____, 2019     By: _____
                                         Kayla Burget-Ruff

Dated: _____, 2019     By: _____
                                         Claudia Chouza

Dated: _____, 2019     By: _____
                                         David Davis

Dated: _____, 2019     By: _____
                                         Heather Davis

Dated: _____, 2019     By: _____
                                         Aaron Diaz

Dated: _____, 2019     By: _____
                                         Kathleen Jones

33

**AGREED AND ENTERED INTO BY THE PARTIES AND THEIR RESPECTIVE COUNSEL ON THE DATES SET FORTH BELOW:**

Dated: _____, 2019          By:_____
                                                Juan Carlos Merino

Dated: _____, 2019          By:_____
                                                Agustin Morel, Jr.

Dated: _____, 2019          By:_____
                                                Jonathan Almonte

Dated: _____, 2019          By:_____
                                                Joshua Thomson

Dated: _____, 2019          By:_____
                                                Keenan Edward Johnson, Jr.

Dated: _____, 2019          By:_____
                                                Abdullahi Hassan Haji-Somo

Dated: _____, 2019          By:_____
                                                Richard Donald Sklenka

Dated: _____, 2019          By:_____
                                                Wilson Blount

Dated: _____, 2019          By:_____
                                                Kayla Burget-Ruff

Dated: 02/27/2019, 2019                  By:_____
                                                Claudia Chouza

Dated: _____, 2019          By:_____
                                                David Davis

Dated: _____, 2019          By:_____
                                                Heather Davis

Dated: _____, 2019          By:_____
                                                Aaron Diaz

Dated: _____, 2019          By:_____
                                                Kathleen Jones

AGREED AND ENTERED INTO BY THE PARTIES AND THEIR RESPECTIVE
COUNSEL ON THE DATES SET FORTH BELOW:

Dated: _____, 2019     By: _____
                                        Juan Carlos Merino

Dated: _____, 2019     By: _____
                                        Agustin Morel, Jr.

Dated: _____, 2019     By: _____
                                        Jonathan Almonte

Dated: _____, 2019     By: _____
                                        Joshua Thomson

Dated: _____, 2019     By: _____
                                        Keenan Edward Johnson, Jr.

Dated: _____, 2019     By: _____
                                        Abdullahi Hassan Haji-Somo

Dated: _____, 2019     By: _____
                                        Richard Donald Sklenka

Dated: _____, 2019     By: _____
                                        Wilson Blount

Dated: _____, 2019     By: _____
                                        Kayla Burget-Ruff

Dated: _____, 2019     By: _____
                                        Claudia Chouza

Dated: 2/27/19 _____, 2019     By: _____
                                        David Davis

Dated: _____, 2019     By: _____
                                        Heather Davis

Dated: _____, 2019     By: _____
                                        Aaron Diaz

Dated: _____, 2019     By: _____
                                        Kathleen Jones

33

**AGREED AND ENTERED INTO BY THE PARTIES AND THEIR RESPECTIVE COUNSEL ON THE DATES SET FORTH BELOW:**

Dated: _____, 2019   By:_____
                                        Juan Carlos Merino

Dated: _____, 2019   By:_____
                                        Agustin Morel, Jr.

Dated: _____, 2019   By:_____
                                        Jonathan Almonte

Dated: _____, 2019   By:_____
                                        Joshua Thomson

Dated: _____, 2019   By:_____
                                        Keenan Edward Johnson, Jr.

Dated: _____, 2019   By:_____
                                        Abdullahi Hassan Haji-Somo

Dated: _____, 2019   By:_____
                                        Richard Donald Sklenka

Dated: _____, 2019   By:_____
                                        Wilson Blount

Dated: _____, 2019   By:_____
                                        Kayla Burget-Ruff

Dated: _____, 2019   By:_____
                                        Claudia Chouza

Dated: _____, 2019   By:_____
                                        David Davis

Dated: __2/27_____, 2019   By:_____
                                        Heather Davis

Dated: _____, 2019   By:_____
                                        Aaron Diaz

Dated: _____, 2019   By:_____
                                        Kathleen Jones

33

**AGREED AND ENTERED INTO BY THE PARTIES AND THEIR RESPECTIVE COUNSEL ON THE DATES SET FORTH BELOW:**

Dated: _____, 2019        By: _____
                                                Juan Carlos Merino

Dated: _____, 2019        By: _____
                                                Agustin Morel, Jr.

Dated: _____, 2019        By: _____
                                                Jonathan Almonte

Dated: _____, 2019        By: _____
                                                Joshua Thomson

Dated: _____, 2019        By: _____
                                                Keenan Edward Johnson, Jr.

Dated: _____, 2019        By: _____
                                                Abdullahi Hassan Haji-Somo

Dated: _____, 2019        By: _____
                                                Richard Donald Sklenka

Dated: _____, 2019        By: _____
                                                Wilson Blount

Dated: _____, 2019        By: _____
                                                Kayla Burget-Ruff

Dated: _____, 2019        By: _____
                                                Claudia Chouza

Dated: _____, 2019        By: _____
                                                David Davis

Dated: _____, 2019        By: _____
                                                Heather Davis

Dated: Feb 27 _____, 2019        By: _____
                                                Aaron Diaz

Dated: _____, 2019        By: _____
                                                Kathleen Jones

33

**AGREED AND ENTERED INTO BY THE PARTIES AND THEIR RESPECTIVE COUNSEL ON THE DATES SET FORTH BELOW:**

Dated: _____, 2019    By:_____
                                                   Juan Carlos Merino

Dated: _____, 2019    By:_____
                                                   Agustin Morel, Jr.

Dated: _____, 2019    By:_____
                                                   Jonathan Almonte

Dated: _____, 2019    By:_____
                                                   Joshua Thomson

Dated: _____, 2019    By:_____
                                                   Keenan Edward Johnson, Jr.

Dated: _____, 2019    By:_____
                                                   Abdullahi Hassan Haji-Somo

Dated: _____, 2019    By:_____
                                                   Richard Donald Sklenka

Dated: _____, 2019    By:_____
                                                   Wilson Blount

Dated: _____, 2019    By:_____
                                                   Kayla Burget-Ruff

Dated: _____, 2019    By:_____
                                                   Claudia Chouza

Dated: _____, 2019    By:_____
                                                   David Davis

Dated: _____, 2019    By:_____
                                                   Heather Davis

Dated: _____, 2019    By:_____
                                                   Aaron Diaz

Dated: *Feburary 26*, 2019    By:_____
                                                   Kathleen Jones

Dated: Feb 27th_____, 2019

By:_____
        Jeffrey Trawinski

Dated:_____, 2019

LAW OFFICE OF ROOSEVELT N. NESMITH, LLC

By:_____
        Roosevelt N. Nesmith

Dated:_____, 2019

BERGER MONTAGUE PC

By:_____
        Shanon J. Carson

Dated:_____, 2019

GISKAN SOLOTAROFF & ANDERSON LLP

By:_____
        Catherine E. Anderson

Dated:_____, 2019

THE MARKHAM LAW FIRM

By:_____
        David R. Markham

Dated:_____, 2019

REALI LAW, APC

By:_____
        Peggy Reali

Dated:_____, 2019

QUINTILONE & ASSOCIATES

By:_____
        Richard Quintilone

34

Dated: _____, 2019    By: _____
                                        Jeffrey Trawinski


