**LAW OFFICE OF**
**ROOSEVELT N. NESMITH, LLC**
Roosevelt N. Nesmith
363 Bloomfield Avenue, Suite 2C
Montclair, New Jersey 07042
Tel: (973) 259-6990
Fax: (866) 848-1368
Email: roosevelt@nesmithlaw.com

*Counsel for Plaintiffs*

[Additional Counsel listed on signature page]

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| MERINO, *et al.*, individually and on behalf of all others similarly situated, | Case No.: 2:16-cv-07840-ES-MAH |
| Plaintiffs, | |
| v. | |
| WELLS FARGO & COMPANY and WELLS FARGO BANK, N.A., | |
| Defendants. | |

## MEMORANDUM OF LAW IN SUPPORT OF
## PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY
## <u>APPROVAL OF SETTLEMENT AGREEMENT</u>

# TABLE OF CONTENTS

I.      INTRODUCTION ....................................................................................1

II.     PROCEDURAL BACKGROUND .........................................................5

III.    THE TERMS OF THE SETTLEMENT AGREEMENT .........................9

        A.    The Settlement Collective and Settlement Class ...................................9

        B.    Class Notice...................................................................................11

        C.    Distribution Of The Maximum Settlement Amount ...........................13

        D.    Release Of Claims ..........................................................................17

IV.     DISCUSSION......................................................................................18

        A.    Applicable Legal Standards ............................................................18

              1.    Standard for Approval of Rule 23 Class Action Settlements ...18

              2.    Standard for Approval of FLSA Collective Settlements ..........20

        B.    The Parties' Proposed Settlement Is Fair and Reasonable.................21

        C.    The Agreement Is The Product of Informed, Non-Collusive
              Negotiation ...................................................................................24

        D.    The Proposed Service Awards Should Be Preliminarily
              Approved ......................................................................................26

        E.    The Proposed Settlement Furthers the Purpose of the FLSA .............29

        F.    The Court Should Provisionally Certify The Settlement Class
              Under Fed. R. Civ. P. 23 ................................................................30

              1.    The Settlement Class Is Sufficiently Numerous......................31

              2.    The Settlement Class Shares Common Questions...................32

              3.    Plaintiffs' Claims Are Typical..............................................32

i

4.    The Adequacy Requirement is Satisfied...................................33

5.    Plaintiffs Satisfy The Predominance And Superiority
      Requirements of Rule 23(b)(3) .................................................33

G.    The Proposed Notices Are Fair And Reasonable...............................35

H.    The Proposed Implementation Schedule...........................................36

V.    CONCLUSION ........................................................................................40

## <u>TABLE OF AUTHORITIES</u>

CASES                                                                    PAGE(S)

*Baldwin-United Corp.*, 770 F.2d 328 (2d Cir. 1985) ........................................ 38, 39

*Bozak v. FedEx Ground Package Sys.*, No. 3:11-cv-00738-RNC, 2014 WL 3778211 (D. Conn. July 31, 2014) .......................................................................... 35

*Bredbenner v. Liberty Travel, Inc.*, No. 09-4587 (MF), 2011 WL 1344745 (D.N.J. Apr. 8, 2011) ........................................................................... 20, 26, 28

*Brook. Sav. Bank v. O'Neil*, 324 U.S. 697 (1945) .................................................. 29

*Brown v. TrueBlue, Inc.*, No. 1:10-cv-00514, 2013 WL 5408575 (M.D. Pa. Sept. 24, 2013) ................................................................................................................... 29

*Brumley v. Camin Cargo Control, Inc.*, No. 08-cv-1798, 2012 WL 1019337 (D.N.J. Mar. 26, 2012) ........................................................................................... 20

*Carlough v. Amchem Prods.*, 10 F.3d 189 (3d Cir. 1993) ...................................... 38

*Craig v. Rite Aid Corp.*, No. 4:08-cv-2317, 2013 WL 84928 (M.D. Pa. Jan. 7, 2013) ............................................................................................................. 24, 27-28

*Creed v. Benco Dental Supply Co.*, No. 3:12-CV-01571, 2013 WL 5276109 (M.D. Pa. Sept. 17, 2013) .................................................................................................. 28

*Cullen v. Whitman Med. Corp.*, 197 F.R.D. 136 (E.D. Pa. 2000) ................... 26-27

*Dombrowski v. Pfister*, 380 U.S. 479 (1965) ........................................................ 38

*Fry v. Hayt*, 198 F.R.D. 461 (E.D. Pa. 2000) ........................................... 31, 32, 33

*Gen. Tel. Co. of the Sw. v. Falcon*, 457 U.S. 147 (1982) ..................................... 32

*Girsh v. Jepson*, 521 F.2d 153 (3d Cir. 1975) ........................................................ 3

*In re Certainteed Fiber Cement Siding Litig.*, 303 F.R.D. 199 (E.D. Pa. 2014) ... 24

*In re Chickie's & Pete's Wage & Hour Litig.* , No. 12-6820, 2014 WL 911718 (E.D. Pa. Mar. 7, 2014) ..................................................................................... 20-21

*In re Constar Int'l Inc. Sec. Litig.*, 585 F.3d 774 (3d Cir. 2009) ........................... 31

*In re GMC Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768 (3d Cir. 1995) ...................................................................................................................... 19

*In re Janney Montgomery Scott L.L.C. Fin. Consultant Litig.*, No. 06-cv-3202, 2009 WL 2137224 (E.D. Pa. July 16, 2009) ........................................................ 28

*In re Linerboard Antitrust Litig.*, 292 F. Supp. 2d 631 (E.D. Pa. 2003) ......... 19, 20

*In re Rent-Way Secs. Litig.*, 305 F. Supp. 2d 491 (W.D. Pa. 2003) ...................... 25

*In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516 (3d Cir. 2004) ............. 30, 31

*In Re: Bank of Am. Wage & Hour Emp't Practices Litig.* , No. 2:10-MD-02138 (D. Kan. Dec. 18, 2013) ............................................................................ 23

*Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350 (11th Cir. 1982) .......... 20

*McLaughlin v. Richland Shoe Co.*, 486 U.S. 128 (1988) ...................................... 22

*Mullane v. Cent. Hanover Bank & Tr. Co.* , 339 U.S. 306 (1950) ........................ 35

*Neal ex rel. Kanter v. Casey*, 43 F.3d 48 (3d Cir. 1994) ...................................... 30

*Reed v. Gen. Motors Corp.*, 703 F.2d 170 (5th Cir. 1983) ................................... 25

*Sakalas v. Wilkes-Barre Hosp. Co.*, No. 3:11-CV-0546, 2014 WL 1871919 (M.D. Pa. May 8, 2014) ............................................................................. 28

*Sand v. Greenberg*, No. 08-cv-7840 (PAC), 2011 WL 7842602 (S.D.N.Y. Oct. 5, 2011) ....................................................................................... 27

*Schwartz v. Dall. Cowboys Football Club, Ltd.*, 157 F. Supp. 2d 561 (E.D. Pa. 2001) ................................................................................... 24-25

*Singleton v. First Student Mgmt. L.L.C.*, CIVIL ACTION NO. 13-1744 (JEI/JS), 2014 WL 3865853 (D.N.J. Aug. 6, 2014) ...................................... 20, 21

*Stewart v. Abraham*, 275 F.3d 220 (3d Cir. 2001) ............................................... 32

*Turner v. NFL* (*In re NFL Players' Concussion Injury Litig.*), 301 F.R.D. 191 (E.D. Pa. 2014) ................................................................................. 19

*UAW v. Gen. Motors Corp.*, No. 05 Civ. 73991, 2006 WL 891151 (E.D. Mich. Mar. 31, 2006) ............................................................................ 25

*Wade v. Werner Trucking Co.*, No. 2:10-CV-270, 2014 WL 2535226 (S.D. Ohio June 5, 2014) ............................................................................. 35

*Walsh v. Great Atl. & Pac. Tea Co.* , 726 F.2d 956 (3d Cir. 1983) ...................... 20

*Weiss v. York Hosp.*, 745 F.2d 786 (3d Cir. 1984) ............................................... 30

*Young v. Tri County Sec. Agency, Inc.*, No. 13-5971, 2014 WL 1806881 (E.D. Pa. May 7, 2014) ............................................................................. 30

*Young v. Tri Cty. Sec. Agency, Inc.*, No. 13-5971, 2014 WL 1806881 (E.D. Pa. May 7, 2014) ............................................................................. 27

