**LAW OFFICE OF**
**ROOSEVELT N. NESMITH, LLC**
Roosevelt N. Nesmith
363 Bloomfield Avenue, Suite 2C
Montclair, New Jersey 07042
Tel: (973) 259-6990
Fax: (866) 848-1368
Email: roosevelt@nesmithlaw.com

*Counsel for Plaintiffs*

[Additional Counsel listed on signature page]

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| MERINO, *et al.*, individually and on behalf of all others similarly situated, | Case No.: 2:16-cv-07840-ES-MAH |
| Plaintiffs, | |
| v. | |
| WELLS FARGO & COMPANY and WELLS FARGO BANK, N.A., | |
| Defendants. | |

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR APPROVAL OF ATTORNEYS' FEES AND COSTS

# TABLE OF CONTENTS

I.    INTRODUCTION ...............................................................................1

II.   PROCEDURAL HISTORY ...............................................................4

III.  LEGAL ARGUMENT.........................................................................4

A.    Plaintiffs Are Entitled to Reasonable Attorneys' Fees Pursuant to the
      Percentage of Recovery Approach ................................................4

      1.    The Size of the Fund Created and the Number of Beneficiaries, as
            Well as the Value of the Benefits, Supports the Requested Fee...........9

      2.    The Response of the Settlement Class Members Supports the
            Requested Fee..................................................................10

      3.    The Skill and Efficiency of Class Counsel Enabled Them to Obtain
            the Settlement and Supports the Requested Fee ................................12

      4.    The Complexity and Duration of the Litigation Supports the
            Requested Fee.................................................................15

      5.    The Risk of Non-Payment Supports the Requested Fee ....................16

      6.    A Lodestar Cross-Check Supports the Requested Fee.......................17

      7.    The Awards in Similar Cases Support the Requested Fee.................20

      8.    The Amount of Privately Negotiated Contingent Fees Support The
            Requested     Fee..............................................................22

B.    Class Counsel's Out-Of-Pocket Expenses Should Be Approved.................22

IV.   CONCLUSION...........................................................................24

# TABLE OF AUTHORITIES

Cases

*Acevedo v. BrightView Landscapes, LLC*,
   No. 3:13-cv-2529, 2017 WL 4354809 (M.D. Pa. Oct. 2, 2017) ......................5, 16
*Alegre v. Atlantic Central Logistics*,
   No. 15-cv-2342 , 2015 WL 4607196 (D.N.J. July 31, 2015)..............................20
*Arrington v. Optimum Healthcare IT, LLC*,
   No. 17-cv-3950, 2018 WL 5631625 (E.D. Pa. Oct. 31, 2018)...........................18
*Barrentine v. Arkansas-Best Freight Sys.*,
   450 U.S. 728 (1981) ........................................................................................15
*Beckman v. Keybank, N.A.*,
   293 F.R.D. 467 (S.D.N.Y. 2013).......................................................................19
*Bredbenner v. Liberty Travel, Inc.*,
   No. 09-cv-1248, 2011 WL 1344745 (D.N.J. Apr. 8, 2011) ............... 8, 14, 21, 22
*Brumley v. Camin Cargo Control, Inc.*,
   No. 08-CV-1798, 2012 WL 1019337 (D.N.J. Mar. 26, 2012)............... 15, 16, 20
*Cendant*,
   264 F.3d 201 (3d Cir. 2001) .............................................................................17
*Chemi v. Champion Mortg.*,
   No. 05-cv-1238, 2009 WL 1470429 (D.N.J. May 26, 2009) ................... 7, 10, 12
*Cullen v. Whitman Med. Corp.*,
   197 F.R.D. 136 (E.D. Pa. 2000) .......................................................................21
*Davis v. J.P. Morgan Chase & Co.*,
   827 F. Supp. 2d 172 (W.D.N.Y. 2011) .............................................................19
*Erie Cty. Retirees Assoc. v. Cty. of Erie, Pa.*,
   192 F. Supp. 2d 369 (W.D. Pa. 2002) ..............................................................21
*Galt v. Eagleville Hospital*,
   310 F. Supp. 3d 483 (E.D. Pa. 2018).................................................................20
*Green v. Ventnor Beauty Supply, Inc.*,
   No. 1:18-cv-15673, 2019 WL 2099821 (D.N.J. May 14, 2019)............................5
*Gunter v. Ridgewood Energy Corp.*,
   223 F.3d 190 (3d Cir. 2000) ...............................................................................8
*Hegab v. Family Dollar Stores, Inc.*,
   No. 11-cv-1206, 2015 WL 1021130 (D.N.J. Mar. 9, 2015)......................... 11, 16
*Henry v. Little Mint, Inc.*,
   No. 12-cv-3966, 2014 WL 2199427 (S.D.N.Y. May 23, 2014) ..........................21
*In re AT&T Corp. Sec. Litig.*,
   455 F.3d 160 (3d Cir. 2006) ...............................................................................6