Dated: _____, 2019    LAW OFFICE OF ROOSEVELT N.
                               NESMITH, LLC

                               By: _____
                                        Roosevelt N. Nesmith


Dated: _____, 2019    BERGER MONTAGUE PC


                               By: _____
                                        Shanon J. Carson


Dated: _____, 2019    GISKAN SOLOTAROFF & ANDERSON
                               LLP

                               By: _____
                                        Catherine E. Anderson


Dated: _____, 2019    THE MARKHAM LAW FIRM


                               By: _____
                                        David R. Markham


Dated: _____, 2019    REALI LAW, APC


                               By: _____
                                        Peggy Reali


Dated: _____, 2019    QUINTILONE & ASSOCIATES


                               By: _____
                                        Richard Quintilone


34

Dated: _____, 2019     By:_____
                                              Jeffrey Trawinski


Dated: _____, 2019     LAW OFFICE OF ROOSEVELT N.
                                   NESMITH, LLC


                                   By:_____
                                              Roosevelt N. Nesmith


Dated: __2/27/19___, 2019          BERGER MONTAGUE PC


                                   By:_____
                                              Shanon J. Carson


Dated: _____, 2019     GISKAN SOLOTAROFF & ANDERSON
                                   LLP

                                   By:_____
                                              Catherine E. Anderson


Dated: _____, 2019     THE MARKHAM LAW FIRM


                                   By:_____
                                              David R. Markham


Dated: _____, 2019     REALI LAW, APC


                                   By:_____
                                              Peggy Reali


Dated: _____, 2019     QUINTILONE & ASSOCIATES


                                   By:_____
                                              Richard Quintilone


34

Dated: _____, 2019          By: _____
                                              Jeffrey Trawinski


Dated: _____, 2019          LAW OFFICE OF ROOSEVELT N.
                                        NESMITH, LLC


                                        By: _____
                                              Roosevelt N. Nesmith


Dated: _____, 2019          BERGER MONTAGUE PC


                                        By: _____
                                              Shanon J. Carson


Dated: _February 27_, 2019              GISKAN SOLOTAROFF & ANDERSON
                                        LLP
                                        By: _Catherine E Anderson_
                                              Catherine E. Anderson


Dated: _____, 2019          THE MARKHAM LAW FIRM


                                        By: _____
                                              David R. Markham


Dated: _____, 2019          REALI LAW, APC


                                        By: _____
                                              Peggy Reali


Dated: _____, 2019          QUINTILONE & ASSOCIATES


                                        By: _____
                                              Richard Quintilone


34

Dated: _____, 2019          By:_____
                                             Jeffrey Trawinski


Dated: _____, 2019          LAW OFFICE OF ROOSEVELT N.
                                         NESMITH, LLC


                                         By:_____
                                             Roosevelt N. Nesmith


Dated: _____, 2019          BERGER MONTAGUE PC


                                         By:_____
                                             Shanon J. Carson


Dated: _____, 2019          GISKAN SOLOTAROFF & ANDERSON
                                         LLP

                                         By:_____
                                             Catherine E. Anderson


Dated: ___2/26____, 2019                THE MARKHAM LAW FIRM


                                         By:_____
                                             David R. Markham


Dated: _____, 2019          REALI LAW, APC


                                         By:_____
                                             Peggy Reali


Dated: _____, 2019          QUINTILONE & ASSOCIATES


                                         By:_____
                                             Richard Quintilone


34

Dated: _____, 2019    By:_____
                                          Jeffrey Trawinski


Dated: _____, 2019    LAW OFFICE OF ROOSEVELT N.
                                  NESMITH, LLC


                                  By:_____
                                          Roosevelt N. Nesmith


Dated: _____, 2019    BERGER MONTAGUE PC


                                  By:_____
                                          Shanon J. Carson


Dated: _____, 2019    GISKAN SOLOTAROFF & ANDERSON
                                  LLP

                                  By:_____
                                          Catherine E. Anderson


Dated: _____, 2019    THE MARKHAM LAW FIRM


                                  By:_____
                                          David R. Markham


Dated: _February 26_____, 2019  REALI LAW, APC


                                  By:_____
                                          Peggy Reali


Dated: _____, 2019    QUINTILONE & ASSOCIATES


                                  By:_____
                                          Richard Quintilone


34

Dated: _____, 2019        By:_____
                                                          Jeffrey Trawinski


Dated: _____, 2019        LAW OFFICE OF ROOSEVELT N.
                                            NESMITH, LLC


                                            By:_____
                                                         Roosevelt N. Nesmith


Dated: _____, 2019        BERGER MONTAGUE PC


                                            By:_____
                                                          Shanon J. Carson


Dated: _____, 2019        GISKAN SOLOTAROFF & ANDERSON
                                            LLP

                                            By:_____
                                                         Catherine E. Anderson


Dated: _____, 2019        THE MARKHAM LAW FIRM


                                            By:_____
                                                          David R. Markham


Dated: _____, 2019        REALI LAW, APC


                                            By:_____
                                                            Peggy Reali


Dated: _____February 26__, 2019        QUINTILONE & ASSOCIATES

                                            By:_____
                                                        Richard Quintilone II

Dated: 2/26 _____, 2019  RUSSELL S. WARREN, JR.

              By:_____
                 Russell S. Warren, Jr.

Dated: _____, 2019  WELLS FARGO & COMPANY

              By:_____

              Its:_____

Dated: _____, 2019  WELLS FARGO BANK, N.A.

              By:_____

              Its:_____

Dated: _____, 2019  SEYFARTH SHAW LLP

              By:_____
                Richard L. Alfred

              By:_____
                Timothy M. Watson

Dated: _____, 2019        RUSSELL S. WARREN, JR.

                                       By:_____
                                            Russell S. Warren, Jr.

Dated: _____, 2019        WELLS FARGO & COMPANY

                                       By:_____
                                            Mary T. Mack
                                       Its:___ Senior EVP, Head of Consumer Banking

Dated: ___February 28_____, 2019       WELLS FARGO BANK, N.A.

                                       By:_____
                                            Mary T. Mack
                                       Its:___ Senior EVP, Head of Consumer Banking

Dated: ___February 28_____, 2019       SEYFARTH SHAW LLP

                                       By:_____
                                            Richard L. Alfred

                                       By:_____
                                            Timothy M. Watson

# **EXHIBIT A**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| JUAN CARLOS MERINO, AGUSTIN MOREL, JR., JOSHUA THOMSON, JONATHAN ALMONTE, KEENAN JOHNSON, ABDULLAHI HAJISOMO, CLAUDIA CERVANTES CHOUZA, WILSON BLOUNT III and RICHARD SKLENKA, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>WELLS FARGO & COMPANY and WELLS FARGO BANK, N.A.,<br><br>Defendants. | Case No.: 2:16-cv-07840-ES-MAH<br><br>**CLAIM FORM**<br><br>UNIQUE CLAIM ID NO. [INSERT] |

**Name (please print):** _____

**Address:** _____

**City:** _____ **State:** _____ **Zip Code:**_____

**Telephone No.:**_____ **Last 4 Digits of Social Security No.:**_____

**Email Address:**_____

**Consent to Join:** By signing this Claim Form below, I declare under penalty of perjury that I dispute that I have received all wages I am owed for my time worked in a Covered Position, as defined in the Notice of Settlement I received. I thus consent to join the above-styled lawsuit. By signing below, I authorize Class Counsel, on my behalf, to file evidence of my consent with the Court, and I agree to release and not to sue for the Released Claims defined in the Notice of Settlement I received. I understand that this release is binding and will have the same force and effect as signing the Settlement Agreement and Release.