## STATUTES AND OTHER AUTHORITIES

29 U.S.C. § 201, *et seq.* ("FLSA")................................................................. *passim*

Fed. R. Civ. P. 23 ........................................................................................ *passim*

## I.   <u>INTRODUCTION</u>

Plaintiffs respectfully submit this unopposed motion for preliminary approval of the settlement of their claims for unpaid overtime against Defendants Wells Fargo Bank, N.A. (the "Bank") and Wells Fargo & Company (together with the Bank, "Defendants" or "Wells Fargo"). This is a collective action alleging claims for unpaid overtime compensation under the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.* ("FLSA") in all states other than California[1] and also alleging class action claims for unpaid wages, including overtime pay, under the state laws of  New Jersey, Nevada, New York, Pennsylvania, North Carolina, Minnesota, and Connecticut. The Settlement Collective[2] (applicable to the FLSA claims) and Settlement Class (applicable to the above states) as defined in the Parties' Settlement Agreement and Release ("Settlement" or "Agreement") consist of non-exempt hourly-paid personal and business bankers who worked for the Bank during the

---

[1] Similar alleged claims brought on behalf of California Hourly Bankers were previously settled in another class action, *Ramirez, et. al. v. Wells Fargo Bank (Wells Fargo Coordinated Cases*, California Superior Court for Alameda County, Case No. JCCP-004821), which was finally approved by the Court on March 20, 2018.

[2] Terms capitalized in this Memorandum of Law have the same meanings as those used in the Agreement (cited herein as "S.A.") which is attached to the accompanying Motion as Exhibit 1. The Agreement is described in detail below and additional information is set forth in the accompanying Declaration of Shanon J. Carson ("Carson Decl.") filed in support of this Motion.

relevant time periods (hereinafter referred to as "Hourly Bankers").[3] Their job duties consisted principally of working with Bank customers to provide them with Wells Fargo's financial products and services such as deposit and savings accounts, loans, and credit cards to consumers and businesses.

The Parties engaged in an extensive alternative dispute resolution ("ADR") process, including mediation, and as a result, have agreed, subject to this Court's approval, to settle the claims of the Hourly Bankers for a Maximum Settlement Amount of Thirty-Five Million Dollars ($35,000,000.00). This amount provides a substantial monetary payment for the approximately 38,147 Hourly Bankers covered by the Settlement. Carson Decl. ¶ 30. The Net Settlement Amount will be fairly allocated among the Hourly Bankers according to a negotiated objective formula set forth in the Agreement and detailed below, and guarantees a significant minimum cash payment of *at least $300.00 for every member* of the Settlement Collective and for every member of the Settlement Class who does not opt out of the Settlement, plus the opportunity to obtain a greater amount by submitting a Claim Form.

---

[3] Specifically, the proposed Settlement Collective and the proposed Settlement Class include "the following hourly-paid positions at the Bank: Customer Sales and Service Representatives ("CSSRs"), Personal Banker 1s ("PB1s"), Personal Banker 2s ("PB2s"), Private/Premier Bankers ("PPBs"), Business Banking Specialists ("BBSs"), and Senior Business Banking Specialists ("SBBSs") (collectively defined in the Agreement as the "Covered Positions"). S. A. ¶ 1.13.

Plaintiffs allege that Wells Fargo's Hourly Bankers worked unpaid off-the-clock overtime as a result of the Bank's policies and that the Bank discouraged the Hourly Bankers from recording all overtime hours worked. Wells Fargo vigorously disputes Plaintiffs' claims, denies any liability, contends that the case is not appropriate for collective or class action treatment, and asserts that it has strong and viable defenses to Plaintiffs' claims and that it would prevail at trial on the merits of the alleged claims.

To avoid the expense and burden of further litigation, and the risks and uncertainty of the outcome of the procedural and substantive issues in the case, the Parties agreed, with the Court's permission, to participate in an ADR process including mediation overseen by an experienced wage and hour mediator, Jeff Ross, Esq. (www.jeffrossmediation.com). The ensuing two in-person mediation sessions and subsequent negotiation process culminated in the Agreement which is now presented to the Court by the Parties for its approval.

The proposed Settlement satisfies all settlement criteria under the FLSA and Rule 23 and should be preliminarily approved, as it falls squarely within the range of reasonableness and is a fair resolution of the asserted claims pursuant to *Girsh v. Jepson*, 521 F.2d 153 (3rd Cir. 1975) and its progeny. Accordingly, Plaintiffs respectfully move the Court to issue the accompanying proposed Preliminary Approval Order: (1) granting preliminary approval of the Parties' Settlement as fair,

reasonable and adequate pursuant to FED. R. CIV. P. 23(e), and as a fair and reasonable resolution of a *bona fide* dispute under the FLSA; (2) preliminarily certifying the Settlement Class pursuant to FED. R. CIV. P. 23(a) and (b)(3) for purposes of administering the proposed Settlement; (3) preliminarily certifying the Settlement Collective pursuant to 29 U.S.C. § 216(b) for purposes of administering the proposed Settlement; (4) provisionally appointing Plaintiffs Juan Carlos Merino, Jonathon Almonte, Joshua Thomson, Keenan Johnson, Abdullahi Hajisomo, Claudia Cervantes Chouza, and Richard Sklenka as class representatives for the seven Applicable State Subclasses within the Settlement Class; (5) provisionally appointing Berger Montague, PC, the Law Office of Roosevelt N. Nesmith, LLC, Giskan Solotaroff & Anderson LLP, The Markham Law Firm, Reali Law APC, Quintilone & Associates, and Russel S. Warren Jr., as Class Counsel; (6) appointing Rust Consulting as the Administrator to provide notice to the Settlement Collective and Settlement Class and administer the Settlement; (7) approving as to form and content the proposed Claim Form attached as Exhibit A to the Agreement, and the proposed Notices of Class and Collective Action Settlement attached as Exhibits B and C to the Agreement, and directing that notice of the Settlement be provided to the Settlement Class and Settlement Collective in accordance with the provisions of the Agreement; and (8) scheduling a Final Approval Hearing at which the Court can consider the fairness, reasonableness and adequacy of the Settlement after notices to

the proposed Settlement Collective and Settlement Class have been provided and the Claim Deadline has passed.

## II.   <u>PROCEDURAL BACKGROUND</u>

Plaintiffs' Counsel began their months-long investigation of Wells Fargo's alleged wage and hour violations in 2016. Carson Decl. ¶ 7. On October 25, 2016, Plaintiffs Juan Carlos Merino and Agustin Morel, Jr. filed the original Complaint in this litigation alleging collective action claims for unpaid overtime compensation under the FLSA and New Jersey law. *See* ECF No. 1; Carson Decl. ¶ 8.

On December 21, 2016, Defendants filed a motion to strike class allegations, *see* ECF No. 7, which the Court denied without prejudice (after full briefing on the motion) on September 6, 2017. *See* ECF No. 62; Carson Decl. ¶ 9. Meanwhile, on April 21, 2017, Plaintiffs' Counsel filed a motion for conditional certification of a collective under the FLSA. *See* ECF No. 18. Carson Decl. ¶ 10. Wells Fargo filed its opposition on May 22, 2017, *see* ECF No. 22, and Plaintiffs' Counsel filed a reply brief on May 30, 2017. *See* ECF No. 34. This Motion was later terminated by the Court on administrative grounds on December 5, 2017. *See* ECF No. 84.

In connection with Plaintiffs' motion for conditional certification, however, the Parties conducted certain discovery, and Plaintiffs Merino and Morel were deposed on May 9, 2017 and May 12, 2017, respectively. Carson Decl. ¶ 11. In

addition, Wells Fargo produced employee declarations and documents in support of its brief opposing the motion for conditional certification. *Id.*

On June 1, 2017, Wells Fargo requested permission to move for summary judgement as to all claims based on the "outside sales" exemption to the FLSA. *See* ECF No. 36. Plaintiffs opposed the request, and on June 21, 2017, the Court denied the request without prejudice to Wells Fargo's "right to renew the request upon completion of fact discovery." *See* ECF No. 45.