*In re Cendant Corp.*,
  404 F.3d 173 (3d Cir. 2005) ...............................................................7
*In re Diet Drugs Prod. Liab. Litig.*,
  582 F.3d 524 (3d Cir. 2009) ........................................................ 6, 7, 8
*In re Gen. Motors Pick–Up Truck Fuel Tank Prods. Liab. Litig.*,
  55 F.3d 768 (3d Cir. 1995) ...............................................................20
*In re Janney Montgomery Scott, LLC*,
  No. 06-cv-3202, 2009 WL 2137224 (E.D. Pa. July 16, 2009).............................7
*In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*,
  148 F.3d 283 (3d Cir. 1998) .................................................... 7, 8, 18
*In re Rite Aid Corp. Sec. Litig.*,
  396 F.3d 294 (3d Cir. 2005) .................................................... 7, 8, 17
*In re Rite Aid*,
  362 F. Supp. 2d...............................................................................19
*In re Staples Wage & Hour Emp't Practices Litig.*,
  No. 08-cv-5746, 2011 WL 5413221 (D.N.J. Nov. 4, 2011) ................................19
*Keller v. TD Bank, N.A.*,
  No. 12-cv-5054, 2014 WL 5591033 (E.D. Pa. Nov. 4, 2014) ............................19
*Lenahan v. Sears, Roebuck & Co.*,
  No. 02-cv-0045, 2006 WL 2085282 (D.N.J. July 24, 2006)................... 10, 15, 17
*Lucent Tech., Sec. Litig.*,
  327 F. Supp. 2d 426 (D.N.J. 2006)......................................................22
*Mabry v. Hildebrandt, d/b/a Phila. Auto Body*,
  No. 14–cv-5525, 2015 WL 5025810 (E.D. Pa. Aug. 24, 2015)..........................21
*Maddy v. General Electric Co.*,
  No. 14-cv-490, 2017 WL 2780741 (D.N.J. June 26, 2017) ..................... 7, 12, 13
*McGee v. Ann's Choice, Inc.*,
  No. 12-cv-2664, 2014 WL 2514582 (E.D. Pa. June 4, 2014)............................21
*Mulroy v. Nat'l Water Main Cleaning Co. of N.J.*,
  No. 12-cv-3669, 2014 WL 7051778 (D.N.J. Dec. 12, 2014)..........................7, 11
*New England Carpenters Health Benefits Fund v. First Databank, Inc.*,
  No. 05-cv-11148, 2009 WL 2408560 (D. Mass. Aug. 3, 2009) .........................19
*Oh v. AT&T Corp.*,
  225 F.R.D. 142 (D.N.J. 2004) ..........................................................23
*Rouse v. Comcast Corp.*,
  No. 14-cv-115, 2015 WL 1725721 (E.D. Pa. Apr. 15, 2015) ..................... 18, 21
*Tompkins v. Farmers Ins. Exch.*,
  No. 5:14-cv-3737, 2017 WL 4284114 (E.D. Pa. Sept. 27, 2017) ......................21
*Vizcaino v. Microsoft Corp.*,
  290 F.3d 1043 (9th Cir. 2002) ..........................................................19

*Williams v. Aramark Sports, LLC*,
  No. 10-cv-1044, 2011 WL 4018205 (E.D. Pa. Sept. 9, 2011) ............................21
*Yuzary v. HSBC Bank USA, N.A.*, No. 12-cv-3693,
  2013 WL 5492998 (S.D.N.Y. Oct. 2, 2013) .......................................................19
*Zeltser v. Merrill Lynch & Co.*,
  No. 13-cv1531, 2014 WL 4816134 (S.D.N.Y. Sept. 23, 2014)...........................19

Statutes

29 U.S.C. § 216(b) ................................................................................ 5, 21, 22
43 Pa. Stat. Ann. § 333.113 ............................................................................6, 23
Conn. Gen. Stat. Ann. § 31-72 .......................................................................6, 23
Minn. Stat. Ann. §177.27, Subd. 10...............................................................6, 23
N.C. Gen. Stat. Ann. § 95-25.22(d) ...............................................................6, 23
N.J. Stat. Ann. ("N.J.S.A.") § 34:11-56a25.....................................................5, 22
N.Y. Labor Law ("NYLL") § 663 ..........................................................................5
Nev. Rev. Stat. Ann. ("NRS") § 608.140 .......................................................5, 23

Rules

Federal Rule of Civil Procedure 23(h)...................................................................1, 4

## I.      INTRODUCTION

Pursuant to Federal Rule of Civil Procedure 23(h), Class Counsel[1] for Plaintiffs Juan Carlos Merino, Agustin Morel, Jr., Joshua Thomson, Jonathon Almonte, Keenan Johnson, Abdullahi Hajisomo, Claudia Cervantes Chouza, Richard Sklenka and Wilson Blount ("Plaintiffs" or "Named Plaintiffs"), individually and on behalf of the Settlement Class Members and Settlement Collective Members, respectfully file this motion for approval of attorneys' fees in the amount of thirty percent of the $35 million Maximum Settlement Amount (*i.e.*, $10.5 million), plus reimbursement of Class Counsel's out-of-pocket expenses not to exceed $60,000,[2] pursuant to the Settlement Agreement ("Settlement Agreement" or "Agreement" and cited herein as "S.A.") between Plaintiffs and Defendants Wells Fargo Bank, N.A. (the "Bank") and Wells Fargo & Company (together with the Bank, "Defendants" or "Wells Fargo").

---

[1] Capitalized terms have the same meaning given to them in the Settlement Agreement. Class Counsel is comprised of the following firms: Berger Montague PC; Giskan Solotaroff & Anderson, LLP; The Law Office of Roosevelt N. Nesmith, LLC; Russell S. Warren, Jr.; The Markham Law Firm; Reali Law, APC; and Quintilone & Associates (collectively, "Class Counsel"). S.A. ¶ 1.9.

[2] Currently, Class Counsel has incurred $55,359.05 in out-of-pocket expenses. *See* Declaration of Shanon J. Carson ("Carson Decl.") at ¶ 67. To the extent Class Counsel incurs further expenses between now and the Final Approval Hearing, Class Counsel will update the Court at the Final Approval Hearing. The Settlement Agreement provides that Class Counsel may request payment of out-of-pocket expenses not to exceed $60,000. S.A. ¶ 10.1.

The Settlement is an excellent result, benefiting 38,149 Settlement Class Members and Settlement Collective Members[3] who are non-exempt hourly-paid personal and business bankers who worked for Wells Fargo during the relevant time periods (the "Hourly Bankers"). An order granting this motion would ensure that each participating Hourly Banker contribute a *pro rata* share towards Class Counsel's attorneys' fees; would mimic the marketplace, had the Hourly Bankers each individually retained Class Counsel; and would encourage competent counsel to take on complex contingency cases such as this. In addition, the requested fees are in line with attorneys' fees approved by this Court and others in comparable class actions.

The $35 million Maximum Settlement Amount is exclusive of the employer's share of payroll taxes related to the Settlement Payments, which shall be paid by the Bank *in addition to the Maximum Settlement Amount*. S.A. ¶ 5.1, ECF No. 132-1. Each Hourly Banker will receive a Settlement Payment that provides a Minimum Payment of $300.00. S.A. ¶ 6.1, ECF No. 132-1. Participating Hourly Bankers who submit a valid and timely Claim Form ("Claimants") (S.A. ¶ 1.8, ECF No. 132-1) will also receive additional compensation for each Qualifying Workweek that they worked for Wells Fargo in a Covered Position during the relevant time period

---

[3] *See* Declaration of Jessica Jenkins on behalf of Rust Consulting, Inc., being filed contemporaneously with this Motion, at ¶ 10; *see also* Agreement, ECF No. 132-1, ¶¶ 1.47-1.50, 15.1-15.2, 16.1.