**Signature:** _____

*In order for this Claim Form to be valid, you must sign and timely return this Claim Form without altering the consent to join and release language above. You may fax, email, or mail this Claim Form to the Administrator using the contact information below, or return it via the settlement website, WWW.WFOVERTIMESETTLEMENT.COM, **using your unique identification number which is identified below**, on or before [DATE]:*

2

[NAME AND MAILING ADDRESS]
[EMAIL ADDRESS]
[FAX NUMBER]
[SETTLEMENT WEBSITE ADDRESS]

[UNIQUE ID NO. TO USE ON WEBSITE: _____]

# EXHIBIT B

### NOTICE OF SETTLEMENT OF FLSA COLLECTIVE AND CLASS ACTION LAWSUIT

*Merino, et al. v. Wells Fargo Bank, N.A., et al.* **(D.N.J. Case No. 2:16-cv-07840-ES-MAH)**

<u>**PLEASE READ THIS NOTICE CAREFULLY**</u>

*A court authorized this Notice. It is not a solicitation from a lawyer, and you are not being sued. However, your rights could be affected by how you respond to this Notice.*

You are receiving this Notice of Settlement of FLSA Collective and Class Action Lawsuit ("Notice") in the above-titled Lawsuit pending against Defendants Wells Fargo Bank, N.A. (the "Bank") and Wells Fargo & Company (together with the Bank, "Defendants" or "Wells Fargo"), because the Bank's records show that you meet the definition for the "Settlement Class." This means that you (1) worked as a Customer Sales & Service Representative ("CSSR"), Personal Banker 1 ("PB1"), Personal Banker 2 ("PB2"), Premier/Private Banker ("PPB"), Business Banking Specialist ("BBS"), and/or Senior Business Banking Specialist ("SBBS") (collectively, the "Covered Positions") in one or more of the states listed in (a) - (g) below during the period listed as applicable to that state ("Applicable Class Period"); <u>and</u> (2) recorded working more than 38 hours in one or more of the Covered Positions in at least one workweek during the Applicable Class Period.

> (a) In Connecticut at any time from January 1, 2016 through December 31, 2017;
> (b) In Minnesota at any time from January 1, 2015 through December 31, 2017;
> (c) In Nevada at any time from January 1, 2016 through December 31, 2017;
> (d) In New Jersey at any time from January 1, 2016 through December 31, 2017;
> (e) In New York at any time from January 1, 2012 through December 31, 2017;
> (f) In North Carolina at any time from January 1, 2016 through December 31, 2017; or
> (g) In Pennsylvania at any time from January 1, 2015 through December 31, 2017.

You may also meet the definition for the Settlement Collective, which includes those individuals who (1) worked in a Covered Position at some time between January 1, 2015 and December 31, 2017 (the "Collective Period") in a state other than California; and (2) recorded working more than 38 hours in one or more of the Covered Positions in at least one workweek during the Collective Period.

Because the Bank's records reflect that you meet the definition for the Settlement Class (and possibly also the Settlement Collective), **you are entitled to receive money from the Settlement[1] of the Lawsuit as described below.**

| 1.  Why Should You Read This Notice of Settlement? |
|---|

This Notice of Settlement explains your right: (1) to share in the monetary proceeds of the Settlement; (2) to exclude yourself ("opt out") from the Settlement; or (3) to object to the Settlement. The United States District Court for the District of New Jersey has preliminarily approved the Settlement as fair and reasonable. The Court will hold a final approval hearing on

---

[1] Capitalized terms in this Notice are defined in the Parties' Settlement Agreement and Release ("Settlement" or "Agreement") which is available for review at www.wfovertimesettlemenet.com.

_____ __, 201_ at __:__ _.m., before the Honorable Esther Salas, United States District Court for the District of New Jersey, Martin Luther King Building & U.S. Courthouse, 50 Walnut Street, Room 4015, Newark, N.J. 07101 (the "Final Approval Hearing").

## 2.   What Is the Lawsuit About?

Plaintiffs allege that they and Settlement Collective Members and Settlement Class Members (including you) were not paid properly for all of the overtime that they worked for the Bank while in a Covered Position (defined above), in violation of federal and state laws.

Wells Fargo denies these allegations, and nothing contained in this Notice, or the Agreement itself, shall be construed as or deemed an admission of liability, culpability, negligence, or wrongdoing on the part of Wells Fargo. However, to avoid the burden, expense, and inconvenience of continued litigation, the Parties have concluded that it is in their best interest to resolve and settle the Lawsuit.

## 3.   What Are the Monetary Terms Of the Settlement?

Wells Fargo has agreed to pay a maximum of Thirty Five Million Dollars ($35,000,000.00) to settle the Lawsuit ("Maximum Settlement Amount"). The Maximum Settlement Amount will first be used to pay all of the following: (1) attorneys' fees and costs for Class Counsel that are approved by the Court; (2) all settlement administration fees and costs; and (3) service awards to Plaintiffs and Opt-In Plaintiffs in the amounts approved by the Court. In addition, $100,000 will be set aside as a Reserve Amount to cover any correctible errors or omissions that are made during the Settlement administration process.

The remaining amount is the Net Settlement Amount. The Net Settlement Amount will be used to make settlement payments to anyone (including you) who (1) is a member of the Settlement Collective and/or (2) is a member of the Settlement Class and does not opt out of the Settlement.

## 4.   How Much Can You Expect To Receive, And When Will You Receive It?

If you do not request exclusion (*i.e.*, opt out) of the Settlement, you will automatically receive a settlement check for $300.00 (the "Minimum Amount"), less applicable local, state, and federal taxes. You do not need to take any further action in order to receive this settlement check.

If you believe that you are entitled to more than the Minimum Amount, you may become a "Claimant" by completing, signing, and returning the enclosed Claim Form, without altering the consent to join and release language above the signature line, to the Administrator by the deadline set forth below.

The Bank's payroll and personnel records for all Claimants will be used to determine the number of workweeks that the Claimant recorded working more than 38 hours (excluding vacation, holiday, sick, meal and rest breaks, and any other paid or unpaid time off that is not included in the calculation of "work" time) during the longer of the Collective Period or Applicable Class Period in a Covered Position. For Settlement Class Members like you, the Administrator will count twice those workweeks in which the Claimant worked more than 38 hours in a Covered Position from the beginning of the Collective Period or Applicable Class Period (whichever date is earlier) up to October 1, 2016, and will count once those workweeks in which the Claimant worked more

than 38 hours in a Covered Position between October 2, 2016 and June 20, 2018. The sum of these workweeks will be the Claimant's "Qualifying Workweeks." The Bank's payroll and personnel records will be considered presumptively correct in determining the number of Qualifying Workweeks for each Claimant.

Each Claimant's number of Qualifying Workweeks will be multiplied by the Per Workweek Amount defined in the Agreement[2] and added to the Minimum Payment to determine his/her pre-tax settlement amount, except that any Claimant who has twelve or fewer Qualifying Workweeks shall receive only the Minimum Payment (or Adjusted Minimum Payment, defined below) and no additional payment as a Claimant.