On September 1, 2017, the Court issued a Scheduling Order in this action, *see* ECF No. 59, and on November 30, 2017, Plaintiffs Juan Carlos Merino and Agustin Morel, Jr. filed a Motion to Amend their Complaint (the "Motion to Amend") to add Jonathan Almonte and Joshua Thomson as additional named Plaintiffs alleging class action claims for alleged violations of New York and Nevada state wage and hour and wage payment laws. *See* ECF No. 82. The Motion to Amend was later terminated by the Court on February 5, 2018 without prejudice on administrative grounds along with two other pending motions discussed below—Plaintiffs' motion for equitable tolling and Wells Fargo's motion to strike consent to join and compel arbitration—because of the Court's entry of an order requested by the Parties to stay the proceedings for purposes of ADR. *See* ECF No. 108; Carson Decl. ¶¶ 14-15.

In December 2017, Plaintiffs' Counsel and Wells Fargo exchanged extensive written discovery requests. Carson Decl. ¶ 16. Plaintiffs' Counsel thereafter engaged with Wells Fargo in a detailed meet-and-confer-process concerning discovery. *Id*. Plaintiffs' Counsel also prepared written discovery responses to Wells Fargo's written discovery requests. *Id*.

On December 7, 2017, Plaintiffs sought leave to file a motion for equitable tolling of the FLSA claims and Wells Fargo opposed the request. *See* ECF No. 86. On December 19, 2017, Wells Fargo opposed Plaintiffs' Motion for Leave to File the Amended Complaint, arguing the amendment was futile because Plaintiff Thomson purportedly signed an Arbitration Agreement with Wells Fargo and his claims should be sent to arbitration. *See* ECF No. 92. Plaintiffs filed their reply brief on December 26, 2017. *See* ECF No. 96; Carson Decl. ¶ 18. Wells Fargo also filed a Motion To Strike Consent To Join, Dismiss Opt-In Plaintiff Joshua Thomson, and Enforce Arbitration Agreement. *See* ECF No. 105.

The Parties thereafter met and conferred regarding ADR, and on January 18, 2018, the Court entered the Parties' Stipulation Regarding ADR and Stay of Litigation, pursuant to which the Parties agreed to engage in mediation. *See* ECF No. 107; Carson Decl. ¶ 19. Pursuant to the Parties' agreements, Wells Fargo produced to Plaintiffs' Counsel voluminous information and data regarding the Hourly Bankers for purposes of ADR; written policies in effect during the relevant

7

time period; and job descriptions for the positions at issue, among other information. *Id*.

Plaintiffs' Counsel collectively reviewed and analyzed the documents, data and information produced by Wells Fargo, and prepared for mediation. Carson Decl. ¶ 20. Plaintiffs' Counsel also conducted numerous interviews of current and former Wells Fargo employees, and prepared declarations and confidential statements in support of Plaintiffs' mediation efforts on behalf of the Hourly Bankers. *Id*.

In connection with the Parties' two ensuing mediation sessions, the Parties agreed to exchange additional ADR-related discovery so that they could engage in meaningful, good faith and informed settlement discussions. Carson Decl. ¶ 21. This included data produced by Wells Fargo to Plaintiffs' Counsel so that Plaintiffs' Counsel could conduct and produce a damages analysis for the mediation. Carson Decl. ¶ 22.

On May 1, 2018 and June 20, 2018, the Parties participated in two full day, in-person mediation sessions in Oakland, California, that were overseen by Jeff Ross, Esq., an experienced and well-known professional mediator for wage and hour disputes. *See* www.jeffrossmediation.com (detailing that Mr. Ross has mediated over 1,800 employment law disputes, including class and collective

actions). Carson Decl. ¶ 23. In preparation for the mediation sessions, the Parties prepared and exchanged damages analyses and mediation statements. *Id*.

As a result of the mediation sessions and continued arms' length negotiations between the Parties that were overseen at all times by the mediator, Mr. Ross, the Parties eventually agreed to settle this Lawsuit pursuant to the terms of the Agreement. Carson Decl. ¶ 24.

Concurrently with the filing of the Agreement with the Court and pursuant to Wells Fargo's stipulation agreeing to its filing for settlement purposes only, Plaintiffs filed a Second Amended Complaint ("SAC") adding Plaintiffs Joshua Thomson, Jonathan Almonte, Keenan Johnson, Abdullahi Hajisomo, Claudia Cervantes Chouza, Richard Sklenka, and Wilson Blount, and alleging additional state law claims. Carson Decl. ¶ 26.

## III.   THE TERMS OF THE SETTLEMENT AGREEMENT

### A.   The Settlement Collective and Settlement Class

The Agreement defines the Settlement Collective as:

all individuals who, while working for the Bank in a Covered Position, at any time from January 1, 2015 through December 31, 2017 (the "Collective Period") in any state other than California, recorded working more than 38 hours in at least one workweek during the Collective Period.

S.A. ¶ 1.49. Similarly, the Agreement defines the Settlement Class as:

all individuals in the Applicable State Subclasses. The "Applicable State Subclasses" mean all individuals who, while working for the

9

Bank in a Covered Position in one of the states set forth in (i) through (vii) below, recorded working more than 38 hours in at least one workweek during the following relevant time period for the Applicable State Subclass (collectively these time periods are referred to as the "Applicable Class Period"):

 (i) In Connecticut at any time from January 1, 2016 through December 31, 2017 (the "Connecticut Subclass");

 (ii) In Minnesota at any time from January 1, 2015 through December 31, 2017 (the "Minnesota Subclass");

 (iii) In Nevada at any time from January 1, 2016 through December 31, 2017 (the "Nevada Subclass");

 (iv) In New Jersey at any time from January 1, 2016 through December 31, 2017 (the "New Jersey Subclass");

 (v) In New York at any time from January 1, 2012 through December 31, 2017 (the "New York Subclass");

 (vi) In North Carolina at any time from January 1, 2016 through December 31, 2017 (the "North Carolina Subclass"); and

 (vii) In Pennsylvania at any time from January 1, 2015 through December 31, 2017 (the "Pennsylvania Subclass").

S.A. ¶ 1.47.

There are approximately 38,147 Settlement Collective Members and Settlement Class Members. Carson Decl. ¶ 30. While Wells Fargo asserts that if this case were to be litigated, class and collective action treatment under the FLSA or Rule 23 would be inappropriate, it agrees and has stipulated that, for settlement purposes only, the collective and class action may be certified. S.A. ¶¶ 15.1-15.2.

## B. <u>Class Notice</u>

Subject to the approval of the Court, each Settlement Collective Member and Class Member will be fully advised of the Settlement pursuant to the Notices of Settlement attached as Exhibits B and C to the Agreement. The Agreement provides what Plaintiffs believe is the fairest and most practicable procedure for notifying Hourly Bankers of the Settlement: by U.S. First Class Mail and, to the extent personal email addresses are available in Wells Fargo's HR system, by email. S.A. ¶¶ 16.1, 19.1. Specifically, within twenty-one (21) calendar days of the Preliminary Approval Date, Wells Fargo shall provide to the Administrator a list, in electronic format, containing, for each Plaintiff, Opt-In Plaintiff, Settlement Collective Member, and Settlement Class Member, the following information: (i) name; (ii) last known address; (iii) last known personal email address, to the extent maintained by Wells Fargo in its HR System; (iv) dates of employment in each Covered Position from the beginning of the earlier of the Collective Period or any Applicable Class Period through June 20, 2018; (v) the number of Qualifying Workweeks, which may be less than the number of weeks covered by an individual's dates of relevant employment because weeks with 38 or fewer hours of recorded work time, paid time

off, and leaves of absence are not included; and (vi) Social Security number (collectively, the "Collective/Class List"). S.A. ¶ 16.1.

Within 60 days after the Preliminary Approval Date or 30 days after receiving the Collective/Class List, whichever is earlier, the Administrator shall mail and email the Court-approved Notices, and, to Settlement Class Members and Settlement Collective Members who have not previously opted in to the litigation, a Claim Form. Agreement. S.A. ¶¶ 16.2(i), 19.1. To provide the best notice practicable, before mailing the Notices of Settlement, the Administrator will take reasonable efforts to identify current addresses for Settlement Collective Members and Settlement Class Members through the U.S. Post Office's National Change of Address Database. S.A. ¶ 16.2(ii). If any Mailing Packets are returned as undeliverable, the Administrator will use a credit reporting agency or publicly available databases and sources to identify alternative mailing addresses and re-mail the returned Mailing Packets. *Id.* ¶¶ 16.2(iii), 1.54. Settlement Collective Members and Settlement Class Members may submit their Claim Forms via mail, email, facsimile, or through the Settlement Website using a unique identifying number for each individual Settlement Collective Member or Settlement Class Member (to guard against fraud). *Id.* at ¶ 1.53, Ex. A.