2

according to a negotiated, objective formula which has been preliminarily approved by the Court. *Id.* ¶¶ 6.2, 6.3, ECF No. 132-1. This Settlement is fair, reasonable, and beneficial to the Settlement Class and Collective Members.

The Court entered an Order preliminarily approving the Settlement Agreement on July 9, 2019. ECF No. 135. Class Counsel, Plaintiffs, and Opt-In Plaintiffs believe that the Agreement provides an excellent result for Settlement Class and Collective Members with respect to their claims for alleged unpaid overtime. *See* Carson Decl. at ¶ 10. The Settlement provides meaningful benefits, including significant financial compensation to the Hourly Bankers, and avoids the risks inherent in the continued prosecution of this case, in which Wells Fargo asserts various defenses to its liability. *Id.* at ¶¶ 39, 63.

Class Counsel's request is appropriate, given their efforts in litigating this case as described in detail below and in the accompanying declarations of Class Counsel. *See generally* Carson Decl.; Declaration of Roosevelt N. Nesmith ("Nesmith Decl."); Declaration of Richard E. Quintilone II ("Quintilone Decl."); Declaration of Peggy J. Reali ("Reali Decl."); Declaration of Russell S. Warren ("Warren Decl."); Declaration of Catherine E. Anderson ("Anderson Decl."); Declaration of David R. Markham ("Markham Decl."). The requested fee is consistent with Third Circuit law and will compensate Class Counsel for work already performed in this case and for all work remaining to be performed through its final resolution,

including ensuring that the Settlement is fairly administered and implemented, and obtaining dismissal of the action. For these reasons, and as set forth in detail below, Plaintiffs, Opt-In Plaintiffs and Class Counsel respectfully request that this motion be granted.

## II.     PROCEDURAL HISTORY

Plaintiffs incorporate by reference the procedural history of the case set forth in Plaintiffs' Motion for Preliminary Approval of the Settlement Agreement, which the Court granted on July 9, 2019. ECF Nos. 132-2, 135. Plaintiffs further incorporate by reference the procedural history of this case set forth in the accompanying Declaration of Shanon J. Carson. *See* Carson Decl ¶¶ 10-44. As this recitation demonstrates, Class Counsel worked extremely hard to efficiently obtain the Settlement, and the intensity of the Parties' efforts and the breadth of discovery which has taken place since 2016 has ensured that the Settlement is the product of an informed understanding of the facts and law. *See id.*

## III.   LEGAL ARGUMENT

### A.     Plaintiffs Are Entitled to Reasonable Attorneys' Fees Pursuant to the Percentage of Recovery Approach

Federal Rule of Civil Procedure 23(h) provides that, "[i]n a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement."  Fed. R. Civ. P. 23(h).

In addition, in a case for unpaid overtime under the Fair Labor Standards Act, "Plaintiff's counsel is entitled to reasonable attorneys' fees to compensate them for their work in recovering unpaid wages under the FLSA." *Green v. Ventnor Beauty Supply, Inc.*, No. 1:18-cv-15673, 2019 WL 2099821, at *2 (D.N.J. May 14, 2019) (citing 29 U.S.C. § 216(b)); *see also Acevedo v. BrightView Landscapes, LLC*, No. 3:13-cv-2529, 2017 WL 4354809, at *16 (M.D. Pa. Oct. 2, 2017) ("The FLSA provides that the court 'shall, in addition to any judgment awarded to the plaintiff . . . allow a reasonable attorney's fee to be paid by the defendant, and costs of the action.'") (quoting 29 U.S.C. § 216(b)).

Similarly, the state wage laws asserted in the Second Amended Complaint (*see* ECF No. 131-1), including those of New Jersey, Nevada, New York, Pennsylvania, Connecticut, North Carolina, and Minnesota, all provide for an award of reasonable attorneys' fees and costs to Plaintiffs' counsel. *See* N.J. Stat. Ann. ("N.J.S.A.") § 34:11-56a25 ("employee may recover in a civil action the full amount of such minimum wage less any amount actually paid to him or her by the employer together with costs and such reasonable attorney's fees as may be allowed by the court…."); Nev. Rev. Stat. Ann. ("NRS") § 608.140 ("the court before which the case shall be tried shall allow to the plaintiff a reasonable attorney fee, in addition to the amount found due for wages and penalties, to be taxed as costs of suit"); N.Y. Labor Law ("NYLL") § 663 ("if any employee is paid by his or her employer less

than the wage to which he or she is entitled under the provisions of this article, he or she shall recover in a civil action the amount of any such underpayments, together with costs [and] all reasonable attorney's fees..."); 43 Pa. Stat. Ann. § 333.113 ("[i]f any employee is paid by his or her employer less than the minimum wages [under Pennsylvania Minimum Wage Act of 1968], such worker may recover … costs and such reasonable attorney's fees as may be allowed by the court"); Conn. Gen. Stat. Ann. § 31-72 ("employee… shall recover, in a civil action … costs and such reasonable attorney's fees as may be allowed by the court"); N.C. Gen. Stat. Ann. § 95-25.22(d) ("The court, in any action brought under this Article may, in addition to any judgment awarded plaintiff order costs and fees of the action and reasonable attorneys' fees to be paid by the defendant."); Minn. Stat. Ann. §177.27, Subd. 10 ("court shall order any employer who is found to have committed a violation… to pay to the employee or employees reasonable costs, disbursements, witness fees, and attorney fees").

Under Third Circuit law with respect to class and collective action settlements, the Court may evaluate the approval of attorneys' fees through two established methods: (1) the percentage of the recovery approach; and (2) the lodestar approach. *In re Diet Drugs Prod. Liab. Litig.*, 582 F.3d 524, 540 (3d Cir. 2009); *In re AT&T Corp. Sec. Litig.*, 455 F.3d 160, 164 (3d Cir. 2006). Under the common fund doctrine, "a private plaintiff, or plaintiff's attorney, whose efforts

create, discover, increase, or preserve a fund to which others also have a claim, is

entitled to recover from the fund the costs of his litigation, including attorneys' fees."

*In re Cendant Corp.*, 404 F.3d 173, 187 (3d Cir. 2005).