If any Residual Net Settlement Amount remains after deduction of (i) the Minimum Payments to be made to Settlement Collective Members and Participating Class Members, and (ii) the Per Workweek Amount payments to be made to Claimants, that remaining Residual Net Settlement Amount shall be distributed evenly on a *per capita* basis among the Settlement Collective Members and Participating Class Members (including those who do not become Claimants) and paid as part of the Minimum Payments ("Adjusted Minimum Payments").

If you do not request exclusion from the Settlement, the Administrator will mail a settlement check to you within forty-five (45) calendar days after the Agreement's Effective Date. You will have 180 days from the date shown on the settlement check to endorse it on the designated signature line, without alteration of any of the language on the back of the check (the "Check Opt-In Form"), and cash or deposit it. If you fail to sign or if you alter the language on the back of the Check Opt-In Form, the check will be void and payment to you will be rejected.

**It is your responsibility to keep a current address on file with the Administrator to ensure receipt of your settlement check. If you fail to keep your address current, you may not receive your settlement check.**

After 180 days, any uncashed and voided settlement checks will become invalid, and the funds from them will be held by the Administrator in the Qualified Settlement Fund for another 180 days. The intended payees of those funds will be notified by the Administrator at the addresses on file for the payees where the funds are on deposit, how the funds can still be claimed, and the deadline and proper manner for doing so.

After expiration of the second 180-day period, if the Gross Settlement Amount is greater than or equal to Thirty Million Dollars ($30,000,000.00) (the "Minimum Settlement Amount"), then the Administrator shall remit to Wells Fargo the difference between the Maximum Settlement Amount

---

[2] Pursuant to the Agreement, the Per Workweek Amount will depend on the number of Claimants and their Qualifying Workweeks. To determine the Per Workweek Amount, the Administrator will deduct from the Net Settlement Amount the total to be paid as Minimum Payments to all Settlement Collective Members and Participating Class Members to arrive at a Residual Net Settlement Amount. The Administrator shall divide the Residual Net Settlement Amount by the sum of Qualifying Workweeks for all Claimants to obtain a *pro rata* per workweek amount. If the *pro rata* per workweek amount is less than $57.21 for Qualifying Workweek, then the *pro rata* per workweek amount will be the Per Workweek Amount. If the *pro rata* per workweek amount is equal to or greater than $57.21, then $57.21 will be the Per Workweek Amount.

and the Gross Settlement Amount resulting from uncashed checks and tax refunds on the uncashed checks. If the Gross Settlement Amount is less than the Minimum Settlement Amount, then the Administrator will pay the difference between the two amounts to Legal Services of New Jersey and Legal Aid of North Carolina, the charitable organizations agreed to by the Parties, subject to Court approval. The Administrator will then remit to Wells Fargo the difference between the Maximum Settlement Amount and the Minimum Settlement Amount resulting from uncashed checks and the tax refunds on the uncashed checks.

## 5.  What Does Signing the Check Opt-In Form on the Claim Form Mean?

By timely signing and returning the enclosed Claim Form or timely signing the Check Opt-In Form and negotiating your Settlement Payment check without altering the language of it, you are (a) electing to opt in and participate in the Settlement; (b) authorizing Class Counsel to file with the Court evidence of your consent to join the Settlement of the Lawsuit as a party plaintiff, such as your name (though the Final Approval Order may allow personal identifying information to be filed under seal, *i.e.*, not available to the public) and, unless excused by the Court, a copy of the Check Opt-In Form or a redacted copy of the Claim Form; (c) asserting a claim under federal and any applicable state and/or local laws for all wages, including overtime, that allegedly have not been paid; and (d) agreeing to release and not sue for any of the Released Claims as set forth in the Agreement and below.

*If you alter the consent to join and release language on the Claim Form, fail to complete it, or fail to sign your name on the signature line of it, you will <u>not</u> be deemed a valid Claimant.*

*If you alter the consent to join and release language of the Check Opt-In Form on the back of your settlement check, if you fail to sign your name on the "Endorsed:" line of it, or if you fail to cash the settlement check within the time periods stated above, the settlement check will become void, and payment of it will be rejected.*

*If you consent to join the Settlement of the Lawsuit by completing and signing a valid and timely Claim Form or Check Opt-In Form but the Settlement's Effective Date does not occur for any reason, your consent to join will be deemed to have been withdrawn and will be stricken by the Court and of no effect.*

## 6.  What Claims Are You Releasing By Participating In the Settlement?

By submitting a timely and valid Claim Form and/or signing your Settlement Payment check without alteration of the Check Opt-In Form language on the back of it, you will be agreeing to release claims you may have against the Released Parties.[3] The claims you will be releasing are set forth in the Agreement under "Released Claims," and that portion of the Agreement is also set forth below:

**<u>Released Claims</u>**

---

[3] "Released Parties" means Defendants and each of their parents, divisions, subsidiaries, affiliates, sibling entities, investors, predecessors, and successors, and each of their current and former owners, stockholders, directors, officers, members, fiduciaries, insurers, employees, attorneys, representatives, and agents.

In further consideration of the promises made in this Agreement, and upon the Effective Date and the payment by Wells Fargo of the Maximum Settlement Amount, each Settlement Participant hereby forever discharges and releases the Released Parties from any and all suits, actions, causes of action, claims, or demands for unpaid wages (including overtime wages), damages, reimbursements, unpaid advances, civil and/or statutory penalties, liquidated damages, punitive damages, multiple damages, interest, attorneys' fees, litigation costs, restitution, and/or equitable relief in any way growing out of their work in a Covered Position for any and all claims that were or could have been asserted in the Lawsuit or that are based on or arise out of the facts alleged in any version of the complaints filed in the Lawsuit (including those asserted in the First Amended Complaint and SAC), from the beginning of the Collective Period or Applicable Class Period (as defined in Paragraphs 1.49 and 1.47 [of the Agreement]), whichever is the earlier date, through June 20, 2018, including without limitation any claims under the FLSA and any applicable state, county, or local laws, statutes, regulations, ordinances, or wage orders for alleged unpaid overtime, premium, or minimum wages; failure to provide compliant meal and/or rest breaks; failure to pay meal and/or rest period compensation; failure to maintain required business records; failure to provide accurate or completed itemized wage statements; failure to compensate for all time worked; failure to properly calculate compensable time worked or the regular rate of pay; failure to pay or reimburse for all business expenses; waiting time penalties; failure to pay all wages due in a timely manner, including upon employment termination; misclassification of employees as exempt employees, independent contractors, or any other form of non-employee workers; and contributions to any 401(k) or other retirement or employee benefit plan based on any payments made by reason of this Agreement (collectively, the "**Released Claims**"). Notwithstanding the foregoing, nothing in this provision releases any claim that cannot be released as a matter of law, including that Participating Class Members who are not Participating Collective Members shall not release their claims under the FLSA. Except for Plaintiffs and Opt-In Plaintiffs as set forth in Paragraph 13.1 [of the Agreement], the Released Claims apply only to the employment of Participating Collective Members and Participating Class Members while they were employed in the Covered Positions during the longer of the Collective Period or Applicable Class Period.

Each Settlement Participant further acknowledges that the Released Claims are intended to include all Released Claims regardless of whether the Settlement Participant knows, is aware of, or suspects the claims or potential claims being released.