The Administrator is also responsible for creating a Settlement Website, to be established at www.wfovertimesettlement.com, providing counsel for the Parties

with weekly status reports, and establishing an automated telephone system with a toll-free number to provide Settlement Collective Members and Settlement Class Members with information about the Settlement. S.A. ¶ 16.2 (enumerating Administrator duties). Of course, Settlement Class Members are also able to request exclusion from (opt-out) or object to the Settlement. *Id.* at ¶¶ 20-21.

### C.  Distribution Of The Maximum Settlement Amount

From the Maximum Settlement Amount, Wells Fargo shall pay the first One Hundred Thousand Dollars ($100,000.00) into a Qualified Settlement Fund ("QSF") established by the Administrator within fifteen (15) calendar days after the Preliminary Approval Date (in order to pay any invoices of the Administrator with respect to providing notice of the Settlement) and shall pay the remaining Thirty-Four Million, Nine Hundred Thousand Dollars ($34,900,000.00) into the QSF within fifteen (15) calendar days after the Effective Date, which is thirty-five (35) calendar days after the Final Approval Order if no appeal is filed within that period or, if an appeal is filed, ten (10) business days after the Final Approval Order has been affirmed and approved in its entirety with no further right of appeal or review. S.A. ¶¶ 1.15, 11.1. The Maximum Settlement Amount is exclusive of the employer's share of payroll taxes related to Settlement Payments, which shall be paid by the Bank *in addition to the Maximum Settlement Amount*. S.A. ¶ 5.1.

Subject to the approval of the Court, the Maximum Settlement Amount

includes amounts to cover:

(1) proposed service awards of $20,000.00 each to the original named Plaintiffs Juan Carlos Merino and Agustin Morel, Jr.; $10,000.00 each to the other seven Plaintiffs (Joshua Thomson, Jonathan Almonte, Keenan Johnson, Abdullahi Hajisomo, Claudia Cervantes Chouza, Richard Sklenka, and Wilson Blount); and $5,000.00 each to the current Opt-In Plaintiffs for their efforts in bringing and prosecuting this matter, and assisting Class Counsel throughout the mediation process;

(2) attorneys' fees in an amount not to exceed 30% of the Maximum Settlement Amount ($10,500,000.00), which will compensate Class Counsel for all work performed in the Lawsuit to date plus all work remaining to be performed;

(2) the reimbursement of out-of-pocket costs incurred by Class Counsel not to exceed $60,000.00;

(3) the Administrator's fees and costs not to exceed an amount that will be set forth in a declaration that Class Counsel will file with the motion for final approval and that, per the accompanying Declaration of Rust Consulting, (the proposed Administrator), are estimated at this time not to exceed $220,000; and

(5) a Reserve Amount of $100,000.00 to cover any correctible errors or omissions in determining the settlement amounts to be paid to Claimants or to individuals who were not, but later correctly assert that they should have been included in the Settlement Collective or Settlement Class.

S.A. ¶¶ 9.1, 10.1, 5.2, 16.2(xxi); *see also* Declaration of Eric Bishop, Senior Vice President, Rust Consulting, Inc.

After subtracting these amounts from the Maximum Settlement Amount, the balance of the funds ("Net Settlement Amount") shall be apportioned among all Settlement Collective Members and all "Participating Class Members" (defined as all Settlement Class Members except those who return a timely and valid Request

for Exclusion) using an objective formula. S.A. ¶ 5.3. Specifically:

a. First, all Settlement Collective Members and Participating Class Members shall automatically receive the gross amount of $300.00 (the "**Minimum Payment**"), without having to submit a Claim Form.

b. Second, Settlement Collective Members and Participating Class Members who submit a valid and timely Claim Form (as described in S.A. ¶ 19.4) as well as Plaintiffs and Opt-In Plaintiffs who previously filed a consent to join the Lawsuit shall be issued a Settlement Payment consisting of: (a) the Minimum Payment; plus (b) the "**Per Workweek Amount**" (as defined below) multiplied by the number of that Claimant's "**Qualifying Workweeks**" (as defined below), except that no Claimant shall receive more than the Minimum Payment unless he or she worked more than twelve Qualifying Workweeks (*i.e.*, recognizing the Minimum Payment amount).

c. The number of "**Qualifying Workweeks**" for each Claimant is the sum of the following: (a) two times the number of workweeks that a Claimant recorded working more than 38 hours in a Covered Position (i) in any state other than New York or California within the period of January 1, 2015 to October 1, 2016; and/or (ii) in the state of New York within the period of January 1, 2012 to October 1, 2016; plus (b) the number of workweeks that a Claimant recorded working more than 38 hours in a Covered Position in any state other than California from October 2, 2016 to June 20, 2018. Any Claimant who worked twelve or fewer Qualifying Workweeks shall receive only the Minimum Payment or Adjusted Minimum Payment (as defined below). (The reason that the earlier period is calculated at twice the later period is because Wells Fargo made changes on or around October 1, 2016 to its policies and processes that Plaintiffs alleged led to off-the-clock overtime.)

d. The "**Per Workweek Amount**" shall be determined by deducting from the Net Settlement Amount the total to be paid as Minimum Payments to all Plaintiffs, Opt-In Plaintiffs, Settlement Collective Members, and Participating Class Members to arrive at the "Residual Net Settlement Amount." The Administrator shall divide the Residual Net Settlement Amount by the sum of the total number of Qualifying Workweeks for all Claimants to obtain a *pro rata* per workweek amount. If the *pro rata*

per workweek amount is less than $57.21 per Qualifying Workweek, then the *pro rata* per workweek amount will be the Per Workweek Amount that the Administrator shall use in issuing Settlement Payments to the Claimants. If the *pro rata* per workweek amount is equal to or greater than $57.21, then $57.21 will be the Per Workweek Amount that the Administrator shall use in issuing Settlement Payments to the Claimants.

e.   If any of the Residual Net Settlement Amount remains after deduction of (i) the Minimum Payments to be made to Settlement Collective Members and Participating Class Members, and (ii) the Per Workweek Amount payments to be made to Claimants as described in Paragraph 6.4, that remaining Residual Net Settlement Amount shall be distributed evenly on a *per capita* basis among the Settlement Collective Members and Participating Class Members and paid as part of the Minimum Payments ("Adjustment Minimum Payments").

S.A. ¶¶ 1.30, 6.1-6.5. Settlement Payment determinations and inclusion in the Settlement Collective and/or Settlement Class are based on the Bank's personnel and payroll records. S.A. ¶ 7.1.

The Administrator shall mail all payments to Plaintiffs, Opt-In Plaintiffs, Settlement Collective Members, Participating Class Members, and Class Counsel as soon as practicable after the Effective Date and no later than 45 days after the Effective Date.  S.A. ¶ 11.2. Settlement Payment checks issued by the Settlement Administrator will be negotiable for 180 days from the date they are issued. S.A. ¶ 24.1. The amounts of any Settlement Payment checks that become void due to failure by an intended payee to negotiate them properly will remain in the QSF for an additional 180 days, during which the Administrator shall notify the intended payees by letter and email (if an email address is available) of how the payee can claim the

Settlement Payment in compliance with the Agreement. S.A. ¶ 24.2.

After expiration of the second 180-day period, if the Gross Settlement Amount is greater than or equal to Thirty Million Dollars ($30,000,000.00) (the "Minimum Settlement Amount"), then the Administrator shall remit to Wells Fargo the difference between the Maximum Settlement Amount and the Gross Settlement Amount resulting from uncashed checks and tax refunds on the uncashed checks. *Id.*. ¶ 24.5. If the Gross Settlement Amount is less than the Minimum Settlement Amount, then the Administrator will pay the difference between the two amounts to Legal Services of New Jersey and Legal Aid of North Carolina,[4] the charitable organizations agreed to by the Parties, subject to the Court's Final Approval Order. The Administrator will then remit to Wells Fargo the difference between the Maximum Settlement Amount and the Minimum Settlement Amount resulting from uncashed checks and tax refunds on the uncashed checks. *Id.*

### D.   Release Of Claims

In exchange for the benefits under the Agreement, each Settlement Participant shall discharge and release the Released Parties from any and all suits, actions, causes of action, claims, or demands for unpaid wages (including overtime wages),

---

[4] Legal Services of New Jersey (www.lsnj.org) is the state-wide umbrella program for five regional legal aid corporations in New Jersey and has a Workers Legal Rights and Farmworker Project. Legal Aid of North Carolina handles employment law matters statewide (www.legalaidnc.org/get-helpt/our-services).

damages, reimbursements, unpaid advances, civil and/or statutory penalties, liquidated damages, punitive damages, multiple damages, interests, attorneys' fees, litigation costs, restitution, and/or equitable relief in any way growing out of their work in a Covered Position for any and all claims that were or could have been asserted in the Lawsuit or that are based on or arise out of the facts alleged in any version of the complaints filed in the Lawsuit (including those asserted in the First Amended Complaint and SAC), from the beginning of the Collective Period or Applicable Class Period, whichever is the earlier date, through June 20, 2018. S.A. ¶ 12.1. Importantly, however, Participating Class Members who are not Participating Collective Members will not release their claims under the FLSA. *Id.* In addition, in exchange for the amounts approved by the Court as service awards, Plaintiffs and Opt-In Plaintiffs have agreed to a broader release of claims than the other Settlement Participants. S.A. ¶ 13.