In the Third Circuit, when calculating attorneys' fees in common fund cases

such as this one, the percentage-of-recovery method is generally favored. *In re Diet

Drugs*, 582 F.3d at 540 (citing *In re Prudential Ins. Co. Am. Sales Practice Litig.

Agent Actions*, 148 F.3d 283, 333 (3d Cir. 1998)). The Third Circuit has explained

that "[t]he percentage of recovery method is generally favored in common fund cases

because it allows courts to award fees from the fund 'in a manner that rewards

counsel for success and penalizes it for failure.'" *In re Rite Aid Corp. Sec. Litig.,* 396

F.3d 294, 300 (3d Cir. 2005) (quoting *In re Prudential*, 148 F.3d at 333). "Indeed, it

is the prevailing methodology used by courts in this Circuit for wage-and-hour

cases." *Mulroy v. Nat'l Water Main Cleaning Co. of N.J.*, No. 12-cv-3669, 2014 WL

7051778, at *6 (D.N.J. Dec. 12, 2014) (citing *In re Janney Montgomery Scott, LLC*,

No. 06-cv-3202, 2009 WL 2137224, at *14 (E.D. Pa. July 16, 2009) and *Chemi v.

Champion Mortg.*, No. 05-cv-1238, 2009 WL 1470429, at *10 (D.N.J. May 26,

2009)); *Maddy v. General Electric Co.,* No. 14-cv-490, 2017 WL 2780741, at *6

(D.N.J. June 26, 2017) (granting fee request of 33.3% of the settlement fund and

noting that the percentage-of-recovery method is the prevailing methodology in the

Third Circuit for wage and hour cases) (citing *Bredbenner v. Liberty Travel, Inc.*, No. 09-cv-1248, 2011 WL 1344745, at *19 (D.N.J. Apr. 8, 2011)).

In determining what constitutes a reasonable percentage fee award in the Third Circuit, a district court considers ten factors: (1) the size of the fund created and the number of beneficiaries; (2) the presence or absence of substantial objections by members of the class to the settlement terms and/or fees requested by counsel; (3) the skill and efficiency of the attorneys involved; (4) the complexity and duration of the litigation; (5) the risk of nonpayment; (6) the amount of time devoted to the case by plaintiffs' counsel; (7) the awards in similar cases; (8) the value of benefits attributable to the efforts of class counsel relative to the efforts of other groups, such as government agencies conducting investigations; (9) the percentage fee that would have been negotiated had the case been subject to a private contingent fee arrangement at the time counsel was retained; and (10) any innovative terms of settlement. *In re Diet Drugs*, 582 F.3d at 541 (citing *Gunter v. Ridgewood Energy Corp.*, 223 F.3d 190, 195 n.1 (3d Cir. 2000) and *In re Prudential*, 148 F.3d at 342)). The Third Circuit has stressed that these factors "need not be applied in a formulaic way. Each case is different, and in certain cases, one factor may outweigh the rest." *In re Rite Aid*, 396 F. 3d at 301. As shown below, these factors strongly support approval of the requested 30% fee.

### 1. The Size of the Fund Created and the Number of Beneficiaries, as Well as the Value of the Benefits, Supports the Requested Fee

The $35 million settlement that Class Counsel obtained represents a significant benefit in the face of the many legal and factual risks posed by the litigation. The Settlement Class and Collective Members need not take any action in order to receive a settlement award. Under the Settlement Agreement, each person who does not opt out receives at least $300 in exchange for their release of claims. S.A. ¶ 6.1, ECF No. 132-1. Further, the Agreement provides that all Claimants who submit valid and timely Claim Forms will receive an additional Per Workweek Amount payment from the Qualified Settlement Fund based on the number of Qualifying Workweeks that the Claimant worked in a Covered Position for Wells Fargo during the relevant Class Period(s). S.A. ¶ 6.2, ECF No. 132-1; Carson Decl. ¶¶ 40-41.

During the ADR process that led to the Settlement, the Parties exchanged data regarding the Settlement Class Members and exchanged detailed damages calculations. *Id.* at ¶¶ 25-30. The $35 million Maximum Settlement Amount is based on an analysis of workweeks that the Settlement Class Members worked in a Covered Position at Wells Fargo during the relevant time period, as determined by Wells Fargo's records. *Id.* at ¶ 39.

Moreover, as described above, and in the accompanying Declaration of Shanon J. Carson, the Settlement Agreement provides for substantial benefits for the Settlement Class and Collective Members. *See, e.g., Lenahan v. Sears, Roebuck & Co.*, No. 02-cv-0045, 2006 WL 2085282, at *19 (D.N.J. July 24, 2006), *aff'd*, 266 F. App'x 114 (3d Cir. 2008) ("The Class here is comprised of approximately 16,000 persons who will share in a cash settlement fund of $15 million, less attorneys' fees, expenses and incentive awards as granted by this Court. The settlement amount is significant, especially in view of the risks and obstacles to recovery presented in this case."); *Chemi*, 2009 WL 1470429, at *10 ("While the current matter does not qualify as a 'very large settlement,' it is still significant that Plaintiffs have secured $1.2 million for the 917 class members"); *Maddy*, 2017 WL 2780741 at *7 ("[T]here is tremendous benefit to the Class Members in light of the stage of the litigation, the remaining hurdles prior to even arriving at a trial date, and the risks associated with continued litigation").

In sum, the size of the $35 million settlement fund, the number of beneficiaries (38,149), and the value of the benefits, strongly supports the requested fee.

## 2. The Response of the Settlement Class Members Supports the Requested Fee

As part of its Preliminary Approval Order, the Court appointed Rust Consulting, Inc. ("Rust") as the Settlement Administrator to provide notice of and administer the Settlement. *See* Declaration of Jessica Jenkins on behalf of Rust

Consulting, Inc., ¶ 3 ("Jenkins Decl.") (detailing the duties performed by Rust to date in this case). On September 9, 2019, Rust mailed the Notice Packets to the 38,149 Settlement Class and Collective Members via First Class Mail and also by email if available. *Id*. ¶¶ 13-14. The Notices issued by Rust – that were approved by the Court in its Preliminary Approval Order – summarized the terms of the Settlement and set forth the allocation of the Maximum Settlement Amount. They also provided information regarding the monetary awards that the Settlement will provide to participating Settlement Class and Collective Members, the request for attorneys' fees and costs, and the procedures and deadlines for opting out of the Settlement or submitting an objection. ECF No. 132-1, Exhibit B.