## 7.  How Can You Request Exclusion From Or Object To The Settlement?

**Requests for Exclusion.**  If you do not wish to be bound by the Settlement, you must opt out of the Settlement by submitting a written Request for Exclusion postmarked, or marked as received by the Administrator, no later than [Claim Deadline]. To be deemed valid, the Request for Exclusion must contain your full name, address, telephone number, email address, and the last four digits of your Social Security number. It also must contain a clear statement of your desire to opt out of the Settlement, and it must be signed individually by you. No Request for Exclusion may be made on behalf of more than one individual. The Request for Exclusion must be sent to the Administrator by mail, email, or facsimile at:

[MAILING ADDRESS]
[EMAIL ADDRESS]
[FAX NUMBER]

If you submit a timely and valid Request for Exclusion (*i.e.*, opt out of the Settlement), you will not receive a settlement check, will not be bound by the Settlement, and will not have the right to object to or comment on the Settlement or appeal an order granting final approval of the Settlement and/or dismissing the Lawsuit.

**Objections.** If you have not opted out of the Settlement and wish to object to the Settlement, you must submit a written statement specifically describing your objection, individually sign that statement, and submit it to the Administrator. You may also, if you wish, appear at the Final Approval Hearing to discuss your objection with the Court and the Parties. To be considered valid, your objection must include (1) a statement of your specific reasons for objecting to the Settlement; (2) the factual and legal grounds for your objection(s) along with any evidentiary support for each objection you wish to bring to the Court's attention; (3) your full name, address, and telephone number; (4) the Covered Position(s) that you held; (5) your dates of employment at the Bank in Covered Positions; (6) the last four digits of your Social Security number; (7) a statement as to whether you and/or your attorney intend to appear at the Final Approval Hearing; and (8) your signature. To be deemed timely, your objection must bear a postmark of, or be marked as received by the Administrator, no later than [Claim Deadline].

If you plan to attend the Final Approval Hearing, you must also file with the Court a written notice of intention to appear at the Final Approval Hearing no later than [Claim Deadline] and serve that written notice of intention no later than the same date on both (i) Class Counsel, as specified below in answer to Question 10, and (ii) Wells Fargo's counsel at:

| | |
|---|---|
| Richard L. Alfred | Timothy M. Waston |
| Seyfarth Shaw LLP | Seyfarth Shaw LLP |
| World Trade Center East | 700 Milam Street, Suite 1400 |
| Two Seaport Lane, Suite 300 | Houston, TX 77002 |
| Boston, MA 02210 | |

In order to file an objection and be heard at the Final Approval Hearing, you must not have opted out of the Settlement. If the Court rejects your objection, you will be bound by the Settlement, including the Released Claims section of the Settlement. Counsel for the Parties may take the deposition of any objector prior to the Final Approval Hearing in a location convenient for the objector.

If you wish to object to the Settlement but fail to file a timely and valid written objection in the manner specified herein by the deadline for doing so, you will be deemed to have waived any objection and shall be foreclosed from making any objection (whether by appeal or otherwise) to the Settlement.

### 8. What If You Want To File Your Own Lawsuit?

To facilitate the settlement process, the Court has issued an order enjoining all members of the Settlement Collective and Settlement Class (including you) from initiating any "Duplicative Lawsuits" while the Settlement is being administered. Duplicative Lawsuits include all suits, actions, causes of action, claims, or demands in any federal, state, or local jurisdiction, other than the Lawsuit, asserting any of the Released Claims. This injunction will remain in effect through the Effective Date of the Settlement or, for any individual Settlement Class Member, through the date he or she files a valid and timely Request for Exclusion as described above.

### 9. Will Your Participation in the Settlement Affect Your Current Or Future Employment With the Bank?

No. Your decision whether to participate in the Settlement of the Lawsuit will in no way affect your work or employment with the Bank or future work or employment with Wells Fargo. In compliance with its anti-retaliation policy, Wells Fargo will not take any adverse action against you as a result of your decision to participate in or exclude yourself from the Settlement.

### 10. Who Are the Attorneys Representing Plaintiffs, the Settlement Collective, and the Settlement Class?

Plaintiffs, the Settlement Collective Members, and the Settlement Class Members are represented by the following attorneys acting as Class Counsel:

Shanon J. Carson
Sarah Schalman-Bergen
Alexandra K. Piazza
**BERGER MONTAGE PC**
1818 Market St., Suite 3600
Philadelphia, PA 19103
Tel: (215) 875-3033
apiazza@bm.net

Roosevelt N. Nesmith, Esq.
**LAW OFFICE OF
ROOSEVELT N.
NESMITH, LLC**
363 Bloomfield Avenue, 2C
Montclair, NJ 07042
Tel: (973) 259-6990
roosevelt@nesmithlaw.com

Catherine E. Anderson, Esq.
**GISKAN SOLOTAROFF
& ANDERSON LLP**
217 Centre Street, 6th Floor
New York, NY 10013
Tel: (212) 847-8315
canderson@gslawny.com

David R. Markham Esq.
**THE MARKHAM LAW
FIRM**
750 B. Street, Suite 1950
San Diego, California 92101
Tel: (619) 399-3995
dmarkham@markham-law.com

Peggy Reali Esq.
**REALI LAW, APC**
1754 Thomas Ave.
San Diego, CA 92109
Tel: (619) 778-0229
preali@realilaw.com

Richard Quintilone, II, Esq
**QUINTILONE &
ASSOCIATES**
22974 El Toro Road, Ste 100
Lake Forest, CA 92630-4961
Tel: (949) 458-9675
req@quintlaw.com

Russell S. Warren, Jr., Esq.
473 Sylvan Avenue
Englewood Cliffs, NJ 07632-1234
Tel: (201)503-0773
mail@RWarrenlaw.com

## 11.  How Will Class Counsel Be Paid?

Class Counsel will be paid from the Gross Settlement Amount. You do not have to pay them. The Agreement provides that Class Counsel will ask the Court to approve payment of attorneys' fees of up to thirty percent (30%) of the Maximum Settlement Amount ($10,500,000) plus out-of-pocket costs of up to $60,000. Under the terms of the Agreement, they will receive no other fees or costs beyond those approved by the Court. The amount of attorneys' fees and costs to be awarded will be determined by the Court at the Final Approval Hearing.

## 12.  Where Can You Get More Information?

If you have questions about the Notice of Settlement, including the enclosed Claim Form, or the Settlement, or if you did not receive the Notice of Settlement and Claim Form in the mail but believe that you are or may be a member of the Settlement Collective and/or Settlement Class, you should first review the Frequently Asked Questions section of the Settlement Website at www.wfovertimesettlement.com. You may also contact the Administrator (contact information listed herein), for more information or to request that a copy of the Notice of Settlement and Claim Form be sent to you in the mail. If you wish to communicate directly with Class Counsel, you may contact them (contact information listed above). You may also seek advice and guidance from your own private attorney at your own expense, if you so desire.

The Notice of Settlement is only a summary. In the event of a conflict or inconsistency between the Agreement and this Notice or the enclosed Claim Form, the terms of the Agreement will control. *For more detailed information, you may review the Agreement, which contains the complete terms of the Settlement and is available at www.wfovertimesettlement.com.*

**PLEASE DO NOT WRITE OR TELEPHONE THE COURT, WELLS FARGO, OR WELLS FARGO'S COUNSEL FOR INFORMATION ABOUT THE SETTLEMENT OR THE LAWSUIT.**

Dated: _____.