## IV.   **DISCUSSION**

### A.   **Applicable Legal Standards**

#### 1.   **Standard for Approval of Rule 23 Class Action Settlements**

Review of a proposed class action settlement typically proceeds in two stages. At the first stage, the parties submit the proposed settlement to the court, which must make a preliminary fairness evaluation. If the settlement is preliminarily acceptable, the court then directs that notice be provided to all class members who would be

bound by the proposed settlement to afford them an opportunity to be heard on, object to, or opt out of the settlement. *See* FED. R. CIV. P. 23(c)(3), (e)(1), (e)(5). At the second stage, after class members are notified of the settlement, the court holds a fairness hearing. *See* FED. R. CIV. P. 23(e)(1)(B). If the court concludes that the settlement is "fair, reasonable and adequate," the settlement is given final approval. FED. R. CIV. P. 23(e)(2); *see In re Nat'l Football League Players' Concussion Injury Litig.*, 301 F.R.D. 191, 197 (E.D. Pa. 2014).

Plaintiffs now seek preliminary approval of the settlement pursuant to Rule 23(e). "The preliminary determination establishes an initial presumption of fairness." *In re Gen. Motors Corp. Pick-up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 784 (3d Cir. 1995). Under Rule 23, a settlement falls within the "range of possible approval" if there is a conceivable basis for presuming that the standard applied for final approval—fairness, adequacy, and reasonableness—will be satisfied. *Id.* In making a preliminary determination, the Court should look to whether there are any obvious deficiencies that would cast doubt on the proposed settlement's fairness. The Court should also consider whether the negotiations occurred at arm's length, whether there was significant investigation of plaintiffs' claims, and whether the proposed settlement provides unwarranted preferential treatment to certain class members. *In re Linerboard Antitrust Litigation*, 292 F. Supp. 2d 631, 638 (E.D. Pa. 2003).

In deciding preliminary approval, the process "is less formal than final approval" and may be conducted informally. *Singleton v. First Student Mgmt. LLC*, No. CIV.A. 13-1744 JEI, at 5 (D.N.J. Aug. 6, 2014). The definitive proceeding is the final approval hearing, at which the fairness, reasonableness and adequacy of the settlement will be assessed. *Walsh v. Great Atl. & Pac. Tea Co., Inc*., 726 F.2d 956, 965 (3d Cir. 1983); *see In re Linerboard Antitrust Litig*., 292 F. Supp. 2d at 638.

## 2. Standard for Approval of FLSA Collective Settlements

The standard for approval of an FLSA collective action adopted by district courts in the Third Circuit simply requires that the compromise reached is "fair and reasonable" and furthers the purpose of the FLSA. *See Brumley v. Camin Cargo Control, Inc.*, No. 08-cv-1798, 2012 WL 1019337 (D.N.J. Mar. 26, 2012) (citing *Lynn's Food Stores. Inc. v. U.S.*, 679 F.2d 1350, 1354 (11th Cir. 1982)); *see also Bredbenner v. Liberty Travel, Inc*., No. 09-cv-905, 2011 WL 1344745 (D.N.J. Apr. 8, 2011*); Singleton v. First Student Management LLC*, No. 13-cv-1744, 2014 WL 3865853, (D.N.J. Aug. 6, 2014); *In re Chickie's & Pete's Wage and Hour Litig.*, No. 12-6820, 2014 WL 911718, (E.D. Pa. Mar. 7, 2014).

Because the Third Circuit has not definitively set out FLSA specific criteria to use when assessing the fairness and reasonableness of a proposed settlement agreement, district courts have looked to the same factors used in evaluating the fairness of class action settlements under Rule 23. *See In re Chickie's & Pete's Wage*

*and Hour Litig*, 2014 WL 911718 (citing *Girsh v. Jepson*, 521 F.2d 153, 157–58 (3d Cir. 1975)). Once the settlement is found to be fair and reasonable, courts also assess whether the agreement furthers the purpose of the FLSA. *See Singleton v. First Student Management LLC*, No. 13-cv-1744, 2014 WL 3865853, at 8 (D.N.J. Aug. 6, 2014).

### B.    The Parties' Proposed Settlement Is Fair and Reasonable

Here, the proposed Agreement meets the standards for preliminary approval under Rule 23 as well as the standards for preliminary approval of an FLSA collective settlement. The Maximum Settlement Amount of $35,000,000.00 will provide significant monetary relief to Settlement Participants without subjecting them to the risks and delay of further litigation. This amount was carefully negotiated on an informed basis based on a substantial investigation by Plaintiffs' Counsel, who collectively have decades of experience in class action litigation, following the review and analysis of documents produced by Plaintiffs, Opt-In Plaintiffs, and Wells Fargo in preparation for mediation. *See* Declarations of Class Counsel.

During the course of their extensive settlement negotiations, the Parties exchanged data regarding the Settlement Collective and Settlement Class, and the Maximum Settlement Amount represents a highly negotiated compromise overseen by the mediator based on the Parties' respective positions. In addition, it takes into account numerous defenses raised by Wells Fargo during the mediation process,

including without limitation, that arbitration agreements applicable to a percentage of the Settlement Collective and Settlement Class could preclude them entirely from proceeding in this case.[5]

Moreover, even if Plaintiffs prevailed on liability, if Plaintiffs could not demonstrate that the violation was a willful or knowing violation, Plaintiffs would only be able to recover under a two-year FLSA statute of limitations. *See* 29 U.S.C. § 255(a); *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133 (1988).

By contrast, if this Settlement is approved, all Settlement Collective Members and Settlement Class Members will promptly receive a meaningful Settlement Payment based on Qualifying Workweeks worked during the Collective Period and/or Applicable Class Period. Further, Participating Class Members will only release their claims under the FLSA if they become Participating Collective Members by affirmatively submitting a Claim Form. S.A. ¶¶ 1.31; 12.1.

---

[5] The Supreme Court's recent decision in *Epic Systems v. Lewis*, No. 16-285 (U.S. 2018), held that the Federal Arbitration Act requires courts to enforce arbitration agreements between employers and employees according to their terms, even when they prohibit class procedures. In so holding, the court refused to read the National Labor Relations Act to prohibit arbitration agreements requiring individualized arbitration as an impermissible restriction on employees' rights under the NLRA. Thus, Wells Fargo has argued and would cite case law that these arbitration agreements would preclude numerous Settlement Collective Members and Settlement Class Members from proceeding in this case. Consequently, if this Settlement does not become effective, it is possible that these Settlement Collective Members and Settlement Class Members might receive nothing.

This is an excellent result for the Settlement Participants. First, there is risk that Plaintiffs would not succeed in obtaining a certified collective or class or maintaining one through trial. Second, a trial on the merits would involve significant risks for Plaintiffs as to both liability and damages. While Plaintiffs believe the case is very strong, it would require significant factual development and any verdict at trial (which could potentially take additional years to achieve) could be further delayed based on appeals by Wells Fargo. Ultimately, the Settlement that the Parties reached reflects what Plaintiffs' Counsel believes to be a fair and reasonable compromise settlement of disputed claims that takes into account the litigation risks.