The response to the Settlement by the Settlement Class and Collective Members has been positive. To date, there have been *zero* objections and only *eight* have requested exclusion from the Settlement.[4] Jenkins Decl. ¶¶ 19-20. This factor therefore strongly supports approving Class Counsel's requested fees and costs. *See Mulroy*, 2014 WL 7051778, at *6 ("The lack of significant objections from the Class supports the reasonableness of the fee request.") (citation omitted); *Hegab v. Family Dollar Stores, Inc.*, No. 11-cv-1206, 2015 WL 1021130, at *12 (D.N.J. Mar. 9, 2015)

---

[4] The deadline to object to the Settlement or request exclusion is November 8, 2019.

("The absence of objections by settlement class members to the fees requested by class counsel strongly supports approval").

### 3. The Skill and Efficiency of Class Counsel Enabled Them to Obtain the Settlement and Supports the Requested Fee

This third *Gunter* factor also supports the requested fee. In evaluating the skill and efficiency of the attorneys involved, courts have looked to "the quality of the result achieved, the difficulties faced, the speed and efficiency of the recovery, the standing, experience and expertise of the counsel, the skill and professionalism with which counsel prosecuted the case and the performance and quality of opposing counsel." *Chemi*, 2009 WL 1470429, at *11 (internal quotations omitted); *accord Maddy*, 2017 WL 2780741, at *7.

Class Counsel is comprised of the following firms: Berger Montague PC; Giskan Solotaroff & Anderson, LLP; The Law Office of Roosevelt N. Nesmith, LLC; Russell S. Warren, Jr.; The Markham Law Firm; Reali Law, APC; and Quintilone & Associates. S.A. ¶ 1.9. Each of these firms is contemporaneously submitting a declaration in support of this motion, which collectively show that Class Counsel includes attorneys with significant employment law as well as class and collective action experience. Additionally, the declarations each include a description of the work performed by each firm, a firm resume, the number of hours expended on this litigation, the hourly rates applied, and the out-of-pocket expenses

incurred by each firm. *See generally* Carson Decl.; Nesmith Decl.; Quintilone Decl.; Reali Decl.; Warren Decl.; Anderson Decl.; and Markham Decl.

These declarations further show that Class Counsel assumed a large risk in taking this case on a pure contingency basis; invested time, effort, and money over an approximate three-year period with no guarantee of any recovery; and were prepared to continue with litigation if the settlement negotiations were unsuccessful. *See* Carson Decl. ¶ 61. These factors all weigh in favor of the requested fee. *See Maddy*, 2017 WL 2780741, at *7 (finding *Gunter* factors satisfied, and granting a one-third fee, noting that the "issues in this case were thoroughly contested and this matter was 'hard-fought' by skilled, professional counsel" that the case was resolved prior to trial, and that "[s]imply stated, class counsel took this case on a pure contingency basis").

The Settlement Agreement involves complex provisions that are specific to the FLSA and Rule 23 law and is a reflection of Class Counsel's experience. Moreover, the Agreement was the result of vigorously contested litigation, factual discovery, and protracted arm's length negotiations with Wells Fargo (the fourth largest bank in the world), and its highly sophisticated counsel. Indeed, the Settlement was reached only after: (a) substantial motion practice, which included contested motions to strike, to amend the pleadings, to equitably toll the FLSA statute of limitations, and for conditional certification, as well as Wells Fargo's letter

motion requesting to move for summary judgement based on the "outside sales" exemption of the FLSA, which the Court denied without prejudice to Wells Fargo's "right to renew the request upon completion of fact discovery" (*see* ECF No. 45); (b) the exchange of substantial documents, data, and information through both formal and informal ADR-related discovery; (c) the depositions of Plaintiffs Merino and Morel; (d) multiple pre-mediation conference calls; (e) two full-day, in-person mediation sessions in Oakland, California, overseen by an experienced wage and hour mediator, Jeff Ross, and (f) substantial arm's length negotiations following the mediation sessions that were overseen by the mediator. *See* Carson Decl. ¶¶ 10-38; *see Bredbenner*, 2011 WL 1344745, at *10 (concluding that "[p]articipation of an independent mediator in settlement negotiations virtually insures that the negotiations were conducted at arm's length and without collusion between the parties.").

The Parties also spent considerable time negotiating and drafting the terms of the Settlement Agreement and its exhibits, which included numerous telephone conferences, emails, and in-person meetings among counsel over the course of many months. *See* Carson Decl. ¶¶ 32-34. Accordingly, for the above reasons, and as further demonstrated by the accompanying declarations of Class Counsel, the skill and efficiency of Class Counsel enabled them to obtain the Settlement and supports the requested fee.

14

### 4.     The Complexity and Duration of the Litigation Supports the Requested Fee

The complexity and duration of the litigation also weigh heavily in favor of approving the requested fee. The Supreme Court and the District of New Jersey have found FLSA and state wage-and-hour law claims to be complex. *See*, *e.g.*, *Barrentine v. Arkansas-Best Freight Sys.*, 450 U.S. 728, 743 (1981); *Brumley v. Camin Cargo Control, Inc.*, No. 08-CV-1798, 2012 WL 1019337, at *11 (D.N.J. Mar. 26, 2012); *Lenahan*, 2006 WL 2085282, at *61-62.

As set forth above and as the Court is aware, this case involves complicated legal and factual issues, as well as many defenses asserted by Defendants to Plaintiffs' claims, which have been pending since 2016. While the parties began settlement discussions in early 2018, it took over a year of prolonged negotiations, including two full day mediation sessions, and extensive review and analysis of ADR-related discovery (including but not limited to pay records and wage data for the Settlement Class and Collective Members), to arrive at the Settlement. Carson Decl. ¶¶ 28-35.

During this entire period, Plaintiffs faced tenacious and highly skilled defense counsel who sought to strike class allegations, opposed Plaintiffs' efforts to conditionally certify the FLSA collective, moved for summary judgment based on the "outside sales" exemption to the FLSA, and opposed Plaintiffs' attempt to file a motion for equitable tolling of the FLSA claims. *See* Carson Decl. ¶¶ 18-27. Again,

15

it should not go unnoted that Plaintiffs were litigating against the fourth largest bank in the world, with virtually unlimited resources at its disposal.