# EXHIBIT C

NOTICE OF SETTLEMENT OF FLSA COLLECTIVE ACTION LAWSUIT

*Merino, et al. v. Wells Fargo Bank, N.A., et al.*, (D.N.J. Case No. 2:16-cv-07840-ES-MAH)

**PLEASE READ THIS NOTICE CAREFULLY**

*A court authorized the below. It is not a solicitation from a lawyer, and you are not being sued. However, your rights could be affected by how you respond to the below.*

You are receiving this Notice of Settlement of FLSA Collective Action Lawsuit ("Notice") in the above-titled Lawsuit pending against Defendants Wells Fargo Bank, N.A. (the "Bank") and Wells Fargo & Company (together with the Bank, "Defendants" or "Wells Fargo") because the Bank's records show that you meet the definition for the "Settlement Collective." This means that you (1) have worked as a Customer Sales & Service Representative ("CSSR"), Personal Banker 1 ("PB1"), Personal Banker 2 ("PB2"), Premier/Private Banker ("PPB"), Business Banking Specialist ("BBS"), and/or Senior Business Banking Specialist ("SBBS") (collectively, the "Covered Positions") at some time between January 1, 2015 and December 31, 2017 (the "Collective Period") in a state other than California; and (2) recorded *working* more than 38 hours in one or more of the Covered Positions in at least one workweek during the Collective Period.

Because the Bank's records reflect that you meet this definition, **you are entitled to receive money from the Settlement[4] of the Lawsuit, as described below.**

| 1. | Why Should You Read This Notice of Settlement? |
|---|---|

This Notice of Settlement explains your right to share in the monetary proceeds of the Settlement. The United States District Court for the District of New Jersey has preliminarily approved the Settlement as fair and reasonable. The Court will hold a final approval hearing on _____ __, 201_ at __:__ _.m., before the Honorable Esther Salas, United States District Court for the District of New Jersey, Martin Luther King Building & U.S. Courthouse, 50 Walnut Street, Room 4015, Newark, N.J. 07101 (the "Final Approval Hearing").

| 2. | What Is the Lawsuit About? |
|---|---|

Plaintiffs allege that they and the Settlement Collective Members and Settlement Class Members were not paid properly for all of the time that they worked for the Bank while in a Covered Position (defined above), in violation of federal and state laws.

Wells Fargo denies these allegations, and nothing contained in this Notice, or the Agreement itself, shall be construed as or deemed an admission of liability, culpability, negligence, or wrongdoing on the part of Wells Fargo. However, to avoid the burden, expense, and inconvenience of continued litigation, the Parties have concluded that it is in their best interest to resolve and settle the Lawsuit.

---

[4] Capitalized terms in this Notice are defined in the Parties' Settlement Agreement and Release ("Settlement" or "Agreement") which is available for review at www.wfovertimesettlement.com.

| 3. | What Are the Terms Of the Settlement? |
|---|---|

Wells Fargo has agreed to pay a maximum of Thirty Five Million Dollars ($35,000,000.00) to settle the Lawsuit ("Maximum Settlement Amount"). The Maximum Settlement Amount will first be used to pay all of the following: (1) attorneys' fees and costs for Class Counsel that are approved by the Court; (2) all settlement administration fees and costs; and (3) service awards to Plaintiffs and Opt-In Plaintiffs in the amounts approved by the Court. In addition, $100,000 will be set aside as a Reserve Amount to cover any correctible errors or omissions that are made during the Settlement administration process.

The remaining amount is the Net Settlement Amount. The Net Settlement Amount will be used to make settlement payments to anyone who (1) is a member of the Settlement Collective (including you) and/or (2) is a member of the Settlement Class and does not opt out of the Settlement.

| 4. | How Much Can You Expect To Receive, And When Will You Receive It? |
|---|---|

You will automatically receive a settlement check for $300.00 (the "Minimum Payment"), less applicable local, state, and federal taxes. You do not need to take any further action in order to receive this settlement check.

If you believe that you are entitled to more than the Minimum Payment, you may become a "Claimant" by completing, signing, and returning the enclosed Claim Form, without altering the consent to join and release language above the signature line, to the Administrator by the deadline set forth below.

The Bank's payroll and personnel records for all Claimants will be used to determine the number of workweeks that the Claimant recorded working more than 38 hours (excluding vacation, holiday, sick, meal and rest breaks, and any other paid or unpaid time off that is not included in the calculation of "work" time) during the longer of the Collective Period or Applicable Class Period in a Covered Position. For Settlement Collective Members like you, the Administrator will count twice those workweeks in which the Claimant worked more than 38 hours in a Covered Position from the beginning of the Collective Period up to September 30, 2016, and will count once those workweeks in which the Claimant worked more than 38 hours in a Covered Position between October 1, 2016 and June 20, 2018. The sum of these workweeks will be the Claimant's Qualifying Workweeks. The Bank's payroll and personnel records will be considered presumptively correct in determining the number of Qualifying Workweeks for each Claimant.

Each Claimant's number of Qualifying Workweeks will be multiplied by the Per Workweek Amount defined in the Agreement[5] and added to the Minimum Payment to determine his/her pre-

---

[5] Pursuant to the Agreement, the Per Workweek Amount will depend on the number of Claimants and their Qualifying Workweeks. To determine the Per Workweek Amount, the Administrator will deduct from the Net Settlement Amount the total to be paid as Minimum Payments to all Settlement Collective Members and Participating Class Members to arrive at a Residual Net Settlement Amount. The Administrator shall divide the Residual Net Settlement Amount by the sum of Qualifying Workweeks for all Claimants to obtain a *pro rata* per workweek amount. If the *pro rata* per workweek amount is less than $57.21 per Qualifying Workweek, then the *pro rata* per workweek amount will be the Per Workweek Amount. If the

tax settlement amount, except that any Claimant who has twelve or fewer Qualifying Workweeks shall receive only the Minimum Payment (or Adjusted Minimum Payment, defined below) and no additional payment as a Claimant.

If any Residual Net Settlement Amount remains after deduction of (i) the Minimum Payments to be made to Settlement Collective Members and Participating Class Members, and (ii) the Per Workweek Amount payments to be made to Claimants, that remaining Residual Net Settlement Amount shall be distributed evenly on a *per capita* basis among the Settlement Collective Members and Participating Class Members (including those who do not become Claimants) and paid as part of the Minimum Payments ("Adjusted Minimum Payments").

If you do not request exclusion from the Settlement, the Administrator will mail a settlement check to you within forty-five (45) calendar days after the Agreement's Effective Date. You will have 180 days from the date shown on the settlement check to endorse it on the designated signature line, without alteration of any of the language on the back of the check (the "Check Opt-In Form"), and cash or deposit it. If you fail to sign or if you alter the language on the back of the Check Opt-In Form, the check will be void and payment to you will be rejected.

**It is your responsibility to keep a current address on file with the Administrator to ensure receipt of your settlement check. If you fail to keep your address current, you may not receive your settlement check.**

After 180 days, any uncashed and voided settlement checks will become invalid, and the funds from them will be held by the Administrator in the Qualified Settlement Fund for another 180 days. The intended payees of those funds will be notified by the Administrator at the addresses on file for the payees where the funds are on deposit, how the funds can still be claimed, and the deadline and proper manner for doing so.