This Settlement involves approximately 38,147 individuals. Similar wage and hour lawsuits were settled and approved at comparable settlement amounts. *See Wells Fargo Bank Settlement (CA Superior Court, Alameda County), No. JCCP4821 (*gross settlement of $27.5 million for a putative class of approximately 28,463 employees); *see also In Re: Bank of America Wage and Hour Employment Practices Litigation*, No. 2:10-MD-02138, (D. Kan. Dec. 18, 2013) (gross settlement of $73 million dollars for a putative class of 185,000 retail banking employees); *Blum et al v. Merrill Lynch & Co et al*, No. 15-cv-01636, (S.D.N.Y. May 6, 2016) (gross settlement of $14 million for 9,500 financial advisors); *Hightower, et al v. JPMorgan Chase Bank NA et al.*, No. 2:11-cv-01802 (C. D. Cal. Oct. 9, 2014) (gross

settlement of $12 million for class of 145,000 current and former tellers, bankers, assistant branch manager trainees and sales specialists in twelve states).

Where proceeding with litigation would require a considerable amount of time to yield a benefit to class members, it is an indication that a settlement providing immediate benefits is fair, reasonable, and adequate. *See Craig v. Rite Aid Corp.*, No. 4:08-cv-2317, 2013 WL 84928, (M.D. Pa. Jan. 7, 2013), *appeal dismissed* (3d Cir. Feb. 20, 2013) (finding preliminary approval of settlement appropriate where "[n]ot only would continued litigation of these cases result in a massive expenditure of Class Counsel's resources, it would likewise place a substantial drain on judicial resources.").[6] In the instant case, the complexity and expense of proceeding with litigation that began nearly three years ago is outweighed by the efficiency and financial relief presented by the Agreement.

### C.   The Agreement Is The Product of Informed, Non-Collusive Negotiation

Whether a settlement arises from arm's-length negotiations is a key factor in deciding whether to grant preliminary approval. *Schwartz v. Dallas Cowboys*

---

[6] *See also In re Certainteed Fiber Cement Siding Litig.*, 303 F.R.D. 199, 216 (E.D. Pa. 2014) ("[I]f the parties were to continue to litigate this case, further proceedings would be complex, expensive and lengthy, with contested issues of law and fact. … That a settlement would eliminate delay and expenses and provide immediate benefit to the class militates in favor of approval."); *Deitz v. Budget Renovations & Roofing, Inc.*, No. 4:12–cv–0718, 2013 WL 2338496, at *5 (M.D. Pa. May 29, 2013) ("The Court sees no reason to needlessly expend judicial resources on a matter that neither party has any interest in continuing to litigate.").

*Football Club, Ltd.*, 157 F. Supp. 2d 561, 570 (E.D. Pa. 2001) (quoting MANUAL FOR COMPLEX LITIGATION (SECOND) §30.44). Courts are to give considerable weight to the experience of the attorneys who litigated the case and participated in settlement negotiations. *See, e.g.*, *Reed v. Gen. Motors Corp.*, 703 F.2d 170, 175 (5th Cir. 1983) ("[T]he value of the assessment of able counsel negotiation at arm's-length cannot be gainsaid. Lawyers know their strengths and they know where the bones are buried"); *In re Rent-Way Sec. Litig.*, 305 F. Supp. 2d 491, 509 (W.D. Pa. 2003) ("settlement negotiations took place at arm's-length between highly experience[d] and competent counsel. Their assessment of the settlement as fair and reasonable is entitled to considerable weight"); *UAW v. Gen. Motors Corp.*, No. 05 Civ. 73991, 2006 WL 891151, at 18 (E.D. Mich. Mar. 31, 2006) (holding in an FLSA case, that "the endorsement of the parties' counsel is entitled to significant weight.").

Here, the Settlement is the result of hotly contested litigation, relevant factual discovery, and serious arm's-length negotiations overseen by a highly respected mediator. The proposed Settlement was reached only after (1) motion practice; (2) the exchange of substantial documents and records through both formal and informal ADR-related discovery; (3) multiple pre-mediation conference calls; (4) preparation and exchange of mediation statements; (5) two full-day, in-person mediation sessions in Oakland, California; and (6) extensive additional arm's-length negotiations between counsel for the Parties following the mediation, that were also

overseen by the mediator. Carson Decl. ¶¶ 5-10; *see Bredbenner v. Liberty Travel*, 2011 WL 1344745, at 10 (D.N.J. April 8, 2011) (concluding that "[p]articipation of an independent mediator in settlement negotiations virtually insures that the negotiations were conducted at arm's length and without collusion between the parties").

Furthermore, Plaintiffs' Counsel consist of experienced and respected class action litigators. *See* Declarations of Plaintiffs' Counsel. Based on Plaintiffs' Counsel's knowledge and expertise in this area of law, they believe this Settlement is fair and reasonable and will provide a substantial benefit to the Settlement Participants. In summary, the proposed Agreement is the product of careful factual and legal research and intensive arm's-length negotiations by the Parties.

### D.   The Proposed Service Awards Should Be Preliminarily Approved

The Agreement provides for service awards in the amount of $20,000 each to the original named Plaintiffs Juan Carlos Merino and Agustin Morel, Jr.; $10,000 each to Plaintiffs Joshua Thomson, Keenan Johnson, Abdullahi Hajisomo, Claudia Cervantes Chouza, Richard Sklenka, and Wilson Blount; and $5,000 each to Opt-In Plaintiffs Kayla Burget-Ruff, David Davis, Heather Davis, Aaron Diaz, Kathleen Jones, and Jeffrey Trawinski. S.A. ¶ 9.1. "[C]ourts routinely approve incentive awards to compensate named plaintiffs for services they provided and the risks they incurred during the course of the class action litigation." *Cullen v. Whitman Med.*

*Corp.*, 197 F.R.D. 136, 145 (E.D. Pa. 2000) (citation omitted). It is appropriate to compensate plaintiffs with service awards where they have actively assisted plaintiffs' counsel in their prosecution of the litigation for the benefit of a class. *Young v. Tri Cnty. Sec. Agency, Inc.*, 13-cv-5971, 2014 WL 1806881, (E.D. Pa. May 7, 2014) (approving incentive award for named representative in action alleging violations of the FLSA).

Here, the proposed service awards are amply justified. These Plaintiffs took the significant risk of coming forward to represent the interests of their fellow employees. They worked with Plaintiffs' Counsel, providing background information about their employment and the allegations in the Lawsuit. They risked their reputation in the community and in their field of employment in order to participate in this case on behalf of their co-workers. Carson Decl. ¶ 33. Both original named Plaintiffs attended several meetings with their counsel and were deposed. The additional Plaintiffs and Opt-In Plaintiffs also provided significant assistance to Plaintiffs' Counsel throughout the mediation process, including by preparing and submitting statements. *See Sand v. Greenberg*, No. 08-cv-7840, 2011 WL 7842602, (S.D.N.Y. Oct. 6, 2011) (approving service awards in FLSA case as reasonable and finding that plaintiffs "took risks by putting their names on this lawsuit," including the risk of "blacklisting and other more subtle forms of retaliation"); *Craig*, No. 4:08-cv-2317, 2013 WL 84928 at 13 ("[N]amed plaintiffs

in FLSA or state wage and hour claims are often retaliated against in the industry as a result of their obvious participation in such litigation.").

The requested service awards are also in line with those approved in wage and hour collective and class actions in the Third Circuit. *See, e.g.*, *Sakalas v. Wilkes Barre Hosp. Co.*, No. 3:11-cv-0546, 2014 WL 1871919, at 5 (M.D. Pa. May 8, 2014) ("Court believes that the proposed total award of $7,500.00 (or 1.57%) of a $475,000.00 settlement fund is well-deserved and not out of proportion to the level of [named plaintiff's] cooperation. Such an award would not significantly reduce compensation for the other class members, nor is it out of the mainstream for class action service awards in the Third Circuit."); *Bredbenner*, No. 09-cv-905, 2011 WL 1344745, at 22-24 (approving service awards of $10,000 to each of eight named plaintiffs in wage and hour case, and citing a 2006 empirical study that found average award per class representative to be $16,000); *In re Janney Montgomery Scott LLC Fin. Consultant Litig.*, No. 06-cv-3202, 2009 WL 2137224, at 12 (E.D. Pa. July 16, 2009) (approving $20,000.00 enhancement awards for each of three named plaintiffs in wage and hour settlement); *Creed v. Benco Dental Supply Co.*, No. 3:12-CV-01571, 2013 WL 5276109, at 7 (M.D. Pa. Sept. 17, 2013) (approving service award of $15,000"). For these reasons, the service awards should be preliminarily approved as fair and reasonable.