Specifically, Class Counsel's research, analysis, and discovery during the litigation enabled Plaintiffs to enter into the ADR process in January 2018 (with the approval of the Court) armed with a deep understanding of the facts concerning the Hourly Bankers and their alleged unpaid overtime work, as well as the law of multiple states, all of which helped lead to this excellent Settlement. These factors support the requested fee award. *See Hegab,* 2015 WL 1021130, at *13 (complexity and duration of litigation weighed in favor of 30% fee award where the "case has been litigated for over three years and involves uncertain legal issues."); *Acevedo*, 2017 WL 4354809, at *18 ("extensive informal discovery and . . . ample amount of time engaging in mediation, [including] three full-day sessions" supported fee award of 33 1/3% of common fund).

### 5.  The Risk of Non-Payment Supports the Requested Fee

Class Counsel took this case on a purely contingent basis which creates a substantial risk of non-payment. *Hegab,* 2015 WL 1021130, at *13 (risk of non-payment weighed in favor of 30% fee award in overtime class action where "[c]lass counsel undertook this action on a contingent fee basis, assuming a substantial risk that they might not be compensated for their efforts."); *Brumley,* 2012 WL 1019337, at *11 (risk of non-payment weighed in favor of awarding 33% fee; "Plaintiffs'

16

counsel risked non-payment during the period of their representation since they represented Plaintiffs entirely on a contingent basis, with no retainer fees or expenses paid at the beginning of the litigation."); *Lenahan,* 2006 WL 2085282, at *21 (where "[p]laintiffs still faced significant risks at trial…. the risk of non-payment weighs in favor of approving the fee request."). Likewise, the risk here of non-payment weighs in favor of approving the requested fee.

### 6.    A Lodestar Cross-Check Supports the Requested Fee

The Third Circuit has suggested that it is sensible for a court to use a second method, a lodestar cross-check, to check its initial fee calculation. *See In re Rite Aid*, 396 F.3d at 300. However, the "lodestar cross-check does not trump the primary reliance on the percentage of common fund method." *Id*.; *see Cendant*, 264 F.3d 201, 285 (3d Cir. 2001) ("The lodestar cross-check, however, is very time consuming. Thus, while the Court should in the first instance test the presumption, if challenged, by the *Gunter* factors, it may, if necessary, utilize the lodestar cross-check.").

As set forth in their accompanying declarations, Class Counsel have collectively expended 4,735.2 hours on this litigation, yielding a current collective lodestar of approximately $2,872,482.50. *See* Carson Decl. ¶ 58. Class Counsel's lodestar is calculated using each firm's standard hourly rates which are discussed in the accompanying declarations. The nature and substance of the work performed by

timekeepers with more than five hours of work on this litigation is also set out in detail in the accompanying declarations. Class Counsel's lodestar will continue to increase as they perform additional work on this case, including due to the need to communicate with Settlement Class and Collective Members, oversee the settlement process, and prepare for and attend the Final Approval hearing. Carson Decl. ¶ 60.

Here, the proposed attorneys' fee award of $10.5 million represents a multiplier of 3.66 on Class Counsel's total collective lodestar to date. This multiplier is in line with the range of lodestar multipliers that have been approved in common fund contingency fee cases by courts in the Third Circuit. For example, in *Prudential*, the Third Circuit noted, based on a review of common fund cases, that "[m]ultipliers ranging from one to four are frequently awarded in common fund cases, when the lodestar method is applied." *In re Prudential*, 148 F.3d at 341; *see also* Order Granting Plaintiffs' Motion for Final Approval of Fair Labor Standards Act Settlement, *Holbert v. Waste Management, Inc.,* No. 18-cv-02649, (E.D. Pa. Aug. 7, 2019), ECF No. 52 (granting final approval of FLSA Settlement and approving attorneys' fees with a multiplier of over 4.5); *Arrington v. Optimum Healthcare IT, LLC*, No. 17-cv-3950, 2018 WL 5631625, at *10 (E.D. Pa. Oct. 31, 2018) (approving 30% fee award where the lodestar multiplier was 5.3 in wage and hour case); *Rouse v. Comcast Corp.,* No. 14-cv-115, 2015 WL 1725721, at *12-14 (E.D. Pa. Apr. 15, 2015) (approving attorneys' fees of 35% of the settlement fund

that constituted a multiplier of 2.08 in wage and hour case); *Keller v. TD Bank, N.A.*, No. 12-cv-5054, 2014 WL 5591033, at *16 (E.D. Pa. Nov. 4, 2014) (approving lodestar multiplier "slightly above 3" in FLSA lawsuit); *In re Staples Wage & Hour Emp't Practices Litig.*, No. 08-cv-5746, 2011 WL 5413221, at *5 (D.N.J. Nov. 4, 2011) (approving lodestar multiplier of 2.75 in FLSA case).[5]

Similarly, the fee request here of $10.5 million represents a reasonable multiplier of Class Counsel's lodestar, not including all of the work that remains to be performed to bring this case to a conclusion. For these reasons, Class Counsel's lodestar supports the requested fee.

---

[5] *See also Davis v. J.P. Morgan Chase & Co.*, 827 F. Supp. 2d 172, 185 (W.D.N.Y. 2011) (approving 5.3 multiplier in $14 million wage and hour settlement, and holding that "[a] review of the case law indicates that while that figure is toward the high end of acceptable multipliers, it is not atypical for similar fee-award cases"); *Zeltser v. Merrill Lynch & Co.*, No. 13-cv1531, 2014 WL 4816134, at *10 (S.D.N.Y. Sept. 23, 2014) (approving 5.1 multiplier in wage and hour settlement and noting "[w]hile this multiplier is near the higher end of the range of multipliers that courts have allowed, this should not result in penalizing Plaintiffs' counsel for achieving an early settlement, particular where, as here, the settlement amount is substantial"); *Yuzary v. HSBC Bank USA, N.A.*, No. 12-cv-3693, 2013 WL 5492998, at *11 (S.D.N.Y. Oct. 2, 2013) (approximately 7.6 multiplier); *New England Carpenters Health Benefits Fund v. First Databank, Inc.*, No. 05-cv-11148, 2009 WL 2408560, at *2 (D. Mass. Aug. 3, 2009) (approximately 8.3 multiplier); *In re Rite Aid*, 362 F. Supp. 2d at 589 (approximately 6.96 multiplier); *Beckman v. Keybank, N.A.*, 293 F.R.D. 467, 481-82 (S.D.N.Y. 2013) (approving 6.3 multiplier in FLSA settlement, noting that "[c]ourts regularly award lodestar multipliers of up to eight times the lodestar, and in some cases, even higher multipliers.") (collecting cases); *see also Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1052 (9th Cir. 2002) (listing nationwide settlements with multipliers up to 19.6).