After expiration of the second 180-day period, if the Gross Settlement Amount is greater than or equal to Thirty Million Dollars ($30,000,000.00) (the "Minimum Settlement Amount"), then the Administrator shall remit to Wells Fargo the difference between the Maximum Settlement Amount and the Gross Settlement Amount resulting from uncashed checks and tax refunds on the uncashed checks. If the Gross Settlement Amount is less than the Minimum Settlement Amount, then the Administrator will pay the difference between the two amounts to Legal Services of New Jersey and Legal Aid of North Carolina, the charitable organizations agreed to by the Parties, subject to Court approval. The Administrator will then remit to Wells Fargo the difference between the Maximum Settlement Amount and the Minimum Settlement Amount resulting from uncashed checks and tax refunds on the uncashed checks.

## 5. What Does Signing the Check Opt-In Form or the Claim Form Mean?

By timely signing and returning the enclosed Claim Form or timely signing the Check Opt-In Form on the back of and negotiating your Settlement Payment check without altering the language of it, you are (a) electing to opt in and participate in the Settlement; (b) authorizing Class Counsel to

---

*pro rata* per workweek amount is equal to or greater than $57.21, then $57.21 will be the Per Workweek Amount.

file with the Court evidence of your consent to join the Settlement of the Lawsuit as a party plaintiff, such as your name (though the Final Approval Order may allow personal identifying information to be filed under seal, *i.e.*, not available to the public) and, unless excused by the Court, a copy of the Check Opt-In Form or a redacted copy of the Claim Form; (c) asserting a claim under federal and any applicable state and/or local laws for all wages, including overtime, that allegedly have not been paid; and (d) agreeing to release and not sue for any of the Released Claims as set forth in the Agreement and below.

***If you alter the consent to join and release language on the Claim Form, fail to complete it, or fail to sign your name on the signature line of it, you will <u>not</u> be deemed a valid Claimant.***

***If you alter the consent to join and release language of the Check Opt-In Form on the back of your settlement check, if you fail to sign your name on the "Endorsed:" line of it, or if you fail to cash the settlement check within the time periods stated above, the settlement check will become void, and payment of it will be rejected.***

***If you consent to join the Settlement of the Lawsuit by completing and signing a valid and timely Claim Form or Check Opt-In Form but the Settlement's Effective Date does not occur for any reason, your consent to join will be deemed to have been withdrawn and will be stricken by the Court and of no effect.***

## 6. What Claims Are You Releasing By Participating In the Settlement?

By submitting a timely and valid Claim Form and/or signing your Settlement Payment check without alteration of the Check Opt-In Form language on the back of it, you will be agreeing to release claims you may have against the Released Parties.[6] The claims you will be releasing are set forth in the Agreement under "Released Claims," and that portion of the Agreement is also set forth below:

### <u>Released Claims</u>

In further consideration of the promises made in this Agreement, and upon the Effective Date and the payment by Wells Fargo of the Maximum Settlement Amount, each Settlement Participant hereby forever discharges and releases the Released Parties from any and all suits, actions, causes of action, claims, or demands for unpaid wages (including overtime wages), damages, reimbursements, unpaid advances, civil and/or statutory penalties, liquidated damages, punitive damages, multiple damages, interest, attorneys' fees, litigation costs, restitution, and/or equitable relief in any way growing out of their work in a Covered Position for any and all claims that were or could have been asserted in the Lawsuit or that are based on or arise out of the facts alleged in any version of the complaints filed in the Lawsuit (including those asserted in the First Amended Complaint and SAC), from the beginning of the Collective Period or Applicable Class Period (as defined in Paragraphs 1.49 and 1.47 [of the Agreement]), whichever is the earlier date, through June 20, 2018, including without limitation any claims under the FLSA and any applicable state, county, or local laws, statutes, regulations, ordinances, or wage orders for alleged unpaid overtime,

---

[6] "Released Parties" means Defendants and each of their parents, divisions, subsidiaries, affiliates, sibling entities, investors, predecessors, and successors, and each of their current and former owners, stockholders, directors, officers, members, fiduciaries, insurers, employees, attorneys, representatives, and agents.

premium, or minimum wages; failure to provide compliant meal and/or rest breaks; failure to pay meal and/or rest period compensation; failure to maintain required business records; failure to provide accurate or completed itemized wage statements; failure to compensate for all time worked; failure to properly calculate compensable time worked or the regular rate of pay; failure to pay or reimburse for all business expenses; waiting time penalties; failure to pay all wages due in a timely manner, including upon employment termination; misclassification of employees as exempt employees, independent contractors, or any other form of non-employee workers; and contributions to any 401(k) or other retirement or employee benefit plan based on any payments made by reason of this Agreement (collectively, the "**Released Claims**"). Notwithstanding the foregoing, nothing in this provision releases any claim that cannot be released as a matter of law, including that Participating Class Members who are not Participating Collective Members shall not release their claims under the FLSA. Except for Plaintiffs and Opt-In Plaintiffs as set forth in Paragraph 13.1 [of the Agreement], the Released Claims apply only to the employment of Participating Collective Members and Participating Class Members while they were employed in the Covered Positions during the longer of the Collective Period or Applicable Class Period.

Each Settlement Participant further acknowledges that the Released Claims are intended to include all Released Claims regardless of whether the Settlement Participant knows, is aware of, or suspects the claims or potential claims being released.

## 7.   What If You Want To File Your Own Lawsuit?

To facilitate the settlement process, the Court has issued an order enjoining all members of the Settlement Collective (including you) and the Settlement Class from initiating any "Duplicative Lawsuits" while the Settlement is being administered. Duplicative Lawsuits include all suits, actions, causes of action, claims, or demands in any federal, state, or local jurisdiction, other than the Lawsuit, asserting any of the Released Claims. This injunction will remain in effect through the Effective Date of the Settlement.

## 8.   Will Your Participation in the Settlement Affect Your Current Or Future Employment With the Bank?

No. Your decision whether to participate in the Settlement of the Lawsuit will in no way affect your current work or employment with the Bank or future work or employment with Wells Fargo. In compliance with its anti-retaliation policy, Wells Fargo will not take any adverse action against you as a result of your decision to participate in the Settlement or not.