### E.  The Proposed Settlement Furthers the Purpose of the FLSA

In addition, the Agreement contains no provisions that are contrary to the purposes of the FLSA or frustrate the implementation of the FLSA in the workplace. *See, e.g., Brown*, 2013 WL 5408575, at 3 (finding settlement agreement frustrated the implementation of the FLSA when it required the plaintiffs to keep the terms of the settlement confidential or risk forfeiting their awards). Indeed, the Settlement furthers the purposes of the FLSA by providing Settlement Participants with a substantial recovery for their unpaid overtime claims on which they may have otherwise been unable to recover. *See* 29 U.S.C. § 202 (congressional finding and declaration of policy); *Brooklyn Sav. Bank v. O'Neil*, 324 U.S. 697, 706 (1945) ("The statute was a recognition of the fact that due to the unequal bargaining power as between employer and employee, certain segments of the population required federal compulsory legislation to prevent private contracts on their part which endangered national health and efficiency...."). Because the Settlement facilitates the purposes of the FLSA, it should be approved as reasonable.

### F.  The Court Should Provisionally Certify The Settlement Class Under Fed. R. Civ. P. 23[7]

To obtain class certification, a party must show that all four prerequisites of Rule 23(a) are met and that the case qualifies as at least one of the matters identified in Rule 23(b). *See Baby Neal ex rel. Kanter v. Casey*, 43 F.3d 48, 55 (3d Cir. 1994) (citing *Wetzel v. Liberty Mut. Ins. Co.*, 508 F.2d 239 (3d Cir. 1975)). The Rule 23(a) requirements are met when:

> (1) the class is so numerous that joinder of all members is impracticable;
> (2) there are questions of law or fact common to the class;
> (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
> (4) the representative parties will fairly and adequately protect the interests of the class.

FED. R. CIV. P. 23(a); *Weiss v. York Hosp.*, 745 F.2d 786, 807 (3d Cir. 1984), *cert. denied*, 470 U.S. 1060 (1985); *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 527 (3d Cir. 2004).

Rule 23(b)(3) permits the court to certify a class where "questions of law or fact common to class members predominate over any questions affecting only

---

[7] For a collective action to proceed under section 216(b) of FLSA, two requirements must be met: (1) all members of the collective action must affirmatively consent to join; and (2) all members of the collective action must be "similarly situated." *See Young*, 2014 WL 1806881, at *2. Because the requirements of Rule 23 are more stringent than Section 216(b) of the FLSA, Plaintiffs have also met the criterion for certification of the FLSA collective, for settlement purposes only, under 29 U.S.C. § 216(b), for the same reasons as set forth in this section.

individual members" and "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." *Id*. These dual requirements are commonly referred to as "predominance" and "superiority," respectively. *See In re Constar Int'l, Inc. Sec. Litig*., 585 F.3d 774, 780 (3d Cir. 2009).

Pursuant to the terms of the Agreement, Wells Fargo has stipulated and agreed, for settlement purposes only, that the requisites for establishing class certification (under the more lenient standard for a settlement class) pursuant to FED. R. CIV. P. 23(a) and (b)(3) have been met with respect to the Settlement Class Members. S.A. ¶¶ 15.1-15.3.

### 1.    The Settlement Class Is Sufficiently Numerous

To meet the numerosity requirement of Rule 23(a)(1), "the class size only need be large enough that it makes joinder impracticable." *Fry*, 198 F.R.D. at 467. Here, the proposed Settlement Class easily meets the numerosity requirement because it includes approximately 8,946 members, including approximately (based on data produced by Wells Fargo): 1,614 in Pennsylvania, 1,107 in New York, 1,769 in North Carolina, 1,500 in New Jersey, 1,038 in Nevada, 1,726 in Minnesota, and 261  in Connecticut.[8] Carson Decl. ¶ 30.

---

[8] The sum of the individual state counts exceeds the overall count because some individuals are members of more than one of the Applicable State Subclasses. Carson Decl. ¶ 30.

31

### 2.     The Settlement Class Shares Common Questions

The commonality requirement of Rule 23(a)(2) is satisfied if the named plaintiffs share at least one question of fact or law with the grievances of the prospective class. *See Stewart v. Abraham*, 275 F.3d 220, 227 (3d Cir. 2001). Here, Plaintiffs' have alleged that their claims and the Settlement Class Members' claims arise from Wells Fargo's common employment policies and practices at issue, applicable to the Covered Positions. The central issue posed by this litigation is whether the Settlement Class Members were properly paid overtime under applicable state and federal wage and hour laws. The common questions of law and fact raised by this issue predominate for purposes of this Settlement and apply uniformly to all members of the proposed Settlement Class.

### 3.     Plaintiffs' Claims Are Typical

The typicality requirement of Rule 23(a)(3) is satisfied for purposes of preliminarily approving the settlement because Plaintiffs' claims are reasonably coextensive with those of the Settlement Class, and because Plaintiffs possess the same interest and claim to have suffered the same injury as the absent class members, namely, unpaid overtime compensation. *See Fry*, 198 F.R.D. at 468; *Gen. Tel. Co. of S.W. v. Falcon*, 457 U.S. 147, 156 (1982).

### 4.  The Adequacy Requirement is Satisfied

To meet the adequacy of representation requirement of Rule 23(a)(4), a named plaintiff must show: 1) that he/she has the ability and the incentive to represent the claims of the class vigorously; 2) that he or she has obtained adequate counsel; and 3) that there is no conflict between the individual's claims and those asserted on behalf of the class. *Fry*, 198 F.R.D. at 469. These requirements are met here for settlement purposes because Plaintiffs have the same interests in recovering on their claims for unpaid wages (including overtime wages) as the Settlement Class. There is no conflict between Plaintiffs and the Settlement Class for purposes of this Settlement, and Plaintiffs' claims are in line with the claims of the Settlement Class. Moreover, Plaintiffs have and will continue to aggressively and competently assert the interests of the Settlement Class, and Plaintiffs retained counsel who are skilled and experienced in wage and hour class action litigation. *See* Declarations of Plaintiffs' Counsel.

### 5.  Plaintiffs Satisfy The Predominance And Superiority Requirements of Rule 23(b)(3)

As set forth above, common questions of law and fact predominate for purposes of the Settlement where Plaintiffs allege that Wells Fargo's policies systematically denied Settlement Class Members overtime wages. In addition, the Agreement renders this class action superior to other potential avenues of recovery for the Settlement Class. This case presents a paradigmatic dispute resolution that

effectuates the fundamental goals of Rule 23: (1) to promote judicial economy through the efficient resolution of multiple claims in a single action; and (2) to provide persons with smaller claims, who would otherwise be economically precluded from doing so, the opportunity to assert their rights. Wright, Miller & Kane, Federal Practice & Procedure: Civil 2d § 1754. At the same time, the Settlement fully preserves the due process rights of each individual plaintiff seeking damages.

Accordingly, Plaintiffs respectfully request that the Court (a) provisionally certify the Settlement Class for settlement purposes only; (b) provisionally appoint, for settlement purposes only, Plaintiff Richard Slenka as the class representative for the Connecticut Subclass, Plaintiff Abdullahi Hajisomo as the class representative for the Minnesota Subclass, Plaintiff Joshua Thomson as the class representative for the Nevada Subclass, Plaintiffs Juan Carlos Merino and Jonathan Almonte as the class representatives for the New Jersey Subclass, Plaintiff Jonathan Almonte as the class representative for the New York Subclass, Plaintiff Claudia Cervantes Chouza as the class representative for the North Carolina Subclass, and Plaintiff Keenan Johnson as the class representative for the Pennsylvania Subclass; and (c) provisionally appoint Plaintiffs' Counsel as Class Counsel.

### G.   The Proposed Notices Are Fair And Reasonable

The United States Supreme Court has held that notice of a class action settlement must be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950); s*ee also Wade v. Werner Trucking Co.*, No. 10 Civ. 270, 2014 WL 2535226, at 1 (S.D. Ohio June 5, 2014) (approving "Settlement Notice and Option Form proposed by the Parties" as "fully and accurately inform[ing] the FLSA Collective Class Members of all material elements of the Litigation and the Agreement"); *Bozak v. FedEx Ground Package Sys., Inc.*, No. 11 Civ. 738, 2014 WL 3778211, at 3 (D. Conn. July 31, 2014) (approving FLSA notice that provides "notice to the Eligible Settlement Class Members of the terms of the Settlement and the options facing the Settlement Class").