### 7.     The Awards in Similar Cases Support the Requested Fee

The requested fee is also consistent with awards in similar cases. Courts in the Third Circuit have noted that fee awards generally range from 19% to 45% of the settlement fund when the percentage-of-recovery method is utilized to assess the reasonableness of requested attorneys' fees. *See Galt v. Eagleville Hospital*, 310 F. Supp. 3d 483, 498 (E.D. Pa. 2018) ("As discussed, most fee awards in common fund cases range from 19% to 45% of the settlement fund, with 25% being the median."); *Brumley,* 2012 WL 1019337, at *12 (collecting cases where attorneys' fees around 30% of settlement funds were found reasonable); *In re Gen. Motors Pick–Up Truck Fuel Tank Prods. Liab. Litig*., 55 F.3d 768, 822 (3d Cir. 1995) (review of 289 settlements demonstrates "average attorney's fee percentage [of] 31.71%" with a median value that "turns out to be one-third"). Further, the District of New Jersey has stated that "[i]n the context of a claim asserted under the New Jersey Wage and Hour Law, courts may include a thirty percent attorneys' fee award." *Alegre v. Atlantic Central Logistics*, No. 15-cv-2342 , 2015 WL 4607196, at *6 (D.N.J. July 31, 2015).[6]

---

[6] In holding that the 30% fee was appropriate, Judge Chesler in *Alegre* explained: "A reasonable approach … is to look to cases from this district arising under similar facts. This reveals that the median in the Third Circuit is roughly thirty percent (30%) of a common fund.… [A]ttorney's fees of approximately 30 percent of the common fund are also regularly awarded in labor and employment law class actions." 2015 WL 4607196, at *7 (citation omitted).

Thus, Class Counsel's request for thirty percent of the settlement fund in this case is consistent with the norms of wage and hour class and collective actions in the Third Circuit and across the country. Indeed, in the Third Circuit, "the percentage of the recovery award in FLSA common fund cases ranges from roughly 20–45%." *Mabry v. Hildebrandt, d/b/a Phila. Auto Body*, No. 14–cv-5525, 2015 WL 5025810, *4 (E.D. Pa. Aug. 24, 2015) (collecting cases); *Bredbenner*, 2011 WL 1344745 (approving an award of 32.6% of the settlement fund).[7] And courts around the

---

[7] *See also Erie Cty. Retirees Assoc. v. Cty. of Erie, Pa.*, 192 F. Supp. 2d 369, 382-83 (W.D. Pa. 2002) (38% of common fund awarded as fees in ADEA collective action case brought pursuant to 29 U.S.C. § 216(b)); *Tompkins v. Farmers Ins. Exch.*, No. 5:14-cv-3737, 2017 WL 4284114, at *10 (E.D. Pa. Sept. 27, 2017) (approving fees equaling 35% of the common fund); *Rouse*, 2015 WL 1725721, at *14 (same); *McGee v. Ann's Choice, Inc.*, No. 12-cv-2664, 2014 WL 2514582, at *6 (E.D. Pa. June 4, 2014) (awarding fees of 32.7% of the fund); *Cullen v. Whitman Med. Corp.*, 197 F.R.D. 136, 150 (E.D. Pa. 2000) (concluding "that an award of one-third of the settlement fund is reasonable in consideration of other courts' awards"); *Williams v. Aramark Sports, LLC*, No. 10-cv-1044, 2011 WL 4018205, at *10 (E.D. Pa. Sept. 9, 2011) (study of class action fee awards within the Third Circuit found that the average attorneys' fees percentage in such cases was 31.71% and median award was 33.3%); *see also* Amended Order Granting Plaintiffs' Unopposed Motion for Approval of Attorneys' Fees and Costs, *Dunkel v. Warrior Energy Servs., Inc.*, No. 2:13-cv-695-MRH (W.D. Pa. Apr. 18, 2016), ECF No. 174, (approving a requested fee of one third of the settlement); Order [Granting Unopposed Motion for Attorneys' Fees and Costs], *Niver v. Specialty Oilfield Sol., Ltd.*, No. 14-cv-1599 (W.D. Pa. Oct. 7, 2015), ECF No. 90, (approving fee award of 33.33% in wage and hour settlement); Order of Court [Granting Unopposed Motion for Attorneys' Fees and Costs], *Stivers v. Office Depot*, No. 12-cv-1534 (W.D. Pa. Sept. 19, 2013), ECF No. 31, (same); Order Granting Plaintiff's Unopposed Motion for Approval of the Settlement Agreement, *Caudell v. RDL Energy Servs., LP*, No. 2:11-cv-01523-JFC (W.D. Pa. Jul. 30, 2012), ECF No. 24, (same); Order [Granting Request for Attorneys' Fees and Costs], *Bearden v. Precision Air Drilling Servs., Inc.*, No. 2:11-cv-01511-NBF (W.D. Pa. Sept. 26, 2012) No. 64, (same); Order [Granting

country have "routinely awarded one-third or more of the settlement fund as attorneys' fees in wage and hour cases." *See Henry v. Little Mint, Inc.*, No. 12-cv-3966, 2014 WL 2199427, \*15 (S.D.N.Y. May 23, 2014) (noting that request for fees was "in line with decisions from across the country that have awarded one-third or more in wage-and-hour settlements" and citing cases).

### 8. The Amount of Privately Negotiated Contingent Fees Support The Requested Fee

The request of attorneys' fees of thirty percent of the Maximum Settlement Amount also comports with privately negotiated contingent fees on the open market. *See Bredbenner*, 2011 WL 1344745, at \*21 (citing *Lucent Tech., Sec. Litig.,* 327 F. Supp. 2d 426, 442 (D.N.J. 2006) (observing that "the customary contingent fee would likely range between 30% and 40% of the recovery" in private, non-class action contingency arrangements). This factor favors approving the requested fee.