## 9.   Who Are the Attorneys Representing Plaintiffs, the Settlement Collective, and the Settlement Class?

Plaintiffs, the Settlement Collective, and the Settlement Class are represented by the following attorneys acting as Class Counsel:

| | | |
|---|---|---|
| Shanon J. Carson | Roosevelt N. Nesmith, Esq. | Catherine E. Anderson, Esq. |
| Sarah Schalman-Bergen | **LAW OFFICE OF** | **GISKAN SOLOTAROFF** |
| Alexandra K. Piazza | **ROOSEVELT N.** | **& ANDERSON LLP** |
| **BERGER MONTAGE PC** | **NESMITH, LLC** | 217 Centre Street, 6th Floor |

1818 Market St., Suite 3600
Philadelphia, PA 19103
Tel: (215) 875-3033
apiazza@bm.net

363 Bloomfield Avenue, 2C
Montclair, NJ 07042
Tel: (973) 259-6990
roosevelt@nesmithlaw.com

New York, NY 10013
Tel: (212) 847-8315
canderson@gslawny.com

David R. Markham Esq.
**THE MARKHAM LAW FIRM**
750 B. Street, Suite 1950
San Diego, California 92101
Tel: (619) 399-3995
dmarkham@markham-law.com

Peggy Reali Esq.
**REALI LAW, APC**
1754 Thomas Ave.
San Diego, CA 92109
Tel: (619) 778-0229
preali@realilaw.com

Richard Quintilone, II, Esq
**QUINTILONE & ASSOCIATES**
22974 El Toro Road, Ste 100
Lake Forest, CA 92630-4961
Tel: (949) 458-9675
req@quintlaw.com

Russell S. Warren, Jr., Esq.
473 Sylvan Avenue
Englewood Cliffs, NJ 07632-1234
Tel: (201)503-0773
mail@RWarrenlaw.com

## 10.   How Will Class Counsel Be Paid?

Class Counsel will be paid from the Gross Settlement Amount. You do not have to pay them. The Agreement provides that Class Counsel will ask the Court to approve payment of attorneys' fees of up to thirty percent (30%) of the Maximum Settlement Amount ($10,500,000) plus out-of-pocket costs of up to $60,000. Under the terms of the Agreement, they will receive no other fees or costs beyond those approved by the Court. The amount of attorneys' fees and costs to be awarded will be determined by the Court at the Final Approval Hearing.

## 11.   Where Can You Get More Information?

If you have questions about the Notice of Settlement, including the enclosed Claim Form, or the Settlement, or if you did not receive the Notice of Settlement and Claim Form in the mail but believe that you are or may be a member of the Settlement Collective and/or Settlement Class, you should first review the Frequently Asked Questions section of the Settlement Website at www.wfovertimesettlement.com. You may also contact the Administrator (contact information listed herein), for more information or to request that a copy of the Notice of Settlement and Claim Form be sent to you in the mail. If you wish to communicate directly with Class Counsel, you may contact them (contact information listed above). You may also seek advice and guidance from your own private attorney at your own expense, if you so desire.

The Notice of Settlement is only a summary. In the event of a conflict or inconsistency between the Agreement and this Notice or the enclosed Claim Form, the terms of the Agreement will control. *For more detailed information, you may review the Agreement, which contains the complete terms of the Settlement and is available at www.wfovertimesettlement.com.*

**PLEASE DO NOT WRITE OR TELEPHONE THE COURT, WELLS FARGO, OR WELLS FARGO'S COUNSEL FOR INFORMATION ABOUT THE SETTLEMENT OR THE LAWSUIT.**

Dated: _____

# **EXHIBIT D**

==INSERT ADMINISTRATOR'S  LETTERHEAD==

[Name]
[Address]
[Address]

RE: Your Settlement  Payment  Check for *Merino, et al. v. Wells Fargo Bank, N.A., et al.*

On [==DATE==], the United  States District Court for the District of New Jersey granted final approval of the Settlement  of the above-named  lawsuit.

Your Settlement  Payment  check is now enclosed.  **Please note that your check will automatically expire and become void in 180 days on ==_____, 20__==**. Therefore,  please cash or deposit your check AS SOON AS POSSIBLE. As explained  to you in the Notice of Settlement  you previously  received,  **if you alter the language on the back of the enclosed check or fail to sign your name on the "Endorsed:" line of it, the check will become void and payment of it will be rejected.**

Please contact us at the contact  information  below with any questions,  or if you lose your Settlement  Payment  check and need to have it reissued.  Thank you.

==XXX==
[INSERT ADDRESS]
[INSERT TELEPHONE  NUMBER]
[INSERT EMAIL]

# **EXHIBIT E**

**[FRONT OF POSTCARD]**

[Name]
[Address]
[Address]

**[BACK OF POSTCARD]**

On DATE, we sent you a Settlement Payment check for the lawsuit titled *Merino, et al. v. Wells Fargo Bank, N.A., et al.* Our records indicate that you have not yet cashed or deposited that check.

**This notice is to remind you that the check will automatically expire on _____, 2019. Thus, please cash or deposit it AS SOON AS POSSIBLE.** Remember also that <u>if you alter the language on the back of the enclosed check or fail to sign your name on the "Endorsed:" line of it, the check will become void and payment of it will be rejected.</u>

If you are unable to locate your Settlement Payment check, need a replacement check, or have other questions, please contact us by using the contact information below. Thank you.

XXX
[INSERT ADDRESS]
[INSERT TELEPHONE NUMBER]
[INSERT EMAIL]

# **<u>EXHIBIT F</u>**

**[INSERT ADMINISTRATOR'S LETTERHEAD]**

[Name]
[Address]
[Address]

    RE: Your Voided Settlement Payment Check for *Merino, et al. v. Wells Fargo Bank, N.A., et al.*

On DATE, we sent you a Settlement Payment check in the above-named lawsuit. The deadline to cash or deposit your check was _____, 20__. Our records indicate that [insert whether check was not cashed/deposited or reason negotiation of check was rejected].

Your Settlement Payment check is on deposit at [INSERT]. You may claim your Settlement Payment by [INSERT HOW] on or before [DATE 180 DAYS AFTER ABOVE PASSED DEADLINE FOR NEGOTIATING CHECK].

If you have any questions, please contact the Administrator by using the contact information below. Thank you.

XXX
[INSERT ADDRESS]
[INSERT TELEPHONE NUMBER]
[INSERT EMAIL]

# EXHIBIT G

**[INSERT ADMINISTRATOR'S LETTERHEAD]**

[Name]
[Address]
[Address]

RE: Tax Forms for Your Settlement Payment in *Merino, et al. v. Wells Fargo Bank, N.A., et al.*

You were previously mailed a Settlement Payment check, and our records reflect that you cashed or deposited that check. Under the terms of the Settlement, 50% of your Settlement Payment constitutes wages subject to the withholding of all applicable local, state, and federal taxes. The other 50% constitutes non-wage income for interest, liquidated damages, and any statutory or civil penalties available under any applicable local, state, and federal laws. Accordingly, IRS Forms W-2 and 1099-MISC for your Settlement Payment are enclosed. You will need these Forms when you file your tax return for the period January 1, 2020 through December 31, 2020.

The enclosed 1099-MISC also relates to the award of attorneys' fees and costs to Class Counsel under the Settlement. Under the terms of the Agreement, a portion of these attorneys' fees and costs are attributable on a *pro rata* basis to each Settlement Participant who cashes a Settlement Payment check. Your *pro rata* share was determined by dividing the total of your Settlement Payment by the total amount paid to all Settlement Participants who cashed their settlement checks and multiplying that percentage share by the total amount of attorneys' fees and costs awarded by the Court to Class Counsel.

You should contact your tax advisor to discuss claiming an **<u>above-the-line</u> deduction** for your *pro rata* share of the attorneys' fees and costs from your overall tax obligations.

PLEASE NOTE, HOWEVER, THAT THIS LETTER DOES NOT CONSTITUTE TAX ADVICE AND YOU ARE EXPRESSLY INSTRUCTED TO OBTAIN YOUR OWN TAX ADVICE.

If you did not deposit or cash your Settlement Payment check and thus believe that you have received this letter and the enclosed tax forms in error, please contact the Administrator by using the contact information below. Thank you.

XXX
[INSERT ADDRESS]
[INSERT TELEPHONE NUMBER]
[INSERT EMAIL]