Here, the proposed Notices of Settlement and manner of distribution negotiated and agreed upon by the Parties give "the best notice practicable," as required under Rule 23(c)(2)(B). All Settlement Class Members and Settlement Collective Members will be identified, and the Notices of Settlement will be mailed directly to the last known address of each member (and those addresses that the Administrator is able to find using reasonable investigatory methods). S.A. ¶¶ 16.1-16.2; 19.2. The Notices of Settlement will also be emailed to Settlement Class

Members and Settlement Collective Members whose email addresses are known. S.A. ¶ 16.2(i).

The proposed Notices of Settlement are clear and straightforward, and provide information on the meaning and nature of the terms and provisions of the Agreement; the potential monetary awards that the Settlement will provide to Participating Class Members and Settlement Collective Members, including the allocation formula; the scope of the release; the request for attorneys' fees and costs; and the procedures and deadlines for making a claim for a Per Workweek Amount settlement payment, opting out of the Settlement, or submitting objections. *See* S.A., Exhibits B and C.

Accordingly, the Notices of Settlement comply with the standards of fairness, completeness, and neutrality required of a settlement class or collective notice disseminated under authority of the Court and should be approved.

## H.   **The Proposed Implementation Schedule**

The Parties' accompanying proposed Preliminary Approval Order contains a proposed schedule for implementation of the Settlement as follows:

| The Bank Provides Administrator the Collective/Class List | Within twenty-one (21) calendar days after the Court's Preliminary Approval Order |
|---|---|
| Settlement Administrator establishes Settlement Website | Within ten (10) business days after entry of the Preliminary Approval Order |
| Mailing of Class Notice and Opt-In Consent Form | Within sixty (60) days after entry of the Preliminary Approval Order or within thirty (30) days of receiving the |

| | Collective/Class List, whichever is earlier |
|---|---|
| Deadline for Settlement Collective Members and Settlement Class Members to return Claim Form, objections or Requests for Exclusion ("Claim Deadline") | The later of sixty (60) days after the Administrator initially mails the applicable Notice of Settlement and Claim Form, or thirty (30) days after the date of re-mailing in the event that the initial mailing is returned as undeliverable |
| Plaintiffs' Motion for Attorneys' Fees and Costs, and Service Awards | Fourteen (14) days prior to the deadline for submitting objections to the Settlement |
| Plaintiffs' Motion for Final Approval of Settlement | Twenty-one (21) days prior to the Final Approval Hearing |
| Final Approval Hearing | Date: _____, 2019<br><br>(At the Court's convenience, approximately 180 days after the Court's Preliminary Approval Order) |

## I.   <u>The Court Should Issue An Injunction Prohibiting Duplicative Actions</u>

Concurrent with preliminary approval of the Settlement, the Parties' proposed

Preliminary Approval Order requests that the Court issue an injunction pursuant to

its authority under the All Writs Act, 28 U.S.C. § 1651, prohibiting the Settlement

Collective Members and Settlement Class Members from initiating any separate

lawsuits, actions, causes of action, claims, or demands in any federal, state, or local

jurisdiction with respect to the Released Claims.[9] Such an injunction is within the sound discretion of the district court and is necessary to ensure the finality of the Settlement and to prevent impairment of the Court's authority to approve a complex federal collective and multi-state class action settlement like this one. *Carlough,* 10 F.3d at 203-204 (citing *In re Baldwin-United Corp.*, 770 F.2d 328, 337-38 (2d Cir. 1985)).

The All Writs Act permits federal courts to "issue all writs necessary or appropriate in aid of their respective jurisdictions." 28 U.S.C. § 1651. This provision has been interpreted to allow federal courts to issue injunctions to preserve "the federal court's jurisdiction or authority over an ongoing matter." *Baldwin-United*, 770 F.2d at 335 (citations omitted). It is well established that the All Writs Act empowers federal courts to enjoin proceedings in other jurisdictions that may disrupt the settlement of the case before them.[10] *See, e.g., Carlough*, 10 F.3d at 203

---

[9] Upon preliminary approval of the Settlement, the Court will have established personal jurisdiction over the Settlement Collective Members and Settlement Class Members by approving the dissemination of notice and establishing a claims procedure and an opt-out procedure and Claim Period, thus ensuring that an injunction will comport with the requirements of Due Process. *See Carlough v. Amchem Prods., Inc.*, 10 F.3d 189, 194, 198, 201 (3d Cir. 1993) (finding the district court had jurisdiction over absent class members who sought to bring claims in a separate state court action once the court issued its October order approving notice to be disseminated to the class, which notice also commenced the opt-out period).

[10] This type of injunction does not run afoul of the Anti-Injunction Act, 28 U.S.C. § 2283.  That statute prohibits federal courts from granting injunctions to stay state court proceedings "except as expressly authorized by Act of Congress, or where

("impending and finalized settlements in federal actions [] justify[] 'necessary in aid of jurisdiction' injunctions of duplicative state actions"); *Baldwin-United*, 770 F.2d at 337 ("The success of any federal settlement was dependent on the parties' ability to agree to the release of any and all related civil claims the plaintiffs had against the settling defendants based on the same facts. If states or others could derivatively assert the same claims on behalf of the same class or members of it, there could be no certaint[]y about the finality of any federal settlement.").

Here, the Parties have negotiated a global Settlement with all Hourly Bankers outside of California, and they intend that this Settlement will conclude all litigation related to the Released Claims under federal and state law, with the exception of the claims of those participating in *Miller, et al. v. Wells Fargo Bank, N.A.*, No. 2:16-cv-05597-JHS (E.D. Pa.), who are excluded from this Settlement. Initiation of duplicative lawsuits would disrupt the finality of the Settlement and negate the Court's efforts to assist the Parties in resolving this Lawsuit. Under these circumstances, an injunction through the Effective Date of this Settlement or, for any individual Settlement Class Member, through the date he or she files a timely

---

necessary in aid of its jurisdiction, or to protect or effectuate its judgments." *Id.* The Anti-Injunction Act only applies to stays of ongoing state proceedings; injunctions that prohibit the initiation of state actions are permissible. *See Dombrowski v. Pfister*, 380 U.S. 479, 485 n.2 (1965) ("[The Anti-Injunction Act] and its predecessors do not preclude injunctions against the institution of state court proceedings, but only bar stays of suits already instituted.") (citations omitted).

and valid Request for Exclusion, in accordance with the provisions of the Settlement, is warranted.

## V.   <u>CONCLUSION</u>

Based upon the foregoing reasons, Plaintiffs respectfully request that the Court grant this Unopposed Motion for Preliminary Approval of Settlement Agreement and enter the accompanying proposed Preliminary Approval Order.

Dated: February 28, 2019                    Respectfully submitted,

s/Roosevelt N. Nesmith
Roosevelt N. Nesmith
**LAW OFFICE OF
ROOSEVELT N. NESMITH, LLC**
363 Bloomfield Avenue, Suite 2C
Montclair, New Jersey 07042
Tel: (973) 259-6990
Fax: (866) 848-1368
roosevelt@nesmithlaw.com

Shanon J. Carson*
Sarah R. Schalman-Bergen*
Alexandra K. Piazza (NJ 010922013)
**BERGER MONTAGUE P.C.**
1818 Market Street, Suite 3600
Philadelphia, PA 19103
Telephone: (215) 875-3000
Facsimile: (215) 875-4604
Email: scarson@bm.net
        sschalman-bergen@bm.net
        apiazza@bm.net

Catherine E. Anderson
**GISKAN SOLOTAROFF &
ANDERSON LLP**
217 Centre Street, 6th Floor

New York, NY 10013
Tel: (212) 847-8315
Fax: (646) 520-3236
Email: canderson@gslawny.com

David R. Markham*
**THE MARKHAM LAW FIRM**
750 B. Street, Suite 1950
San Diego, California 92101
Email: dmarkham@markham-law.com

Peggy Reali*
**REALI LAW, APC**
1754 Thomas Ave.
San Diego, CA 92109
Email: preali@realilaw.com

Richard Quintilone, II*
**QUINTILONE & ASSOCIATES**
22974 El Toro Road, Suite 100
Lake Forest, CA 92630-4961
Email: req@quintlaw.com

**RUSSELL S. WARREN, JR.**
473 Sylvan Avenue
Englewood Cliffs, New Jersey 07632-1234
Tel: (201)503-0773
Fax: (201) 503-0776
mail@RWarrenlaw.com

*Admitted *pro hac vice.*

*Counsel for Plaintiffs*

41

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that a true and correct copy of the foregoing

was served upon all counsel of record through the Court's ECF system this 28th day

of February, 2019.

<div style="margin-left: 45%;">

s/ Roosevelt N. Nesmith

Roosevelt N. Nesmith

</div>