For all of the above reasons, Class Counsel's request for attorneys' fees in the amount of 30% of the Maximum Settlement Amount should be approved.

### B. Class Counsel's Out-Of-Pocket Expenses Should Be Approved

The FLSA and the applicable state wage and hour laws at issue in this case also provide for the reimbursement of reasonable out-of-pocket expenses to Class Counsel. *See* 29 U.S.C. § 216(b) ("The court [ ], in addition to any judgment awarded

---

Unopposed Motion for Attorneys' Fees and Costs] *Thomas v. Allis-Chalmers*, No. 2:10-cv-01591-RCM (W.D. Pa. Sept. 11, 2012), ECF No. 197, (same).

to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action."); N.J.S.A.§ 34:11-56a25 ("employee may recover in a civil action the full amount of such minimum wage less any amount actually paid to him or her by the employer together with costs and such reasonable attorney's fees as may be allowed by the court…").[8] Here, Defendants have agreed to pay Class Counsel's costs in an amount not to exceed $60,000.00, and Class Counsel's current costs total $55,359.05. Carson Decl. ¶ 67.

Class Counsel's costs include reasonable out-of-pocket expenditures. *See Oh v. AT&T Corp.*, 225 F.R.D. 142, 154 (D.N.J. 2004) (finding expenses such as "(1) travel and lodging, (2) local meetings and transportation, (3) depositions, (4) photocopies, (5) messengers and express service, (6) telephone and fax, (7)

---

[8] *See also* NRS 608.140 ("'the court before which the case shall be tried shall allow to the plaintiff a reasonable attorney fee, in addition to the amount found due for wages and penalties, to be taxed as costs of suit"); NYLL § 663 ("if any employee is paid by his or her employer less than the wage to which he or she is entitled under the provisions of this article, he or she shall recover in a civil action the amount of any such underpayments, together with costs[and] all reasonable attorney's fees..."); 43 Pa. Stat. Ann. § 333.113 ("[i]f any employee is paid by his or her employer less than the minimum wages [under Pennsylvania Minimum Wage Act of 1968], such worker may recover…costs and such reasonable attorney's fees as may be allowed by the court"); Conn. Gen. Stat. Ann. § 31-72 ("employee… shall recover, in a civil action … costs and such reasonable attorney's fees as may be allowed by the court"); N. C. Gen. Stat. Ann. § 95-25.22(d) ("The court, in any action brought under this Article may, in addition to any judgment awarded plaintiff order costs and fees of the action and reasonable attorneys' fees to be paid by the defendant."); Minn. Stat. Annot. §177.27, Subd. 10 ("court shall order any employer who is found to have committed a violation… to pay to the employee or employees reasonable costs, disbursements, witness fees, and attorney fees").

Lexis/Westlaw legal research, (8) filing, court and witness fees, (9) overtime and temp work, (10) postage, (11) the cost of hiring a mediator, and (12) NJ Client Protection Fund *pro hac vice* to be reasonable).

Class Counsel's expenses in this litigation are detailed in the accompanying declarations of Class Counsel. *See generally* Carson Decl.; Nesmith Decl.; Quintilone Decl.; Reali Decl.; Warren Decl.; Anderson Decl.; and Markham Decl. The expenses are of the type typically billed by attorneys to paying clients in the marketplace and include such costs as mediation fees, court costs, copying fees, delivery costs (including costs for printing and sending claim forms to Settlement class members), and computerized legal research. All of these expenses were reasonable and necessary for the successful prosecution of this case, and pursuant to the terms of the Settlement Agreement, Defendants do not object to the request for reimbursement of costs not to exceed $60,000.

## IV.   CONCLUSION

Based upon the foregoing reasons, Plaintiffs respectfully request that the Court approve attorneys' fees in the amount of thirty percent of the $35 million Maximum Settlement Amount ($10,500,000.00), plus reimbursement of actual out-of-pocket expenses to Class Counsel not to exceed $60,000.

Dated: October 25, 2019                    Respectfully submitted,

                                           s/ *Roosevelt N. Nesmith*
                                           Roosevelt N. Nesmith
                                           **LAW OFFICE OF**
                                           **ROOSEVELT N. NESMITH, LLC**
                                           363 Bloomfield Avenue, Suite 2C
                                           Montclair, New Jersey 07042
                                           Tel: (973) 259-6990
                                           Fax: (866) 848-1368
                                           roosevelt@nesmithlaw.com

                                           Shanon J. Carson*
                                           Sarah R. Schalman-Bergen*
                                           Alexandra K. Piazza (NJ 010922013)
                                           **BERGER MONTAGUE PC**
                                           1818 Market Street, Suite 3600
                                           Philadelphia, PA 19103
                                           Telephone: (215) 875-3000
                                           Facsimile: (215) 875-4604
                                           Email: scarson@bm.net
                                           sschalman-bergen@bm.net
                                           apiazza@bm.net

                                           Catherine E. Anderson
                                           **GISKAN SOLOTAROFF &**
                                           **ANDERSON LLP**
                                           90 Broad Street, 10th Floor
                                           New York, NY 10004
                                           Tel: (212) 847-8315
                                           Fax: (646) 520-3236
                                           Email: canderson@gslawny.com

                                           **THE MARKHAM LAW FIRM**
                                           David R. Markham*
                                           750 B. Street, Suite 1950
                                           San Diego, California 92101
                                           Email: dmarkham@markham-law.com

                                           **REALI LAW, APC**

25

Peggy Reali*
1754 Thomas Ave.
San Diego, CA 92109
Email: preali@realilaw.com

**QUINTILONE & ASSOCIATES**
Richard Quintilone, II*
22974 El Toro Road, Suite 100
Lake Forest, CA 92630-4961
Email: req@quintlaw.com

**RUSSELL S. WARREN, JR.**
473 Sylvan Avenue
Englewood Cliffs, New Jersey 07632-
1234
Tel: (201)503-0773
Fax: (201) 503-0776
mail@RWarrenlaw.com

*Admitted *pro hac vice*

*Attorneys for Plaintiffs*

## CERTICATE OF SERVICE

I hereby certify that on October 25, 2019, a true and correct copy of the

foregoing document was served on all counsel of record electronically via CM/ECF.

*s/  Roosevelt N. Nesmith*
Roosevelt N. Nesmith